Exhibit 2





# Alternus Policy

# ALTERNUS CLAIMS CONTACT INFORMATION

In the event of a loss, claims are to be submitted as follows:

Peninsula Insurance Bureau

2842 Lent Road Apopka, FL 32712

Phone: (407) 880-1100

tpa@pibadjusters.com

Email is preferable for speed and accuracy

© 2017 Allianz Global Corporate & Specialty.   All rights reserved.

Includes  copyrighted  material of Insurance Services Office,  Inc.,  with its permission

# General Declarations



Policy Number: RTX 200112 18

Previous Policy Number:

**Policy Period:**
Inception Date: 3/1/2018 to  Expiration Date: 3/1/2021
(Beginning and ending at 12:01 A.M.  at the time and location of the property insured)

Coverage is provided by the following company, an Illinois stock company:

## Interstate Fire & Casualty Company
2 2 5  W e s t  W a s h i n g t o n  S t r e e t
C h i c a g o ,  IL  6 0 6 0 6

**Named Insured and Mailing Address:**

Northwell Health, Inc.
200 Community Dr.
Great Neck, NY  11021

**Producer Name and Address:**
Marsh USA, Inc.
1166 Avenue of the Americas
New York, NY  10036

**Business or Operations of the Named Insured:  SIC**  8082  General hospital, home health care services

The insurance provided by this policy consists of the following coverage form(s). In return for payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

### PROPERTY INSURANCE (COMMERCIAL)

PREMIUM SUMMARY

| | |
|---|---|
| Annual Premium (excluding Terrorism Risk Insurance Act) | $ 1,202,958 |
| Terrorism Risk Insurance Act ("The Act") - Certified Acts Coverage – Covered | $   297,042 |
| TOTAL | $ 1,500,000 |

Alternus™ for Marsh Limited LLC
© 2017 Allianz Global Corporate & Specialty.  All rights reserved.
Form ID: Alternus DEC (3-18)

# General Declarations



Locations of Premises – Applicable to Coverage specified in these Declarations

Locations on file with the Company

**FORMS ATTACHED AT INCEPTION**

**GENERAL PROVISIONS**
**Alternus-PCE-NA(9-17)**     Policy Change Endorsement - Amendatory Endorsement, ENDT #14

**PROPERTY**
Manuscript                          Northwell Health Manuscript Property Policy

| Date of issue:<br>3/16/2018 | Signature of Authorized Agent: |
|---|---|

These General Policy Declarations and other coverage Declarations, together with any common policy conditions, coverage form(s) and endorsements if any issued to form a part thereof, complete the above numbered policy.

Alternus™ for Marsh Limited LLC
© 2017 Allianz Global Corporate & Specialty. All rights reserved.

# NORTHWELL HEALTH MANUSCRIPT PROPERTY POLICY

## COMMERCIAL PROPERTY POLICY DECLARATIONS

POLICY NUMBER : RTX 200112 18                    RENEWAL OF:

ITEM 1.          Named Insured:    NORTHWELL HEALTH, INC

                 Address:            200 COMMUNITY DR
                                     GREAT NECK, NY 11021

ITEM 2.          Policy Period:    From 03/01/2018   To 03/01/2021
                 at 12:01 AM Standard Time at the address of the named insured shown above.

ITEM 3.          Limit of Insurance:
                 10% BEING $ 125,000,000 PART OF $1,250,000,000 PER OCCURRENCE AND
                 IN THE PRIMARY

                 Total Premium: $ 1,500,000

                 Terrorism Premium: $297,042 (included in Total Premium above)

                 Minimum Earned Premium: $ 0

ITEM 4.          Perils:
                 AS DESCRIBED IN THE POLICY FORM

ITEM 5.          Description of Property Covered:                    Coinsurance
                 AS DESCRIBED IN THE POLICY FORM                  NOT APPLICABLE

ITEM 6.          Mortgagee Clause: Loss, if any shall be payable to:
                 PER CERTIFICATES ON FILE WITH THE COMPANY

ITEM 7.          Forms Attached:
                 SEE ATTACHED FORMS SCHEDULE

                                        _____
                                                Authorized Representative

# FORMS SCHEDULE

Named Insured: NORTHWELL HEALTH, INC

Policy No: RTX 200112 18                    Effective Date: 03/01/2018

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PRPDEC | 12/15 | | **COMMERCIAL PROPERTY POLICY DECLARATIONS** |
| | | | **MANUSCRIPT POLICY FORM** |
| | | | **LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS (BROKER ENDT)** |
| | | | **ADDITIONAL INSURED ENDORSEMENT (BROKER ENDT)** |
| | | | **UPGRADE TO GREEN (BROKER ENDT)** |
| | | | **FDA RECERTIFICATION CLAUSE (BROKER ENDT)** |
| | | | **AMENDATORY ENDORSEMENT (BROKER ENDT)** |
| | | A | **EARTH MOVEMENT ZONES FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES (BROKER ENDT)** |
| PR8543 | 06/15 | 001 | **TERRORISM PREMIUM CHARGE ENDORSEMENT WITH EXCLUSION FOR BIOLOGICAL AND/OR CHEMICAL TERRORISM** |
| PR4225 | 07/13 | 002 | **ECONOMIC SANCTIONS ENDORSEMENT** |
| PR9015 | 04/16 | 003 | **POLLUTION, CONTAMINATION, DEBRIS REMOVAL EXCLUSION ENDORSEMENT** |
| PR9019 | 08/15 | 004 | **STANDARD PROPERTY CONDITIONS** |
| Y69813 | 02/98 | 005 | **COMBINED PROPERTY/BOILER & MACHINERY MILLENNIUM ENDORSEMENT** |
| NMA2918 | 08/01 | 006 | **WAR AND TERRORISM EXCLUSION ENDORSEMENT** |
| LX9512 | 08/02 | 007 | **MOLD / FUNGUS EXCLUSION** |
| PR9014 | 08/06 | 008 | **OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT** |
| MANUSCRIPT | | 009 | **CONDITIONAL TOTAL TERRORISM EXCLUSION ENDORSEMENT(APPLICAB LE UPON TERMINATION OF THE TERRORISM INSURANCE PROGRAM)** |
| MANUSCRIPT | | 010 | **MULTI-YEAR POLICY ENDORSEMENT** |

| MANUSCRIPT | 011 | **DEDUCTIBLE REIMBURSEMENT ENDORSEMENT** |
| MANUSCRIPT | 012 | **CYBER COVERAGES ELITE ENDORSEMENT** |
| MANUSCRIPT | 013 | **AMENDATORY ENDORSEMENT** |

THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE
STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION,
AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S),
NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE
POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF
THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.

## Policy Number
RTX 200112 18

## Named Insured and Mailing Address
Northwell Health Inc.,
200 Community Drive
Great Neck, NY 11021

Named Insured" on the Declarations shall mean:

Northwell Health, Inc., Northwell Healthcare, Inc and any subsidiary of any tier, and any company, corporation or business organization of any tier, including partnerships, limited liability companies or joint ventures, of which one or more of the foregoing:

·       has more than 50% of the interests entitled to vote generally in the election of the governing body of such organization; or

·       exercises direct or indirect financial or management control as evidenced in a written contract; or

·       is required to provide Named Insured status pursuant to a written contract or agreement executed prior to loss.


With respect to any company, corporation or business organization of any tier, including partnerships, limited liability companies or joint ventures, in which Northwell Health, Inc., Northwell Healthcare, Inc and/or any subsidiary of tier any has 50% or less of the interests entitled to vote generally in the election of the governing body of such organization, such business organizations are not Named Insureds. However, Northwell Health, Inc., Northwell Healthcare, Inc and/or any subsidiary of tier are Named Insureds with respect to their liability arising out of such business organization.

## Producer
Marsh USA Inc.
1166 Avenue of the Americas
New York, NY 10036

## Policy Period

Begins March 1,2018 at 12:01 AM; Ends March 1, 2021 at 12:01 AM.

## Interstate Fire & Casualty  Co. hereafter
referred to as the "Company",

## Proportionate Share of Company for Loss or Damage

This Policy's proportionate share of loss or damage after the application of any deductible amount is:

| | |
|---|---|
| 10% Quota Share: layer | Being $125,000,000 part of a $1,250,000,000 primary loss |


Term Policy Premium
$1,500,000

PREMIUM PAYABLE

This Policy is issued in consideration of an initial premium. The **First Named Insured** shown on the Policy is responsible for the payment of all premiums and will be the payee for any return premiums paid by the Company. Premiums will be paid in the currency designated in Section II-2.02.

Northwell Health, Inc.

# SECTION I – POLICY APPLICABILITY

## 1.01.    INSURING AGREEMENT

This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01., all subject to the terms, conditions and exclusions stated in this Policy.

No coverage can be provided in violation of any U.S. economic or trade sanctions laws or regulations. Such coverage, which may be in violation of any U.S. economic or trade sanctions laws and regulations, shall be null and void and the Company shall not be liable to make any payments or provide any defense under this policy.

## 1.02.    APPLICATION OF POLICY PERIOD

In the event of a claim the Policy Period is measured by local time at the location where the direct physical loss or damage occurs.

## 1.03.    TERRITORY

Coverage under this Policy applies to **Occurrences** within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

Northwell Health, Inc.

# SECTION II - DECLARATIONS

## 2.01. INSURED LOCATION

This Policy insures an Insured Location unless otherwise provided.

An Insured Location is a **Location**:

2.01.01.      Scheduled on this Policy by a Schedule of Locations attached to this Policy;

2.01.02.      Listed on a Schedule of Locations on file with Company; per the most recent statement of values.

2.01.03.      Covered as a Miscellaneous Unnamed Location; and

2.01.04.      Covered under the terms and conditions of the Newly Acquired Coverage or Errors and Omissions Coverage.

## 2.02. CURRENCY

All amounts, including deductibles and limits of liability, indicated in this Policy are in USD unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

## 2.03. POLICY LIMITS OF LIABILITY

The Policy Limit is **$1,250,000,000** for the total of all coverages combined regardless of the number of **Locations** involved subject to the following provisions:

2.03.01.      The Company will pay no more in any one (1) **Occurrence** than its proportionate share of the Policy Limit.

2.03.02.      Limits of Liability stated below or elsewhere in this Policy are part of and not in addition to the Policy Limit.

2.03.03.      When an **Annual Aggregate** Limit of Liability is shown, the Companys maximum amount payable will not exceed such Limit of Liability during the **Policy Year** regardless of the number of **Locations**, Coverages or **Occurrences** involved.

2.03.04.      The most the Company will pay in an **Occurrence** caused by a **Described Cause of Loss** is the Limit of Liability for that **Described Cause of Loss**.

2.03.05.      Limits of Liability in an **Occurrence** apply to the total loss or damage, including any insured Time Element loss, at all **Locations** and for all Coverages involved, subject to the following provisions:

2.03.06.      Limits of Liability

The following are the Limits of Liability in an **Occurrence** unless otherwise shown. The Company will pay no more in any one (1) **Occurrence** than its proportionate share.

| Limits of Liability and Coverage Part | |
|---|---|
| $1,250,000,000 | Property Damage (PD) and Time Element (TE) Combined per the schedule of values on file with the company, but not to exceed the following limits:<br><br>$500,000,000 EXTRA EXPENSE INCL REMOVAL & RETURN AND PATIENTS<br><br>$100,000,000 LEASEHOLD INTEREST |
| $ 25,000,000 | ACCOUNTS RECEIVABLE |
| $ 100,000 | COMPUTER SYSTEMS DAMAGE |
| $ 250,000,000 | CONTINGENT TIME ELEMENT |
| $100,000 | CONTRACTUAL PENALTIES |
| $250,000,000 | DEBRIS REMOVAL (the greater of $250,000,000 or 25% of the PD loss) |
| $ 25,000,000 | DECONTAMINATION COSTS (including Communicable Disease due to physical damage) |
| $ 1,000,000 | DEFERRED PAYMENTS |
| $ 50,000,000 | ERRORS AND OMMISIONS |
| $ 25,000,000 | EXPEDITING COSTS |
| $ 6,714,033 | **FINE ARTS** AS PER SCHEDULE ON FILE WITH COMPANY |
| $ 250,000 | FIRE DEPARTMENT SERVICE CHARGE |
| $ 250,000,000 | INCREASED COST OF CONSTRUCTION |
| $ 1,000,000 | LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL per occurrence and in the **Annual Aggregate**. |
| $ 1,000,000 | LAND IMPROVEMENTS |
| $100,000 | LOGISTICS EXTRA COST |
| $ 25,000,000 | MISCELLANEOUS PERSONAL PROPERTY |
| $ 50,000,000 | **MISCELLANEOUS UNNAMED LOCATION** |
| $ 100,000,000 | OFF PREMISES SERVICE INTERRUPTION |
| $100,000 | PROFESSIONAL EMPLOYEE REPLACEMENT EXPENSE |
| $ 5,000,000 | PROFESSIONAL FEES |
| $ 25,000,000 | RADIOACTIVE CONTAMINATION |
| $ 20,000,000 | RESEARCH ANIMALS per occurrence and in the Annual Aggregate |
| $ 250,000 | TENANTS PROHIBITED ACCESS |
| $ 10,000,000 | TRANSIT |
| $ 50,000,000 | VALUABLE PAPERS AND RECORDS |
| $ 100,000,000 | **NEW CONSTRUCTION OR ADDITIONS** |
| $ 10,000,000 | OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION |
| $ 1,000,000 | HOME HEALTH CARE MEDICAL EQUIPMENT |
| $5,000,000 | MOBILE MEDICAL EQUIPMENT |
| $ 10,000,000 | PROTECTION OF PATIENTS |
| $10,000,000 | UPGRADE TO GREEN An additional 25% of the Limit of Liability for Building plus Personal Property or $10,000,000 whichever is greater |
| $ 1,250,000,000 | **BREAKDOWN** OF EQUIPMENT not to exceed:<br>$ 25,000,000 for **AMMONIA CONTAMINATION**<br>$ 25,000,000 for SPOILAGE |

Northwell Health, Inc.

| | |
|---|---|
| $ 200,000,000 | **EARTH MOVEMENT** per occurrence and in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate**: <br> a). **NCP** for property located in Zone 1 for **Earth Movement** as described in Appendix A <br> b). **NCP** for property located in Zone 2 for **Earth Movement** as described in Appendix A. |
| $300,000,000 | **FLOOD** per occurrence and in the annual aggregate but not to exceed the following limits: <br> a). $ 40,000,000 Per Occurrence and in the Annual Aggregate for the peril of Flood occurring, at the following locations: <br> • 209-219 East Main Street, Bay Shore, NY <br> • One Edgewater, Ste 100, Staten Island, NY <br> • 500 Seaview Avenue, Staten Island, NY <br> • 1 Edgewater Plaza, Staten Island, NY <br> • 310 East Shore Road, Great Neck, NY). |
| $1,250,000,000 | **NAMED STORM** |

2.03.08.        Causation Definition: The following term is included in the definition of the Peril as indicated:

| |
|---|
| **Storm Surge** is part of **Named Storm** |

2.03.09.        Time and Distance Limitations: In addition to the Limits of Liability shown elsewhere in this Policy, the following limitations apply:

| | |
|---|---|
| Located within 1 mile of the Insured Location | ATTRACTION PROPERTY |
| 90 day period for property within 5 mile but not to exceed a $50,000,000 limit. | CIVIL OR MILITARY AUTHORITY |
| 30 consecutive days but not to exceed $10,000,000 | CRISIS MANAGEMENT |
| 90 days | The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion** |
| No Limitation | GROSS EARNINGS |
| 365 days | EXTENDED PERIOD OF LIABILITY |
| 180 days | ORDINARY PAYROLL |
| 30 day period | IMPOUNDED WATER |
| 90 day period for property within 5 mile but not to exceed a $50,000,000 limit. | INGRESS/EGRESS |
| 30 day period but not to exceed a $1,000,000 limit. | INTERNATIONAL INTERDEPENDENCY |
| 30 day period but not to exceed a $25,000,000 limit. | INTERRUPTION BY COMMUNICABLE DISEASE |
| 90 days | FDA RECERTIFICAITON CLAUSE |
| 120 day period but not to exceed a $50,000,000 limit per **Location**. | NEWLY ACQUIRED |

| 120 Hours for Gross Earnings but not to exceed $25,000,000 limit for PD and TE combined | PROTECTION AND PRESERVATION OF PROPERTY |
|---|---|
| 12 mo. but not to exceed a $25,000,000 limit. | RESEARCH AND DEVELOPMENT |
| | |

2.03.10.     Time Specifications: As follows:

| **EARTH MOVEMENT Occurrence** | 168 hours |
|---|---|
| **NAMED STORM Occurrence** | 72 hours |
| Cancellation for nonpayment of premium | 30 days |
| Cancellation for any other reason | 90 days |

2.03.11.     Valuation: As follows:

| Finished Stock | Selling Price |
|---|---|
| **Merchandise** that carries the Insured's brand or trade name | Replacement Cost |
| All other **Merchandise** | Replacement Cost |
| Vehicles | Actual Cash Value |

# 2.04.     QUALIFYING PERIOD

For the Coverages listed below the following **Qualifying Period** applies:

| OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE & TIME ELEMENT COVERAGE | 24 hours |
|---|---|
| COMPUTER SYSTEMS DAMAGE COVERAGE | 8 hours |
| TENANTS PROHIBITED ACCESS COVERAGE | 2 days |
| NEW CONSTRUCTION OR ADDITIONS: Delay in Completion | 30 days |
| INTERUPTION BY COMMUNICABLE DISEASE | 24 hours |

# 2.05.     DEDUCTIBLES

Each claim for loss or damage as insured against arising out of any one (1) **Occurrence** shall be adjusted separately. The Company shall not be liable unless the Insured sustains loss or damage in excess of the deductible(s) stated below and then only for the proportionate share of such excess amount(s).

2.05.01.     A deductible that applies on a per **Location** basis will apply separately to each **Location** where the physical loss or damage occurred regardless of the number of **Locations** involved in the **Occurrence**.

2.05.02.     If two or more deductibles apply to an **Occurrence**, the total deducted will not exceed the largest applicable deductible. If two or more deductibles apply on a per **Location** basis in an **Occurrence,** the largest deductible applying to each **Location** will be applied separately to each such Location.

2.05.03.     If separate Property Damage and Time Element loss deductibles are shown, then the deductibles shall apply separately.

2.05.04.    When a "minimum deductible" per **Occurrence** is shown and is applicable to an **Occurrence**, the "minimum deductible" is the minimum dollar amount of covered damage that the Insured will retain in any one (1) **Occurrence**. The amount retained for purposes of applying the "minimum deductible" is the sum of:

2.05.04.01.    the specified location deductible for each location where the amount of covered damage exceeds the specified location deductible; and

2.05.04.02.    the amount of covered damage for each location where the amount of covered damage is less than specified location deductible.

2.05.05.    Policy Deductible(s)

2.05.05.01.    $500,000 combined coverages per Occurrence except as follows:

**2.05.05.02.**    Exceptions to Policy Deductible(s)

2.05.05.02.01.    **Contingent Time Element**

$ 500,000 per Location at each Direct Dependent Time Element Location, Indirect Dependent Time Element Location, and Attraction Property where the physical loss or damage occurs regardless of any other deductibles that may also apply.

However, when the loss results from Earth Movement, Named Storm and/or Flood such loss shall be subject to its respective deductible(s) for Direct Dependent Time Element Location.

**2.05.05.02.02.**    **Earth Movement**

The following deductibles apply to loss or damage caused by or resulting from earth movement.

**2.05.05.02.02.01.**    $500,000 combined coverages per **Occurrence**

2.05.05.02.03.    **Flood**

The following deductibles apply to loss or damage caused by or resulting from **Flood.**

2.05.05.02.03.01.    $1,000,000 combined coverages per **Occurrence** except as follows:

2.05.05.02.03.02.    **$2,500,000 per location** at the time of the loss at each location involved in the loss or damage, subject to a maximum of **$5,000,000** any one occurrence, at the following locations:
•209-219 East Main Street, Bay Shore, NY
• One Edgewater, Ste 100, Staten Island, NY
• 500 Seaview Avenue, Staten Island, NY
• 1 Edgewater Plaza, Staten Island, NY
• 310 East Shore Road, Great Neck, NY

| 2.05.05.02.04. | **Named Storm** |
|---|---|

The following deductibles apply to loss or damage caused by or resulting from **Named Storm**.

2.05.05.02.04.01.    3% Property Damage (PD) & Time Element (TE) combined per **Occurrence** of the value per the most current Statement of Values on file with the company, for the Location where the direct physical loss or damage occurred, per **Occurrence.**

The above **Named Storm** deductibles are subject to a minimum deductible of $500,000 and a maximum deductible of $5,000,000 for Property Damage and Time Element combined per **Occurrence**.

2.05.05.02.05.    **Breakdown** of Equipment deductible

2.05.05.02.05.01.    $500,000 combined coverages per **Occurrence** for loss or damage caused by **Breakdown**.

2.05.02.06    Research Animals

$500,000 per occurrence

_____
Authorized Representative

**Mark A. Smith**
_____
Print Name of Authorized Rep.

03/16/2018
_____
Date

Victor O Schinnerer & Co. on behalf of Interstate Fire & Casualty
_____
Office

# SECTION III - PROPERTY DAMAGE

## 3.01.        COVERED PROPERTY

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof or as otherwise provided for in this Policy.

3.01.01.        The Insured's interest in buildings (or structures) including Helipads and attached equipment, new construction, additions, alterations, and repairs that the Insured owns, occupies, leases or rents.

3.01.02.        The Insured's interest in Personal Property, including **Improvements and Betterments**.

3.01.03.        Property of Others will not extend any Time Element Coverage provided under this Policy to the owner of the property and is limited to property:

3.01.03.01.        In the Insured's care, custody or control;

3.01.03.02.        In which the Insured has an insurable interest or obligation;

3.01.03.03.        For which the Insured is legally liable; or

3.01.03.04.        For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

3.01.04.        Personal Property of officers and employees of the Insured.

3.01.05.        Patients' personal property.


## 3.02.        PROPERTY NOT COVERED

This Policy does not insure the following property:

3.02.01.        **Money**, **securities**, furs, jewelry, precious metals, precious stones, and semi-precious stones. This exclusion does not apply to precious metals and precious stones used by you for industrial purposes

3.02.02.        Watercraft or aircraft, except when unfueled and manufactured by the Insured.

3.02.03.        Spacecraft, satellites, associated launch vehicles and any property contained therein.

3.02.04.        Animals, standing timber and growing crops.

3.02.05.        Bridges and tunnels when not part of a building or structure, dams, dikes, piers, wharfs, docks or bulkheads.

3.02.06.        Land, water or any other substance in or on land; except this exclusion does not apply to:

3.02.06.01.        **Land Improvements**, or

3.02.06.02.        Water that is contained in any enclosed tank, piping system or any other processing equipment, or

3.02.06.03        car parks, parking lots, pavement, roadways, railways, transformer enclosures or walkways, or

| 3.02.06.04 | fill beneath car parks, parking lots, pavement, roadways, |
|---|---|
| 3.02.07. | **Land Improvements** at a golf course. |
| 3.02.08. | Mines, mineshafts, caverns and any property contained therein. |
| 3.02.09. | Vehicles of officers and employees of the Insured or vehicles otherwise insured for physical loss or damage. |
| 3.02.10. | Transmission and distribution lines situated beyond 1,000 feet of the Insured Location. |
| 3.02.11. | Property in transit, except as otherwise provided by the Transit Coverage of this Policy. |
| 3.02.12. | Contraband or property in the course of illegal transit or trade. |
| 3.02.13. | Property more specifically insured, except for any excess beyond such more specific insurance limit. |
| 3.02.14. | Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers except as provided by the Deferred Payments Coverage of this Policy. |
| 3.02.15. | **Electronic Data**, **Programs** and **Software**, except when they are **Stock in Process**, **Finished Stock**, **Raw Materials**, supplies or **Merchandise** or as otherwise provided by the Computer Systems Damage Coverage or **Valuable Papers and Records** Coverage of this Policy. |
| 3.02.16. | Offshore oil rigs, platforms and property contained therein or thereon |

## 3.03.    EXCLUSIONS

The following exclusions apply unless specifically stated elsewhere in this Policy:

| 3.03.01. | This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy. |
|---|---|
| 3.03.01.01. | **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy. |
| 3.03.01.02. | Changes in size, color, flavor, texture or finish. |
| 3.03.01.03. | Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property. |
| 3.03.02. | This Policy excludes: |
| 3.03.02.01. | Loss or damage arising from delay, loss of market, or loss of use. |
| 3.03.02.02. | Indirect or remote loss or damage. |

| 3.03.02.03. | Loss or damage arising from the interference by strikers or other persons with rebuilding, repairing or replacing property or with the resumption or continuation of the Insured's business. |
|---|---|

3.03.02.04.      Unexplained disappearance; mysterious disappearance; or shortage disclosed on taking inventory when the factual existence of such shortage is solely dependent on inventory records.

3.03.02.05.      Loss or damage resulting from the Insured's suspension of business activities, except to the extent provided by this Policy.

3.03.02.06.      Any applicable Special Coverage, **Described Cause of Loss**, or portion of coverage if a Limit of Liability is identified as **NCP** in Section II-Declarations.

3.03.03.      This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

3.03.03.01.      Nuclear reaction or radiation, any by-product of nuclear reaction, any radiological material or radioactive contamination however caused; but if direct physical loss of or damage to Covered Property by fire or sprinkler leakage results, the Company will pay for the loss or damage caused by the fire or sprinkler leakage.

3.03.03.02.      War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power, nationalization, confiscation, requisition, seizure or destruction by the government or any public authority, including action in hindering, combating or defending against any of these. However, destruction by order of governmental or public authority to prevent spread of fire is covered.

3.03.03.03.      Any weapon of war or of mass destruction employing biological or chemical warfare, atomic fission, atomic fusion, radioactive force or radioactive material, whether in time of peace or war regardless of who commits the act.

3.03.03.04.      Dishonest, fraudulent or criminal acts by the Insured or any of the Insured's associates, proprietors, partners, officers, employees, directors, trustees or authorized representatives.

This exclusion does not apply to acts of direct physical loss or damage resulting from a **Covered Cause of Loss** intentionally caused by any individual specified above and done without the knowledge of the Insured. In no event does this Policy cover loss caused by theft by any individual above.

3.03.03.05.      Lack of the following services when caused by an event off the Insured Location (except as provided in Off Premises Service Interruption Property Damage and Time Element Coverage of this Policy). However, if the lack of any of the following services results in a **Covered Cause of Loss**, this exclusion does not apply to the loss or damage caused by the **Covered Cause of Loss**.

3.03.03.05.01.      Incoming electricity, fuel, water, gas, steam, refrigerant;

3.03.03.05.02.      Outgoing sewage; or

3.03.03.05.03.      Incoming or outgoing voice, data or video.

3.03.04.      This Policy excludes the following but any resulting physical damage not otherwise excluded is insured:

**3.03.04.01.**           Faulty, inadequate or defective design, specifications, workmanship, construction or materials used**.**

3.03.04.02.           Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested or otherwise worked on.

3.03.04.03.           Corrosion, depletion, deterioration, erosion, inherent vice, latent defect, rust, wear and tear.

3.03.04.04.           Changes of temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

3.03.04.05.           Settling, cracking, shrinking, bulging or expansion of: foundations (including any pedestal, pad, platform or other property supporting machinery), floors, pavements, walls, ceilings or roofs.

3.03.04.06.           Insects, animals or vermin damage.

3.03.04.07.           Cumulative effects of smog, smoke, vapor, liquid and dust.

# SECTION IV - TIME ELEMENT

## 4.01.     LOSS INSURED

**4.01.01.**     The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Covered Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss.**

The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**.

4.01.02.     There is recovery only to the extent that the Insured is:

4.01.02.01.          unable to make up lost production within a reasonable period of time not limited to the period during which production is **Suspended**;

4.01.02.02.          unable to continue such operations or services during the Period of Liability; and

4.01.02.03.          able to demonstrate a loss of revenue for the operations, services or production **Suspended**.

4.01.03.     The Company insures Time Element loss only to the extent it cannot be reduced by:

4.01.03.01.     The Insured resuming business activities in whole or part;

4.01.03.02.          Using damaged or undamaged property (including **Raw Stock, Stock in Process** or **Finished Stock**) at the Insured Location or elsewhere;

4.01.03.03.          Using the services or property of others;

4.01.03.04.          Working extra time or overtime; or

4.01.03.05.          The use of other **Locations** not covered under this Policy.

4.01.03.06.          Any amount recovered under property damage coverage at selling price for loss or damage to **Merchandise**.

4.01.04.     The Company will include in any calculation the combined operating results of all Insured Locations in determining the Time Element loss.

4.01.05.     In determining the Time Element loss, the Company will evaluate the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Liability.

## 4.02.     TIME ELEMENT COVERAGES

### 4.02.01.     GROSS EARNINGS-

4.02.01.01.          Gross Earnings loss is the actual loss sustained by the Insured during the Period of Liability.

| 4.02.01.02. | Gross Earnings value is determined as follows: |
|---|---|

| 4.02.01.02.01. | The sum of: |
|---|---|

| 4.02.01.02.01.01. | In-patient services, out-patient services, and ambulance services; |
|---|---|

| 4.02.01.02.01.02. | Total net sales of **Merchandise** including that sold in gift shops and the cafeteria; |
|---|---|

| 4.02.01.02.01.03. | The rental income; and |
|---|---|

| 4.02.01.02.01.04. | Other income derived from the Insured's business activities including but not limited to grant and research income, tuition and fee income, fund raising income and donations. |
|---|---|

| 4.02.01.02.02. | Less the cost of the following: |
|---|---|

| 4.02.01.02.02.01. | Contractual adjustments, bad debt, free services or any other discounts; |
|---|---|

| 4.02.01.02.02.02. | Supplies consisting of materials consumed directly in supplying the service(s) sold by the Insured; |
|---|---|

| 4.02.01.02.02.03. | **Merchandise** sold, including related packaging materials; and |
|---|---|

| 4.02.01.02.02.04. | Service(s) purchased from outsiders (not Insured's employees) for resale, which do not continue under contract. |
|---|---|

| 4.02.01.02.03. | Gross Earnings loss is determined as follows: |
|---|---|

Gross Earnings value that would have been earned during the Period of Liability, less charges and expenses that do not necessarily continue during the Period of Liability.

Consideration shall be given to the continuation of normal charges and expenses, including **Ordinary Payroll** for the number of consecutive days as stated in the Declarations but not to exceed the limit shown for **Ordinary Payroll**, to the extent necessary to resume the Insured's business activities with the same quality of service that existed immediately preceding the loss.

| 4.02.01.02.04. | This Policy will also pay the reasonable and necessary expenses incurred (except the cost to extinguish a fire) by the Insured to reduce the amount of Gross Earnings loss during the Period of Liability. This Policy will pay for such expenses to the extent that they do not exceed the amount of Gross Earnings loss that otherwise would have been payable. This provision will not pay for the cost of permanent repair or replacement of property that has suffered direct physical loss or damage. |
|---|---|

| 4.02.01.02.05. | This Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a Gross Earnings loss payment being greater than the tax liability incurred on the profits that would have been earned had no loss occurred.. |
|---|---|

## 4.02.02.        EXTENDED PERIOD OF LIABILITY

Upon the termination of the coverage for Gross Earnings loss under 4.02.01.01. this Policy will continue to pay the actual Gross Earnings loss sustained by the Insured until the earlier of:

| 4.02.02.01. | The date the Insured could restore its business with due diligence, to the condition that would have existed had no direct physical loss or damage occurred to the Insured's Covered Property; or |
|---|---|

| 4.02.02.02. | The number of consecutive days as stated in the Declarations |
|---|---|
| 4.02.02.03. | Exclusion 4.02.06.01.02.01. is deleted during the Extended Period of Liability and is replaced with: |
| 4.02.06.01.02.01. | A reduction in sales after the Extended Period of Liability ends due to suspension, cancellation or lapse of any lease, contract, license or orders. |

## 4.02.03.   EXTRA EXPENSE

The Company will pay for the reasonable and necessary Extra Expenses incurred by the Insured, including the cost to remove and return patients, during the Period of Liability**,** to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy. at a **Location**.

The Company will reduce the amount payable as Extra Expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.

Extra Expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**. Extra Expense does not include any Gross Earnings loss or Gross Profit loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

## 4.02.04.   LEASEHOLD INTEREST

The Company will pay for the actual Leasehold Interest loss incurred by the Insured (as lessee) resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to a building (or structure) which is leased and not owned by the Insured, as follows:

| 4.02.04.01. | If the building (or structure) becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent, the Company will pay the Insured the present value of the actual rent payable for the unexpired term of the lease, not including any options; |
|---|---|
| 4.02.04.02. | If the building (or structure) becomes partially untenantable or unusable and the lease agreement requires continuation of the rent, the Company will pay the Insured for the present value of the proportionate amount of the actual rent payable for the unexpired term of the lease, not including any options; or |
| 4.02.04.03. | If the lease is cancelled by the lessor pursuant to the terms of the lease agreement or by operation of law, this Policy will pay the Insured for their **Lease Interest** for the first three (3) months following the loss or damage and for their **Net Lease Interest** for the remaining unexpired term of the lease. |
| 4.02.04.04. | The Insured must use any suitable property or service owned, controlled, or obtainable from any source to reduce the loss. |
| 4.02.04.05. | In addition to the exclusions elsewhere in this Policy the Leasehold Interest Coverage excludes: |
| 4.02.04.05.01. | Any increase in the Leasehold Interest loss resulting from the suspension, lapse or cancellation of any lease; |

| 4.02.04.05.02. | Any loss from the Insured exercising an option to cancel the lease; or |

| 4.02.04.05.03. | Any loss from an act or omission by the Insured that constitutes default under the lease. |

## 4.02.05. EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Time Element Coverage;

| 4.02.05.01. | This Policy does not insure against: |

| 4.02.05.01.01. | Any loss during any idle period that would have been experienced had the **Suspension** of business activities not occurred. This includes, but is not limited to, when production, operation, services, delivery or receipt of goods or services or any other business activities would have ceased, or would not have taken place or would have been prevented due to: |

| 4.02.05.01.01.01. | Planned or rescheduled shutdown; |

| 4.02.05.01.01.02. | Strikes or other work stoppage; or |

| 4.02.05.01.01.03. | Any reason other than physical loss or damage insured by this Policy. |

| 4.02.05.01.02. | Any increase in Time Element loss due to: |

| 4.02.05.01.02.01. | Suspension, cancellation or lapse of any lease, contract, license or orders; |

| 4.02.05.01.02.02. | Fines or damages for breach of contract or for late or non-completion of orders; |

| 4.02.05.01.02.03. | Penalties of any nature; or |

| 4.02.05.01.02.04. | Any other consequential or remote factors. |

| 4.02.05.01.03. | Any loss resulting from loss or damage to **Finished Stock**, nor the time required for their reproduction. |

| 4.02.05.01.04. | Any Time Element loss due to physical loss or damage not insured by this Policy on or off of the Insured Location. |

However, in the event that a **Suspension** is due to a **Covered Cause of Loss** and during such **Suspension** a loss that is otherwise excluded occurs, the Company will pay for the Time Element loss which is directly caused by the **Covered Cause of Loss** to Covered Property under this Policy.

| 4.02.05.01.05. | Any Time Element loss resulting from damage to Property of Others; however this exclusion does not apply to Time Element loss suffered by the Insured as a direct result of the damage to Property of Others. |

## 4.03. PERIOD OF LIABILITY

| 4.03.01. | The Period of Liability applying to all Time Element Coverages, except **Leasehold Interest**, and as shown below or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.09., is as follows: |

| 4.03.01.01. | For building and equipment: The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage. The expiration of this Policy will not limit the Period of Liability. |
|---|---|
| 4.03.01.02. | For building and equipment under construction: The equivalent of the above period of time will be applied to the level of business that reasonably would have been achieved after construction and startup would have been completed had there been no direct physical loss or damage. Due consideration will be given to the actual experience of the business after completion of the construction and startup. |
| 4.03.01.03. | For **Stock in Process** and **Merchandise**: The period of time required with the exercise of due diligence and dispatch to restore **Stock in Process** to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services and to replace physically damaged **Merchandise**. |
| 4.03.01.04. | For **Raw Materials** and supplies: The period of time of actual interruption of production or suspension of operations or services resulting from the inability to get suitable **Raw Materials** and supplies to replace **Raw Materials** and supplies damaged, but limited to that period for which the damaged **Raw Materials** and supplies would have supplied operating needs. |
| 4.03.02. | The Period of Liability applying to all Time Element Coverage, except **Leasehold Interest**, or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.09., does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to: |
| 4.03.02.01. | Making changes to equipment; |
| 4.03.02.02. | Making changes to the buildings or structures except as provided in the Increased Costs of Construction Coverage of the Special Coverages section; or |
| 4.03.02.03. | Re-staffing or retraining employees. |

# SECTION V - SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS

## 5.01. OPERATION OF SPECIAL COVERAGES & **DESCRIBED CAUSES OF LOSS**:

**5.01.01.** Special Coverages & **Described Causes of Loss** are subject to the applicable Limit of Liability and are included within and will not increase the Policy Limit.

**5.01.02.** Special Coverages & **Described Causes of Loss** are subject to the Policy provisions, including applicable exclusions and deductibles, all as shown in this section and elsewhere in this Policy, whether or not a Limit of Liability is shown.

**5.01.03.** If coverage is afforded under any Special Coverage or **Described Cause of Loss**, the applicable Limit of Liability for that Special Coverage or **Described Cause of Loss** is the most the Company will pay for all the loss or damage described therein even if coverage would otherwise be available under any other part of this Policy.

**5.01.04.** If no Limit of Liability is shown in this Policy, the Limit of Liability for that Special Coverage or **Described Cause of Loss** is part of the Policy Limit.

**5.01.05.** If **NCP** is shown for any Special Coverage or **Described Cause of Loss** in this Policy, then no coverage is provided for that Special Coverage or **Described Cause of Loss**.

**5.01.06.** If two or more Limits of Liability apply to a claim for loss or damage, or some part thereof, the lesser applicable Limit of Liability shall apply to the claim, or to the part thereof.

**5.01.07.** The Company will pay no more in any one (1) **Occurrence** than our proportionate share of any applicable Limit of Liability regardless of the number of **Locations** affected by such **Occurrence** and regardless of whether additional or greater limits would otherwise be available under any other part of this Policy.

**5.01.08.** Any **Annual Aggregate** limit is the most the Company will pay in the **Policy Year** regardless of the number of **Occurrences**.

**5.01.09.** In the event of loss or damage involving any one or more of the following Special Coverage or **Described Causes of Loss**, the Company will pay no more for the total of all such coverage combined than our proportionate share of the Policy Limit.

## 5.02. DESCRIPTION OF SPECIAL COVERAGES

### 5.02.01. ACCOUNTS RECEIVABLE

. The Company will pay for the actual loss sustained resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to the Insured's accounts receivable records as respects the following:

**5.02.01.01.** All sums due the Insured from customers, provided the Insured is unable to collect these sums as a result of direct physical loss or damage to accounts receivable records;

**5.02.01.02.** Interest charges on any loan obtained by the Insured to offset impaired collections resulting from direct physical loss of or damage to accounts receivable records but only for such period of time reasonable and necessary for the Insured to resume normal collections;

5.02.01.03.     Necessary collection expense in excess of normal collection cost due to direct physical loss of or damage to accounts receivable records; and

5.02.01.04.     Other expenses, when reasonably incurred by the Insured in re-establishing accounts receivable records following direct physical loss of or damage to accounts receivable records.

5.02.01.05.     For the purpose of this insurance, credit card charge records shall be deemed to represent sums due the Insured from customers, until the charge records are delivered to the credit card company.

5.02.01.06.     When there is proof that direct physical loss of accounts receivable records has occurred and the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of loss, the amount payable shall be computed as follows:

5.02.01.06.01.     The monthly average of accounts receivable during the last available twelve (12) months; the reasonable and necessary collection expenses in excess of normal collection costs due to direct physical loss of or damage to accounts receivable records; and the reasonable and necessary expenses incurred in reestablishing accounts receivable records following direct physical loss or damage, shall be adjusted in accordance with the percentage increase or decrease in the twelve (12) months average of monthly gross revenues which may have occurred in the interim.

5.02.01.06.02.     The monthly amount of accounts receivable as established in b).1). above shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred. Consideration will also be given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

5.02.01.06.03.     The Company shall deduct from the total amounts of account receivable, the amount of accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which the Insured normally would have been unable to collect and for the normal collection costs incurred due to accounts receivable.

5.02.01.07.     The following additional exclusion applies:

This Coverage does not insure against shortage resulting from bookkeeping, accounting, billing errors or omissions, alteration, falsification, manipulation, concealment, destruction or disposal of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

## 5.02.02.     AMMONIA CONTAMINATION

In the event of direct physical loss of or damage to Covered Property caused by a **Breakdown** of **Covered Equipment** at a **Location**, the Company will pay for resulting **Ammonia Contamination**.

## 5.02.03.     CIVIL OR MILITARY AUTHORITY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical

loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

## 5.02.04.    COMPUTER SYSTEMS DAMAGE

The Company will pay for direct physical loss of or damage to the Insured's **Electronic Data**, **Programs**, **Software** and the actual Time Element loss sustained, as provided by this Policy, during the **Period of Interruption** directly resulting from mysterious disappearance of code, any failure, malfunction, deficiency, deletion, fault, **Computer Virus** or corruption to the Insured's **Electronic Data**, **Programs**, **Software** at an Insured Location. The Company will also pay for such loss or damage that may arise out of or result from any authorized or unauthorized access in, of, or to any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor, integrated circuit or similar device.

This Coverage will only apply when the **Period of Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

5.02.04.01.        The following additional exclusions apply:

5.02.04.01.01.         The Company will not pay for any loss or damage to **Electronic Data**, **Programs** or **Software** when they are **Raw Stock**, **Stock in Process**, **Finished Stock** manufactured by the Insured, and supplies or other **Merchandise**.

5.02.04.01.02.         Errors or omissions in processing or copying, except when direct physical loss or damage caused by a **Covered Cause of Loss** results. Then only that   resulting damage is covered.

5.02.04.01.03.         Loss or damage to **Electronic Data**, **Programs** or **Software** from errors or omissions in programming or machine instructions.

## 5.02.05.    CONTINGENT TIME ELEMENT

This Policy covers the actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations,** and **Attraction Properties** located worldwide, except for loss or damage in the following:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina - Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzia, Laos, Lebanon, Lesotho, Liberia, Libya, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tomé and Principé, Senegal, Serbia, Sierra Leone, Somalia, Sri Lanka,

Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

| | |
|---|---|
| 5.02.05.01. | As respects Contingent Time Element: |

| | |
|---|---|
| 5.02.05.01.01. | The Insured will influence and cooperate with the **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations,** and **Attraction Properties** in every way and take any reasonable and necessary action, including the use of other machinery, supplies or locations, to mitigate the loss payable hereunder. |

| | |
|---|---|
| 5.02.05.01.02. | In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage. |

| | |
|---|---|
| 5.02.05.01.03. | 4.02.05.01.03. does not apply. |

| | |
|---|---|
| 5.02.05.02. | Any Time Element loss directly or indirectly caused by or resulting from any **Terrorist Activity** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded when the **Direct Dependent Time Element Locations**, **Indirect Dependent Time Element Locations**, and **Attraction Properties** is outside of the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico. |

| | |
|---|---|
| 5.02.05.03. | As respects **Indirect Dependent Time Element Locations** and **Attraction Properties** any Time Element loss resulting from physical loss or damage caused by or resulting from Earthquake, **Flood**, or **Named Storm** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded. |

## 5.02.06.   DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to demolish and remove debris of property from an Insured Location that remains following direct physical loss or damage resulting from a **Covered Cause of Loss**. This includes the cost to demolish the physically undamaged portion of such property insured due to the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location.

| | |
|---|---|
| 5.02.06.01. | This Coverage does not insure the costs to remove: |

| | |
|---|---|
| 5.02.06.01.01. | Property Not Covered that is **Contaminated**; or |

| | |
|---|---|
| 5.02.06.01.02. | The **Contaminant** in or on Property Not Covered, whether or not the **Contamination** results from direct physical loss or damage caused by a **Covered Cause of Loss**. This Coverage shall cover the costs of removal of **contaminated** Covered Property or the **Contaminant** in or on Covered Property only if the **Contamination**, due to the actual not suspected presence of **Contaminant(s)**, of the debris resulted from direct physical loss or damage caused by a **Covered Cause of Loss**. |

**5.02.07.**     DECONTAMINATION COSTS

If Covered Property is **Contaminated** from direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property and there is in force at the time of the loss any law or ordinance regulating **Contamination** due to the actual not suspected presence of **Contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such **Contaminated** Covered Property in a manner to satisfy such law or ordinance. This Coverage applies only to that part of Covered Property so **Contaminated** due to the actual not suspected presence of **Contaminant(s)** as a result of direct physical loss or damage. The Company is not liable for the costs required for removing **Contaminated** uninsured property nor the **Contaminant** therein or thereon, whether or not the **Contamination** results from a **Covered Cause of Loss**.

**5.02.08.**     DEFERRED PAYMENTS

This Policy will pay for direct physical loss of or damage caused by a **Covered Cause of Loss**, to Personal Property (of the type insurable under this Policy). Such property must be sold by the Insured under a conditional sale, trust agreement, or installment or deferred payment plan. Such property must have been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to collect outstanding amounts due or to regain possession of the property.

5.02.08.01.     Under this Coverage the Policy excludes loss or damage:

5.02.08.01.01.     Pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured;

5.02.08.01.02.     From theft or conversion by the buyer of the property after the buyer has taken possession of such property;

5.02.08.01.03.     To the extent the buyer continues payments; or

5.02.08.01.04.     Not within the covered Territory of this Policy.

**5.02.09.**     ERRORS AND OMISSIONS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to property which is not payable under this Policy because of an error or unintentional omission at the time of Policy inception in the description or inclusion of any **Location** owned, occupied, leased or rented by the Insured to be Covered Property; but only to the extent this Policy would have provided coverage had the error or unintentional omission not been made.

The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at that **Location**, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property.

The Insured must report any error or unintentional omission as soon as possible.

5.02.09.01.     This Coverage does not apply:

| 5.02.09.01.01. | If there is coverage available under Newly Acquired Coverage or Miscellaneous Unnamed Locations Coverage of this Policy; or |
| --- | --- |
| 5.02.09.01.02. | For any error or omission in limits or deductibles. |

### 5.02.10.    EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property and to expedite the permanent repair or replacement of such damaged property.

This Coverage excludes costs recoverable elsewhere in this Policy, or of permanent repair or replacement of damaged property.

### 5.02.11.    FINE ARTS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to **Fine Arts** at an Insured Location.

| 5.02.11.01. | This Policy excludes loss or damage to **Fine Arts** directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss: |
| --- | --- |
| 5.02.11.01.01. | Breakage of bric-a-brac, glassware, marble, porcelain, statuary, and similar fragile property resulting from the article being dropped or knocked over, whether intentional or accidental; |
| 5.02.11.01.02. | Any repairing, restoring or retouching process; or |
| 5.02.11.01.03. | Any pre-existing condition. |

### 5.02.12.    FIRE DEPARTMENT SERVICE CHARGE

The Company will pay for the reasonable additional expenses, resulting from costs of fire extinguishing materials expended, incurred by the Insured when the Fire Department is called to save or protect Covered Property from a **Covered Cause of Loss** at an Insured Location. The Fire Department Service Charges are those assumed by contract or agreement prior to loss or damage or required by local ordinance.

### 5.02.13.    IMPOUNDED WATER

The Company will pay for the actual Time Element loss as provided by this Policy, sustained by the Insured during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by the lack of a supply of water from a water supply stored behind dams or in reservoirs on the Insured Location. The water supply must be used as a **Raw Material** or for generation of power or for other manufacturing purposes. The inadequate supply of water must result from the release of the water from the water supply and be caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to the dam, reservoir, or connected equipment. The Company will pay for the actual Time Element loss sustained, in excess of the applicable deductible, but not to exceed the number of consecutive days as stated in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced, with the exercise of due diligence and dispatch, up to the limit applying to this Coverage.

## 5.02.14.      INCREASED COST OF CONSTRUCTION

**5.02.14.01.**      This Policy covers the reasonable and necessary costs incurred, described in 05.02.14.03., to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

**5.02.14.01.01.**      Such law or ordinance is in force on the date of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property; and

**5.02.14.01.02.**      Its enforcement is a direct result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property.

**5.02.14.02.**      This Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply before the loss, even when the building was undamaged, and the Insured did not comply.

**5.02.14.03.**      This Coverage, as respects the property insured in 5.02.14.01., covers:

**5.02.14.03.01.**      The increased cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

**5.02.14.03.02.**      The increased cost to rebuild physically undamaged property that has been demolished with materials and in a manner to satisfy such law or ordinance, to the extent that such costs result when the demolition of the insured property is required to satisfy such law or ordinance.

**5.02.14.03.03.**      This Coverage applies only to the costs described in 5.02.14.03. The portion of the cost to repair, rebuild or replace property with property of like kind and quality is not part of this Coverage and is to be considered direct physical loss of or damage under 1.01.

**5.02.14.04.**      This Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of **Contamination**.

**5.02.14.05.**      The Company's maximum liability for this Coverage in any **Occurrence** will not exceed the actual cost incurred in 5.02.14.03. up to the limit applying to this Coverage.

## 5.02.15.      INGRESS/EGRESS

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers, customers or employees is prevented by physical obstruction due to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time ingress or egress remains prevented by physical obstruction but not to exceed the number of consecutive days as stated in the Declarations following such obstruction up to the limit applying to this Coverage.

## 5.02.16.      INTERNATIONAL INTERDEPENDENCY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary suspension of the Insured's business activities at an Insured Location, if the suspension is caused by direct physical loss of or damage to Property (of

the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at a **Location**, that would be an Insured Location if it were located in the Coverage Territory of this Policy.

The **Location** that sustains direct physical loss or damage cannot be located within the Coverage Territory of this Policy and is located anywhere in the world, except for:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belarus, Benin, Botswana, Burkina - Faso, Burundi, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Republic of Congo, Democratic Republic of the Congo, Cuba, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gabon, Gambia, Ghana, Guinea, Guinea-Bissau, Georgia, Haiti, Iran, Iraq, Ivory Coast, Kazakhstan, Kampuchea (Cambodia), Kenya, Kyrgyzia, Laos, Lebanon, Lesotho, Liberia, Libya, Macedonia, Madagascar, Malawi, Mali, Mauritania, Mayotte, Mongolia, Montenegro, Mozambique, Myanmar (Burma), Namibia, Niger, Nigeria, North Korea, Pakistan, Palestine, Reunion, Rwanda, Sao Tomé and Principé, Senegal, Serbia, Sierra Leone, Somalia, Sri Lanka, Sudan, Swaziland, Syria, Tajikistan, Tanzania, Tibet, Togo, Turkmenistan, Uganda, Uzbekistan, Western Sahara, Yemen, Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

The Insured Location must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**. The Company will pay for the actual Time Element loss sustained, in excess of the Policy Deductible, but not to exceed the number of consecutive days following such suspension as stated in the Declarations up to the limit applying to this Coverage.

5.02.16.01.    Any Time Element loss directly or indirectly caused by or resulting from any **Terrorist Activity** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded when the **Location**, that would be an Insured Location if it were located in the Coverage Territory of this Policy is outside of the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico.

## 5.02.17.    LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of **Contaminant**(s) from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of such **Contaminant**(s) is a result of direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property.

5.02.17.01.    This Policy excludes the cost to cleanup, remove and dispose of **Contaminant**(s) from such property:

5.02.17.01.01.    At any **Location** where the building or structure is not insured by this Policy;

5.02.17.01.02.    At any property insured under Newly Acquired, Errors and Omissions or Miscellaneous Unnamed Location Coverage provided by this Policy; or

5.02.17.01.03.    When the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

5.02.18.        LAND IMPROVEMENTS

The Company will pay for the additional cost of reclaiming, restoring or repairing **Land Improvements** resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property at an Insured Location**.**

5.02.18.01.        As respects lawns, plants, shrubs or trees direct physical loss or damage directly or indirectly caused by or resulting from Earthquake, **Flood**, or **Named Storm** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss is excluded.

5.02.19.        MISCELLANEOUS PERSONAL PROPERTY

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to the following property while within the coverage territory but away from an Insured Location.

5.02.19.01.        The Insured's interest in Personal Property; and

5.02.19.02.        Property of Others that is:

5.02.19.02.01.        In the Insured's care, custody or control;

5.02.19.02.02.        In which the Insured has an insurable interest or obligation;

5.02.19.02.03.        For which the Insured is legally liable; or

5.02.19.02.04.        For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

5.02.19.02.05.        This Coverage excludes property in transit or insured under any other coverage in this Policy.

**5.02.20.        MISCELLANEOUS UNNAMED LOCATIONS**

5.02.20.01.        The Company will pay for:

5.02.20.01.01.        Direct physical loss of or damage caused by a **Covered Cause of Loss** at a **Miscellaneous Unnamed Location**; and

5.02.20.01.02.        The actual Time Element loss sustained by the Insured, during the Period of Liability, resulting from the **Suspension** of the Insured's business activities if such **Suspension** is caused by direct physical loss or damage caused by a **Covered Cause of Loss**;

5.02.20.02.        To the following:

5.02.20.02.01.        Covered Property at a **Miscellaneous Unnamed Location** that has been reported to the Insurer, but agreed by the Insurer not to be scheduled;

5.02.20.02.02.        Covered Property at a **Miscellaneous Unnamed Location** that has not been reported to the Insurer and is under the Insured's care, custody and control; or

5.02.20.02.03.        Covered Property at a **Miscellaneous Unnamed Location** that has not been reported to the Insurer and is not under the Insured's care, custody and control.

5.02.20.03.        This Coverage will not apply for loss or damage that is payable under any other provision in this Policy**.**

## 5.02.21.    NEWLY ACQUIRED

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to property (of the type insurable under this Policy), at any **Location** purchased, leased or rented by the Insured after the inception date of this Policy. This Coverage applies from the date of purchase, lease or rental. The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at that **Location**, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property (other than **Finished Stock**).

The Coverage provided above will end at the earliest of: the Policy expiration, the number of consecutive days as stated in the Declarations after the Insured first acquired an interest in the Covered Property, or when the Insured reports the **Location** to the Insurer.

## 5.02.22.    OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE AND TIME ELEMENT LOSS

The Company will pay for direct physical loss of or damage to Covered Property and for the actual Time Element loss sustained as provided by the Policy during the **Period of Service Interruption** at Insured Locations caused by the interruption of an incoming service consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data or video or from the lack of outgoing voice, data, video or sewage service.

The lack of service must result from direct physical loss of or damage caused by a **Covered Cause of Loss** to property (other than satellites but including transmission and distribution lines) of the supplier of such service located within this Policy's Territory, that immediately prevents in whole or in part the delivery of such usable services.

This Coverage will only apply when the **Period of Service Interruption** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the applicable deductible, but not more than the limit applying to this Coverage.

5.02.22.01.    Exclusions 3.03.01.02.and 3.03.04. do not apply to Off Premises Service Interruption Property Damage and Time Element Loss.

5.02.22.02.    The following additional exclusion applies:

This Policy excludes direct physical loss or damage and Time Element loss directly or indirectly caused by or resulting from the interruption of such services, when such interruption is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 5.02.23.    PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees paid to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from loss or damage payable under this Policy for which the Company has accepted liability.

This Coverage will not include the fees and costs of attorneys, **Public Adjusters**, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them, nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

## 5.02.24.    PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers, up to the limit applying to this Coverage:

5.02.24.01.    The reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent physical loss or damage due to a **Covered Cause of Loss** to such Covered Property; and

5.02.24.02.    The Gross Earnings loss or Gross Profit loss sustained by the Insured for a period of time not to exceed the hours listed in the Declarations prior to and after the Insured first taking reasonable action for the temporary protection and preservation of Covered Property.

5.02.24.03.    This Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

## 5.02.25.    RADIOACTIVE CONTAMINATION

The Company will pay for direct physical loss of or damage to Covered Property at an Insured Location caused by sudden and accidental radioactive contamination, including resultant radiation damage, provided:

5.02.25.01.    Radioactive contamination arises out of material at the Insured Location:

5.02.25.01.01.    Which is commonly known to be radioactive;

5.02.25.01.02.    Is used as part of the Insured's business activities; and

5.02.25.01.03.    There is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction, nor any new or used nuclear fuel which is intended for or which has been used in that type of nuclear reactor at the Insured Location.

## 5.02.26.    RESEARCH AND DEVELOPMENT

The Company will pay for the fixed charges and fixed expenses (including **Ordinary Payroll**) actually incurred by the Insured directly attributable to the interruption of research and development project(s) after direct physical loss of or damage caused by a **Covered Cause of Loss** to research and development project(s) up to the limit applying to this Coverage.

5.02.26.01.    Coverage starts when there is direct physical loss of or damage caused by a **Covered Cause of Loss** to research and development project(s) and ends the earlier of:

5.02.26.01.01.    The time period stated in the Declarations; or

5.02.26.01.02.    When the research and development project(s) has resumed.

5.02.26.02.    This Policy will not pay for any other Time Element loss under this Coverage. Loss under this Coverage does not include any fixed charges and/or fixed expenses (including **Ordinary Payroll**) otherwise payable elsewhere in the Policy.

| 5.02.27 | RESEARCH IN PROGRESS |
|---|---|

5.02.27 **RESEARCH IN PROGRESS**

This Policy covers insured physical loss or damage to research in progress.

5.02.27.01 RESEARCH IN PROGRESS Exclusions: As respects research in progress, the following additional exclusions apply:

This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
l) death, destruction, or injury from natural causes.
2) escape
3) sickness, disease, infection, infestation or illness.
4) error or omission in processing and/or failure on the part of the Insured to provide nourishment, medicine or sanitary conditions.
5) contamination of animals, food or medicine.

5.02.27.02 RESEARCH IN PROGRESS Valuation: On properly covered under this Additional Coverage the loss amount will not exceed the lesser of:
1) the cost to replace or recreate the study, including animals and other raw material costs, overhead, laboratory, research and experimentation costs, or
2) amount specified in any contracts for damage or the destruction of such storage.
3) Embryos is $15,000 for any one patient or donor

5.02.27.03 The gross earnings and gross profit coverages are extended to insure the Actual Loss Sustained by the Insured of continuing fixed charges and Ordinary Payroll directly attributable to the interruption of research and development activities, that in themselves would not have produced income during the period of liability .

The period of liability for this time element coverage extension will be the period from the time of direct physical loss or damage of the type insured by this Policy to the time when the property could be repaired or replaced and made ready for operations, but as respects gross profit and Ordinary Payroll such period of time shall not exceed the period of time shown in the limit of liability clause of the declarations section. Such period of time shall not be limited by the date of expiration of this Policy.

## 5.02.28. RESEARCH ANIMALS

The Company will pay for death or if destruction is made necessary of Research Animals and the Insured's reasonable and necessary costs incurred to research, replace or restore the animal lost to the condition that existed prior to the loss when caused by a **Covered Cause of Loss**, while anywhere within this Policy's Territory, including while in transit**,** when the loss is in excess of the amount stated in the Declarations. This Coverage does not apply to loss of the Research Animals that cannot be replaced to the condition that existed prior to the loss.

5.02.28.01 RESEARCH ANIMALS Valuation

5.02.28.02 For Research Animals bred or purchased for sale and eggs produced for sale, the regular cash selling price at the location where the loss happens, less all discounts and charges to which the animals bred or purchased for sale or eggs would have been subject had no loss happened and less any variable costs not incurred as a result of the loss of such animals bred or purchased for sale or eggs.

On all other animals the lesser of:

1) the cost of reproducing from back-up genetic date or duplicates not to include any research and development cost associated with replacing a **lost strain** with a new strain, or

2) amount specified in any contracts for damage or the destruction of such material, or

3) the actual expenditure incurred in replacing the animals

5.02.28.02.    The following additional exclusions apply:

5.02.28.01.02.    Death or destruction from natural causes, unknown causes, medical procedures including surgery, inoculation, parturition, or abortion;

5.02.28.01.03.    Errors or omission in processing and/or failure on the part of the Insured to provide nourishment, medicine or sanitary conditions;

5.02.28.01.04.    **Contamination** of animal, food or medicine;

5.02.28.01.05.    The intentional slaughter of animals;

5.02.28.01.06.    Escape, unless directly resulting from a **Covered Cause of Loss**; or

5.02.28.01.07.    Death or destruction resulting from activities of any animal, unless resulting from a **Covered Cause of Loss**.

## 5.02.29.    SPOILAGE

In the event of spoilage of **Raw Materials**, **Stock in Process, Finished Stock** or **Merchandise**, caused by a sudden and accidental **Breakdown** of **Covered Equipment** or a part thereof, the Company will pay for such spoilage provided the **Raw Materials**, **Stock in Process, Finished Stock** or **Merchandise** is in storage or in the course of being manufactured.

## 5.02.30.    TENANTS PROHIBITED ACCESS

The Company will pay for the actual Gross Earnings or Gross Profit loss sustained, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if access to that **Location** by the Insured's suppliers, customers or employees is physically obstructed due to the owner, landlord or a legal representative of the building owner or landlord, prohibiting access to the Insured Location. This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not more than the limit applying to this Coverage.

5.02.30.01.    The following additional exclusion applies:

This Policy excludes loss directly or indirectly caused by or resulting from prohibited access to the Insured Location, when such prohibited access is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the use of such **Location** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 5.02.31.          TRANSIT

5.02.31.01.                    The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property while in transit within the coverage Territory and including:

5.02. 31.01.01.                      The Insured's interest in Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. The Insured's contingent interest is admitted.

5.02. 31.01.02.                      The Insured's loss of property caused by fraud or deceit perpetrated by any person or persons who may represent themselves to be the proper party or parties to receive goods for shipment or accept goods for delivery.

5.02. 31.01.03.                      The Insured's legal liability as a carrier of lawful goods and merchandise by vehicles under bills of lading or shipping receipts issued by the Insured, while in the Insured's custody or in the custody of connecting carriers in transit.

5.02. 31.01.04.                      The Insured's interest in general average, salvage and other charges on shipments covered hereunder.

5.02. 31.01.05.                      The Insured is granted the privilege to ship under released or limited bills of lading or shipment receipts.

5.02. 31.02.                    The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities at the destination Location, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property (other than **Finished Stock**).

The Company will pay for the reasonable and necessary extra expenses incurred by the Insured, during the Period of Liability**,** to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy.

The Company will reduce the amount payable as extra expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.

Extra expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy. Extra expense does not include any Gross Earnings loss or Gross Profit loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

5.02. 31.03.                    Coverage starts when Covered Property is in or on the transporting vehicle and the vehicle leaves the originating Location and ends upon arrival at the destination Location and the goods are transferred to the custody and control of the consignee, warehouseman, or receiver.

5.02. 31.04.                    The Company will not pay for loss or damage to:

5.02. 31.04.01.                    Property while waterborne, except:

5.02. 31.04.01.01.              While on the navigable inland waterways of a country;

| 5.02. 31.04.01.02. | While on roll-on/roll-off ferries between countries; or |
|---|---|

5.02. 31.04.01.03.          While on coastal shipments.

5.02. 31.04.02.          Property shipped by mail from the time it passes into custody of any governmental postal service;

5.02. 31.04.03.          Property for sale while in the care, custody or control of the Insured's sales persons or representatives;

5.02. 31.04.04.          Any conveyance used for property in transit;

5.02. 31.04.05.          Property insured under any import or export ocean marine insurance; or

5.02. 31.04.06.          Property under airborne shipment unless by regularly scheduled passenger airlines or air freight **Carriers**.

5.02. 31.05.          If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

## 5.02.32.          VALUABLE PAPERS AND RECORDS

The Company will pay for direct physical loss of or damage caused by a **Covered Cause of Loss** to **Valuable Papers and Records** at an Insured Location. For all **Valuable Papers and Records**, the Company will pay for the value of the blank personal property, and the Insured's reasonable and necessary costs incurred to research, replace or restore the information lost or damaged thereon.

Except:

For **Electronic Data** and/or **Program (Software)**, the Company will pay for the value of the blank **Media**, and the cost of reproducing the **Electronic Data** and/or **Program (Software)** from duplicates or originals of the previous generation of the data.

This Coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

## 5.02.33.          NEW CONSTRUCTION OR ADDITIONS

The Company will pay, up to the limit applying to this Coverage, for:

5.02.33.01.          Direct physical loss of or damage to Property of the type insurable under this policy that is **New Construction or Additions**;

5.02.33.02.          The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion**; and

5.02.33.03.          The Actual Loss Sustained incurred by the Insured as **Soft Costs** during such **Delay in Completion**.

5.02.33.04.          The Coverage for Time Element will only apply when the **Delay in Completion** exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay up to the number of consecutive days stated in the Declarations after the **Qualifying Period**.

5.02.32.05.    The following additional exclusion applies to coverage provided in **NEW CONSTRUCTION OR ADDITIONS**:

This Policy excludes direct physical loss or damage directly or indirectly caused by or resulting from the effects of rain, sleet, or snow, whether or not driven by wind, on the interior portion of buildings under construction or addition when the installation of the roof, walls or windows of such buildings has not been completed regardless of any other cause or event, whether or not otherwise insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 5.02.34.    OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION

This Policy covers direct physical loss or damage to property (of the type insurable under this Policy) caused by a **Covered Cause of Loss** that is under contract to be used in a construction project at an Insured Location. Coverage attaches at the time such property is delivered to the Insured or its contractor (with respect to the property under construction) by the manufacturer or supplier and such property is located at a storage site within this Policy's Territory but away from the Insured Location.

This Coverage includes necessary expendable materials and supplies to be used in the construction project but does not include any property owned or rented by the contractor.

## 5.02.35.    HOME HEALTH CARE MEDICAL EQUIPMENT

This Policy insures direct physical loss or damage caused by a **Covered Cause of Loss** to Covered Property that is placed in the care, custody and control of your patients. Coverage attaches at the time such property is delivered into the patients' care, custody and control and such property is located within this Policy's Territory but away from the Insured Location.

This Coverage will not apply to loss or damage that is payable under any other provision in this Policy.

## 5.02.36.    INTERRUPTION BY COMMUNICABLE DISEASE

The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the **Location**.

This Policy also covers the reasonable and necessary cost incurred for the cleanup, removal and disposal of the actual not suspected presence of substances(s) causing the spread of such communicable disease and to restore the locations in a manner so as to satisfy such authorized governmental agency.

This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as **Qualifying Period** in the **Qualifying Period** clause of the Declarations section. If the **Qualifying Period** is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

This Coverage will not apply to loss or damage that is payable under any other provision in this Policy.

5.02.37.        MOBILE MEDICAL EQUIPMENT

The Company insures for direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property used in the Insured business activities while within the coverage Territory but away from an Insured Location.

The Policy also covers the actual Time Element loss sustained by the Insured, during the Period of Liability resulting from the necessary **Suspension** of the Insured's business activities, if the **Suspension** is caused by direct physical loss of or damage caused by a **Covered Cause of Loss** to such Property.

This Coverage will not apply to loss or damage that is payable under any other provision in this Policy.

5.02.38.        PROTECTION OF PATIENTS

This Policy insures reasonable and necessary costs incurred for actions to temporarily remove and return patients at the Insured Location; provided such actions are necessary due to impending, physical loss or damage due to a **Covered Cause of Loss** to Covered Property when the cost is in excess of the amount stated in the Declarations. No deductible applies to this Coverage.

This coverage will not apply if direct physical loss or damage by a **Covered Cause of Loss** to Covered Property occurs at the Insured Location.

5.02.39.        CRISIS MANAGEMENT

We will pay actual business income loss sustained by you and extra expense due to an order of civil or military authority that prohibits access to a covered location, provided that such order is a direct result of a violent crime, suicide, attempted suicide, verbal threats, physical assault, or armed robbery at such covered location.

Coverage is only provided for the lesser of:

a.        The number of days after the order of civil or military authority prohibits access to a
         covered location shown in the Declarations; or

b.        The number of days until the covered location is reopened for business;
         subject to the sublimit of liability for Crisis Management.

5.02.40        CONTRACTUAL PENALTIES

We will pay for contractual penalties you are legally liable to pay under the written provisions of a contract executed prior to the loss or damage due to a material breach of that contract.

This material breach of contract must be the direct result of direct physical loss or damage by a Covered Cause of Loss to **covered property**.

5.02.41        PROFESSIONAL EMPLOYEE REPLACEMENT EXPENSE
We will pay for reasonable and necessary expenses to replace the following professional employees:
a. Administrators;

b. Doctors;
c. Nurses; and
d. Researchers;
who resigned due to direct physical loss or damage by a Covered Cause of Loss to a covered location, provided that, the period of indemnity exceeds thirty (30) consecutive days.

We will not pay for expenses to replace professional employees with: (1) leased or temporary employees, (2) professional employees who resigned due to such loss or damage, or (3) third-party contract employees. Expenses include reasonable and necessary additional costs of hiring third-party recruiting firms, advertising expenses and overtime of your employees, but shall not include the benefits or compensation of your employees or your general overhead.

| 5.02.42 | LOGISTICS EXTRA COST |

We will pay the extra cost incurred by you due to the disruption of the normal movement of goods or materials:
a. Directly between covered locations; or
b. Directly between a covered location and a location of your direct customer or your direct supplier;

provided that such disruption is a direct result of direct physical loss or damage by a Covered Cause of Loss to the type of property insured under this Policy located anywhere in the world.

We will pay reasonable and necessary extra costs incurred by you to temporarily continue, as nearly normal as practicable, the movement of goods or materials commencing:
a. 48 hours after such disruption; or
b. In the case of disruption caused by earth movement, flood or windstorm or hail, 168 hours after such disruption.

The following additional exclusions apply to this Additional Coverage. This Additional Coverage does not apply to:
a. Any loss resulting from disruption of incoming or outgoing electricity, gas, fuel, water, steam, telecommunications, sewerage, or refrigeration;
b. Any loss of any income, including business income;
c. Any expenses or costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials;
d. Any expenses or costs of permanent repair or replacement of property that has been damaged or destroyed; or
e. Any expenses or costs recoverable elsewhere in this Policy.

## 5.03. DESCRIBED CAUSES OF LOSS

### 5.03.01. BREAKDOWN OF EQUIPMENT

The Company will pay for direct physical loss of or damage to **Covered Equipment**, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by a sudden and accidental **Breakdown** of **Covered Equipment** or a part thereof, which manifests itself by physical damage at the time of its **Occurrence** and necessitates repair or replacement; subject to the terms and conditions set forth in this Policy, regardless of any other cause or event contributing concurrently or in any other sequence of loss.

All **Breakdown(s)** at any one Insured Location that manifest themselves at the same time and are the result of the same cause will be considered one **Breakdown**.

**5.03.02.**     **EARTH MOVEMENT**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Earth Movement** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism, sprinkler leakage or **Flood** will not be considered loss by **Earth Movement** within the terms and conditions of this Policy.

All **Earth Movement** that occurs within the period defined in the Declarations will constitute a single **Occurrence**. The expiration of this Policy will not reduce that period. The Insured may elect the point in time when the period defined in the Declarations begins; but such point in time must not precede loss or damage to Covered Property.

**5.03.03.**     **FLOOD**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Flood** regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism or sprinkler leakage will not be considered to be loss by **Flood** within the terms and conditions of this Policy.

**5.03.04.**     **NAMED STORM**

The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by **Named Storm**; regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism, sprinkler leakage or **Flood** will not be considered loss by **Named Storm** within the terms and conditions of this Policy.

All **Named Storm** damage that occurs within the period defined in the Declarations will constitute a single **Occurrence**. The expiration of this Policy will not reduce that period. The Insured may elect the point in time when the period defined in the Declarations begins; but such point in time must not precede loss or damage to Covered Property.

# SECTION VI – GENERAL POLICY CONDITIONS

6.01.             CANCELLATION/NON-RENEWAL

6.01.01.           Cancellation

6.01.01.01.           The **First Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

**6.01.01.02.**           The Company may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

6.01.01.02.01.           The number of days before the effective date of cancellation if the Company cancels for nonpayment of premium, as stated in the Declarations; or

6.01.01.02.02.           The number of days before the effective date of cancellation if the Company cancels for any other reason, as stated in the Declarations.

6.01.01.03.           The Company will mail or deliver notice to the **First Named Insured's** mailing address shown in the Declarations of this Policy or any Endorsement attached thereto.

6.01.01.04.           Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

6.01.01.02.           If this Policy is cancelled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, the refund will be pro rata. If the **First Named Insured** cancels, the refund will be pro rata.. The cancellation will be effective even if the Company has not made or offered a refund.

6.01.01.06.           If notice is mailed, proof of mailing will be sufficient proof of notice.

6.01.01.07.           If under the laws of the jurisdiction in which the property is located, such cancellation terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

6.01.02.           Non-renewal

6.01.02.01.           The Company may non-renew this Policy by mailing or delivering to the **First Named Insured** written notice, the number of days before the non-renewal, as permitted by law in the jurisdiction where in the property is located.

6.02.             CERTIFICATES OF INSURANCE

Any certificate of insurance issued in connection with this Policy is provided solely as a matter of convenience or information for the addressee(s) or holder(s) of such certificate of insurance, except as provided under the Policy when a loss payee(s) or mortgagee(s) are named. The certificate does not amend, extend or alter the coverage afforded by the Policy.

In the event this policy is cancelled pursuant to the CANCELLATION/NON-RENEWAL provision, other than for nonpayment of premium, and except as provided otherwise, the Company shall endeavor to provide notice of cancellation to those entities set out in the certificates of insurance on file with the Company, as soon as practicable, after notifying the **First Named Insured**. However, in no event will failure to provide notice to entities set out in certificates of insurance waive the Company's right or ability to cancel the policy as allowed by law.

The Company hereby authorizes the Producer named on the Policy to issue certificates of insurance consistent with the foregoing.

## 6.03. CONCEALMENT, MISREPRESENTATION OR FRAUD

6.03.01.    This Policy is void as to all Insureds in any case of fraud by any Insured as it relates to this Policy at any time. It is also void if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

6.03.01.01.    This Policy;

6.03.01.02.    The Covered Property;

6.03.01.03.    The Insured's interest in Covered Property; or

6.03.01.04.    A claim under this Policy.

## 6.04. CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by the Company shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

## 6.05. CONTROL OF DAMAGED GOODS

In the event of direct physical loss of or damage caused by a **Covered Cause of Loss** to **Finished Stock** or **Merchandise** that carries the Insured's brand or trade name; this Policy gives control of the physically damaged property as follows, all subject to 6.05.05.

6.05.01.    The Insured will have full rights to the possession, control and disposition of damaged property in the event of insured direct physical loss or damage to such property provided the Company agrees that the property is physically damaged.

6.05.02.    The Insured, using reasonable judgment, will decide if the Insured can reprocess or sell the physically damaged property.

6.05.03.    If the Company takes possession of property that carries the Insured's brand or trade name that has sustained direct physical loss or damage, the Company will pay for the Insured or the Insured representative to stamp "salvage", remove, or obliterate the brand, label or trade name on the property or its containers if doing so will not damage the property. In either event, the Insured must re-label such property or its containers to comply with any applicable law.

6.05.04.    The salvage value of property that is claimed damaged shall be determined at the time of loss.

6.05.05.    The Insured will allow the Company to deduct from the amount of loss otherwise payable, the fair market value of such salvage, which could have been obtained on any sale or other disposition of goods or products through normal insurance industry salvage practices.

## 6.06. CURRENCY FOR LOSS PAYMENT

6.06.01.    Losses will be adjusted and paid in the currency designated in 2.02., unless directed otherwise by the Insured. In the event of a loss adjustment involving Local Currency, the exchange-selling rate will be calculated as follows:

6.06.01.01.    As respects the calculation of deductibles and Limits of Liability, the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of settlement.

6.06.01.02.    As respects direct physical loss or damage to Real and Personal Property:

6.06.01.02.01.    The cost to repair or replace Real and Personal Property will be converted at the time the cost of repair or replacement is incurred based on the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of settlement.

6.06.01.02.02.    If such property is not replaced or repaired, the conversion will be based on the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of loss.

6.06.01.03.    As respects Time Element loss the conversion will be based on the average of the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the date of loss and the rate of exchange published in the Midwest Ed. of The Wall Street Journal on the last day of the Period of Liability.

6.06.01.04.    If the Midwest Ed. of The Wall Street Journal was not published on the stipulated date, or the rate of exchange was not published on the stipulated date, the rate of exchanged will be as published on the next business day the rate is published.

## 6.07. INSPECTIONS AND SURVEYS

6.07.01.    The Company has the right but not the obligation to make inspections and surveys at any time, to give the Insured reports on the conditions found, and to recommend changes.

6.07.02.    Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, nor does it represent that conditions are safe, healthful, or comply with laws, regulations, codes or standards.

6.07.03.    This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

## 6.08. JOINT LOSS

This clause applies only if all of the following requirements are met:

6.08.01.    The **BREAKDOWN** OF EQUIPMENT Coverage is shown as NCP in the Declarations of this Policy and the **BREAKDOWN** OF EQUIPMENT Coverage carried by the Named Insured, insuring the Covered Property contains a similar Joint Loss provision with substantially the same requirements, procedures, and conditions as contained in this Policy.

6.08.02.    The loss or damage to the Covered Property was caused by a **Covered Cause of Loss** for which both the Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage admit to some liability for payment under the respective policies.

6.08.03.    The total amount of loss is agreed to by the Insured, the Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage.

6.08.04.    The Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage disagree as to the amount of loss that both should pay that is attributable to:

6.08.04.01.    An accident covered under the **BREAKDOWN** OF EQUIPMENT Coverage; and

6.08.04.02.    A **Covered Cause of Loss** under the Property Coverage.

6.08.05.    If the requirements listed above are satisfied, the Insurer(s) of the Property Coverage and of the **BREAKDOWN** OF EQUIPMENT Coverage will make payments to the extent, and in the manner, described in the following:

6.08.05.01.    The Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered by **BREAKDOWN** OF EQUIPMENT Coverage and one-half (1/2) the amount of loss that is in disagreement.

6.08.05.02.    The Insurer(s) of the Property Coverage will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered by the Property Coverage and one-half (1/2) the amount of loss that is in disagreement.

6.08.05.03.    The amount in disagreement to be paid by the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage and the Insurer(s) of the Property Coverage under this Joint Loss provision shall not exceed the amount payable under the equivalent loss adjustment provisions of the Insurer(s) of the Property Coverage and the **BREAKDOWN** OF EQUIPMENT Coverage.

6.08.06.    The amount to be paid under this Joint Loss provision shall not exceed the amount that would have been paid had no Property Coverage or, in the alternative, no **BREAKDOWN** OF EQUIPMENT Coverage been in effect at the time of loss.

6.08.07.    Acceptance by the Insured of sums paid under this Joint Loss provision does not alter, waive or surrender any other rights against the Insurer(s).

6.08.08.    Additional Conditions:

6.08.08.01.    The Insurer(s) of the Property Coverage and the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage agree to submit their differences to arbitration within 90 days after payment of the loss under the terms of this Joint Loss provision.

6.08.08.02.    The Insured agrees to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by the Insurer(s) of the **BREAKDOWN** OF EQUIPMENT Coverage and the one will be appointed by the Insurer(s) of the Property Coverage. The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction. The Insurer(s) of the BREAKDOWN OF EQUIPMENT Coverage will pay their designated arbitrator and the Insurer(s) of the Property Coverage will pay their designated arbitrator. The Insurer(s) of the BREAKDOWN OF EQUIPMENT and the Insurer(s) of the Property Coverage will split the expense of the third arbitrator.

6.09.    JURISDICTION

Any disputes arising hereunder will be exclusively subject to the jurisdiction of a court of competent jurisdiction within the USA.

## 6.10.    LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS

6.10.01.    When specified in the Policy or in Certificates of Insurance on file with the Company, the Company will pay for covered loss to property insured under this Policy to each:

6.10.01.01.    Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, in order of precedence; or

6.10.01.02.    Mortgagee as its interest may appear, in order of precedence.

6.10.02.    The interest of the specified Lender or Mortgagee in property insured under this Policy will not be invalidated by:

6.10.02.01.    Any act or neglect of any Insured.

6.10.02.02.    Commencement of foreclosure, notice of sale, or similar proceedings with respect to the property.

6.10.02.03.    Change in the title or ownership of the property.

6.10.02.04.    Change to a more hazardous occupancy.

6.10.03.    The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within ten (10) days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

6.10.04.    In the event of a claim, upon request of the Company, the Lender or Mortgagee will cooperate in any claim investigation.

6.10.05.    If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

6.10.05.01.    Earlier terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender, Mortgagee, or its agent.

6.10.05.02.    This Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

6.10.06.    The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by sending the specified Lender or Mortgagee written notice sixty (60) days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment of premium. If the Insured has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will send the Lender or Mortgagee written notice thirty (30) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

| 6.10.07. | The Company has the right to invoke this Policy's Suspended Property clause. When the Company suspends the insurance, it will apply to the interest of any Lender or Mortgagee. The Company will send the specified Lender or Mortgagee, at the last known address, a copy of such notice. |
| --- | --- |
| 6.10.08. | If the Company pays a Lender or Mortgagee for any loss, and denies payment to the Insured, the Company will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral. No subrogation will impair the right of the Lender or Mortgagee to recover the full amount of its claim. At its option, the Company may pay to a Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest and charges. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company, and the remaining debt or mortgage will be paid to the Company. |
| 6.10.09. | If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the Insured's duties, obligations and provisions of this Policy when presenting a claim. |
| 6.10.10. | In no event will the amount payable to a Lender or Mortgagee exceed the amount which would be payable to the Named Insured. |

## 6.11.  LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations are revised by statute so as to broaden this insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## 6.12.  LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to the **First Named Insured** as shown on this Policy, or as directed by the **First Named Insured**.

When a Lender or Mortgagee is named in the Certificates of Insurance on file with the Company, the Lender or Mortgagee will be included in loss payment as their interests may appear.

When a Loss Payee is named in the Certificates of Insurance on file with the Company, the loss payee will be included in loss payments made to the insured as their interests may appear. The loss payee has no other rights under the policy.

In the event of a loss insured by this Policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the Policy provisions; such payment(s) shall not be less than the undisputed estimate of direct physical loss, damage or destruction between the Insured and the Company. It is further agreed that the Company shall allow said partial payment(s) irrespective of whether or not property has been repaired or replaced

## 6.13.  LOSS CONDITIONS

| 6.13.01. | DUTIES IN THE EVENT OF LOSS OR DAMAGE |
| --- | --- |
| | The Insured must see that the following are done in the event of direct physical loss or damage to Covered Property: |
| 6.13.01.01. | Notify the police if a law may have been broken. |

| 6.13.01.02. | Give the Company prompt notice of the loss or damage. Include a description of the property involved. |
|---|---|
| 6.13.01.03. | As soon as possible, give the Company a description of how, when and where the loss or damage occurred. |
| 6.13.01.04. | Take all reasonable steps to protect the Covered Property from further damage caused by a **Covered Cause of Loss**. If feasible, set the damaged property aside and in the best possible order for examination. Also, keep a record of expenses for emergency and temporary repairs for consideration in the settlement of the claim. This will not increase the Limit of Liability. |
| 6.13.01.05. | At the Company's request, provide a complete inventory of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed. |
| 6.13.01.06. | As often as reasonably required, permit the Company to inspect the property and records evidencing the loss or damage, including taking some or all of damaged and undamaged property for inspection, testing and analysis, and permit the Company to make copies of the Insured's books and records. |
| 6.13.01.07. | Permit the Company to question the Insured, the Insured's employees and agents under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the loss or damage, including an Insured's books and records. In the event of this examination, an Insured's answers must be signed or attested to by a notary public or certified court reporter. |
| 6.13.01.08. | Give the Company a signed sworn statement of loss containing the information necessary to investigate the claim. If requested by the Company, the Company will supply the necessary form and the Insured must return this completed form within sixty (60) days of the request or as required by law. |
| 6.13.01.09. | Cooperate with the Company in the investigation or settlement of the claim. |
| 6.13.02. | ABANDONMENT |

There may be no abandonment of any property to the Company.

| 6.13.03. | SUBROGATION |

The Insured is required to cooperate in any subrogation proceedings. To the extent of the Company's payment, the Insured's rights of recovery against any party are transferred to the Company.

The Company acquires no rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of any applicable deductible and/or any provable uninsured loss, bears to the entire provable loss amount.

| 6.13.04. | APPRAISAL |

If the Insured and the Company fail to agree on the value of the property or the amount of loss, each will, on the written demand of either, select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 20 days of such demand. The Insured may not invoke appraisal unless it has first fully complied

with all provisions of this Policy, including Duties in the Event of Loss or Damage and has provided the Company with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or the Company, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss, for each item of physical loss or damage or, if for Time Element loss, the amount of loss for each Time Element Coverage of this Policy agreed to in writing by any two will determine the amount of loss.

Once there is an award, the Company retains the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. The Company further retains its right to deny the claim in whole or in part.

The Insured and the Company will each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

6.13.05.     SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this Policy. Legal action must be started within (12) twelve months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

If under the laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then, any such legal action needs to be started within the shortest limit of time permitted by such laws.

## 6.14.     NO REDUCTION BY LOSS

Loss or damage shall not reduce the amount of insurance recoverable, except where an **Annual Aggregate** applies. The reinstatement of any exhausted **Annual Aggregate** is not permitted unless authorized by the Company in writing.

## 6.15.     OTHER INSURANCE

Insurance that is intended to pay proportionally with this insurance as a part of a property insurance plan or program expressly written with other participants is not other insurance as described below..

6.15.01.     The Company will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess, Difference in Conditions/Difference in Limits and in no event as contributing insurance, and then only after all other insurance has been exhausted.

6.15.02.     The Company gives the Insured permission to purchase insurance for all or any part of the deductibles in this Policy, and the existence of underlying insurance shall not prejudice the Insured's rights under this Policy.

6.15.02.01.            The deductible and any amount paid under such insurance that would be covered under this Policy, shall apply to the deductible that would apply in this Policy.

6.15.02.02.            This Policy shall then apply on an excess, Difference in Conditions/Difference in Limits basis.

6.15.03.            The Insured can purchase excess insurance commencing on or after the inception of this Policy that is specifically excess over the Limits of Liability set forth in this Policy without prejudice to this Policy and the existence of such insurance shall not reduce any liability under this Policy.

6.15.04.            The Company will not be liable if, at the time of loss or damage, there is any insurance with NFIP; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

6.15.05.            The Company will not be liable if, at the time of loss or damage, there is any insurance for **New Construction and Additions** under a specific policy for such New Construction and Additions; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

6.15.06.            The Company will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

## 6.16.     POLICY MODIFICATION

6.16.01.            This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. Only endorsements issued by the Company and made a part of this Policy can change this Policy.

6.16.02.            Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent the Company from asserting any rights under the Policy.

## 6.17.     PRIVILEGE TO ADJUST WITH OWNER

In the event of loss or damage involving Property of Others in your care, custody or control, we have the right, but not the duty to:

6.17.01.            Settle the loss or damage with the owners of the Property.

6.17.02.            Provide a defense for legal proceedings brought against the Insured. If provided, the expense for this defense will be at the Company's cost and will not reduce any applicable limit of insurance.

## 6.18.     SETTLEMENT OF CLAIMS

6.18.01.            Loss Payment

6.18.01.01.            In the event of loss or damage to Covered Property, the Company will, at its option, either:

6.18.01.01.01.            Pay the value of lost or damaged property;

6.18.01.01.02.            Pay the cost of repairing or replacing the lost or damaged property;

6.18.01.01.03.            Take all or any part of the property at any agreed valuation; or

6.18.01.01.04.          Repair, rebuild or replace the property with other property of like kind and quality.

6.18.02.                The Company will give notice of its intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

6.18.03.                The Company will not pay more than the Insured's financial interest in the Covered Property.

6.18.04.                The Company will pay for covered loss or damage within thirty (30) days or as required by law, after receiving the sworn statement of loss, if the Insured has complied with all the terms of this Policy; and

6.18.04.01.             The Company has reached agreement on the amount of loss; or

6.18.04.02.             An appraisal award has been made, subject to 6.13.04.

6.18.05.                Priority of Payment

In the event of a claim that involves more than one interest and/or coverage and/or peril; the insured has the option to apportion recovery under this Policy when submitting final proof of loss, subject to the overall amount of claim not exceeding the applicable limit of liability and subject to all other terms and conditions of the policy.

For the purpose of attachment of coverage for excess layers, claims involving any interest and/or peril covered in the primary or underlying excess layers, but not covered in higher excess layers, will be recognized by such excess layers as eroding or exhausting the occurrence limits of the primary and/or underlying excess layer(s). Nothing, however, will extend coverage in such layers(s) to include loss from any interest and/or peril not covered in the excess layer(s) itself.

16.18.06               Partial Payment of Loss

In the event of a loss insured by this Policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the Policy provisions; such payment(s) shall not be less than the undisputed estimate of direct physical loss, damage or destruction between the Insured and the Company. It is further agreed that the Company shall allow said partial payment(s) irrespective of whether or not property has been repaired or replaced

## 6.19.      SUSPENDED PROPERTY

When Covered Property is found to be in, or exposed to, a dangerous condition, any of the Company's representatives may immediately suspend this insurance for that property. This can be done by delivering or mailing a written notice to the **First Named Insured's** mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by the Company.

## 6.20.      TITLES

The titles of the various paragraphs and endorsements are solely for reference and shall not in any way affect the provisions to which they relate.

## 6.21.      TRANSFER OF RIGHTS AND DUTIES

The Insured rights and duties under this Policy may not be transferred without the Company giving written consent.

## 6.22.    VALUATION

In the event of any claim for direct physical loss of or damage to Covered Property:

6.22.01.    The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement Cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site, but no more than the lesser of:

6.22.01.01.    The cost to repair;

6.22.01.02.    The cost to rebuild or replace on the same or another site with materials of equivalent size, kind, quality and capacity;

6.22.01.03.    The necessary cost actually expended in repairing, rebuilding or replacing on the same or another site, but not exceeding the operating capacity that existed at the time of the loss; or

6.22.01.04.    The Limits of Liability applicable to the lost or damaged property.

6.22.02.    If there is direct physical loss of or damage to Covered Property for which repair, rebuilding or replacement has not started within two (2) years from the date of direct physical loss or damage, the Company will not be liable for more than the actual cash value of the property destroyed.

6.22.03.    The Company, will pay the reduction in value of insured components or parts of products directly resulting from physical loss or damage caused by a **Covered Cause of Loss** to other insured components or parts of products, or part of a pair or set as follows:

6.22.03.01.    In case of loss or damage to any components or parts of products, or part of a pair or set, the Company will at its option:

6.22.03.01.01.    Pay the cost of repairing or replacing any part to restore the components or parts of products, pair or set to its value before the loss or damage;

6.22.03.01.02.    Repair or replace any part to restore the components or parts of products, pair or set to its value before the loss or damage; or

6.22.03.01.03.    Pay the difference between the value of the components or parts of products, pair or set before and after the loss or damage.

6.22.03.02.    If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such property to the Company.

6.22.04.    The following property shall be valued as specified below:

6.22.04.01.    For **Raw Materials** and supplies, the replacement cost.

6.22.04.02.    For **Stock in Process,** the value of **Raw Materials** and labor expended plus the proportion of overhead charges attributable to that **Stock in Process**.

6.22.04.03.    For **Finished Stock** manufactured by the Insured, the valuation as stated in the Declarations. If valued at **Selling Price**, this Policy will also pay the increased tax liability incurred by the Insured due to the profit portion of a loss payment involving **Finished Stock** being greater than the tax liability of the profits that would have been incurred had no loss occurred.

6.22.04.04.    For **Merchandise** that carries the Insured's brand or trade name, the valuation as stated in the Declarations.

| 6.22.04.05. | For all other **Merchandise**, the valuation as stated in the Declarations. |

| 6.22.04.06. | For **Fine Arts** articles, the lesser of the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss or the cost to replace the article or the value if stated on a schedule on file. If the **Fine Arts** article cannot be replaced and an appraisal is not available, the valuation shall be market value based on prevailing conditions at the time of loss or damage. |

| 6.22.04.07. | For property covered under Deferred Payments, the lesser of the total amount of unpaid installments less finance charges or the actual cash value of the property at the time of loss or the cost to repair or replace with material of like size, kind and quality. |

| 6.22.04.08. | The selling price of buildings (or structures) or machinery and equipment, other than stock, offered for sale on the date of loss, but no more than the cost to repair or replace. |

| 6.22.04.09. | The cost to replace non-repairable electrical or mechanical equipment, including computer equipment, with new equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages, represents an improvement in function, or forms part of a program of system enhancement. |

| 6.22.04.10. | **Improvements and Betterments** at replacement cost if such property is repaired or replaced at the expense of the insured. If there is direct physical loss of or damage to **Improvements and Betterments** which are not repaired, rebuilt or replaced at the expense of the insured, the Company will not be liable for more than a proportion of the original cost determined as follows: |

| 6.22.04.10.01. | Multiply the original cost of the **Improvements and Betterments** by the number of days from the loss or damage to the expiration of the lease; and |

| 6.22.04.10.02. | Divide the amount determined in 6.22.04.10.01 by the number of days from the installation of the **Improvements and Betterments** to the expiration of the lease. |

| 6.22.04.10.03. | If the lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure. |

| 6.22.04.11. | For property that is useless to the Insured or obsolete, the actual cash value. |

| 6.22.04.12. | For vehicles, the valuation as stated in the Declarations. |

| 6.22.04.13. | For **Life Support Equipment** and **Medical Monitors and other medical, clinical, and diagnostic equipment,** the cost to replace damaged **Life Support Equipment** and **Medical Monitors**, with new equipment or monitors that is the most functionally equivalent to that damaged or destroyed, even if such new equipment or monitors has technological advantages or represents an improvement in function.

The Insured using reasonable judgment will decide if the physically damaged property can be repaired or replaced. |

| 6.22.04.14. | The Insured may elect not to repair or replace such damaged Covered Property, however, if loss settlement proceeds are expended on other capital expenditures, on property of the type insurable under this policy, related to the business activities of the Insured within two years from the date of loss, the lesser of the repair or replacement cost of such property will be paid. As a condition of collecting under this clause, such expenditure must be unplanned as of the date of loss.and be made at a **Location**. This clause does not extend to Increased Cost of Construction. |

# SECTION VII - DEFINITIONS

The following term(s) wherever used in this Policy means:

7.01.　　　　**Ammonia Contamination** - The loss or damage, including salvage expense, caused by ammonia contacting or permeating Covered Property under refrigeration or in process requiring refrigeration, as the result of any one accident.

**7.02.**　　　　**Annual Aggregate** - The maximum amount of loss or damage payable in any one (1) **Policy Year** regardless of the number of **Occurrences** within the same policy year.

7.03.　　　　**Anticipated Date of Completion -** The date on which the work is scheduled to be completed, as stated in the construction contract or amendments to such contract, for the start of commercial operations or use and occupancy.

7.04.　　　　**Attraction Properties** - A property within the distance described in the declarations of an Insured Location that attracts customers to the Insured's business.

7.05.　　　　**Average Daily Value (ADV)** - The 100% Gross Earnings value or 100% Gross Profit value at the **Location(s)** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues for the Policy Period divided by the number of working days in the Policy period.

**7.06.**　　　　**Breakdown -**

7.06.01.　　　　A failure of pressure or vacuum equipment;

7.06.02.　　　　An electrical failure including arcing; or

7.06.03.　　　　A mechanical failure including rupture or bursting caused by centrifugal force.

7.06.04.　　　　7.06.01., 7.06.02., 7.06.03. includes an explosion to a steam boiler, electric steam generator, steam piping, steam turbine, steam engine, gas turbine, or moving or rotating machinery when such explosion is caused by centrifugal force or mechanical failure; but not the explosion of gases or fuel within the furnace of any **Covered Equipment** or within the flues or passages through which the gases of combustion pass; nor combustion explosion outside the **Covered Equipment**.

7.06.05.　　　　**Breakdown** does not mean or include:

7.06.05.01.　　　　Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

7.06.05.02.　　　　Defects, erasures, errors, limitations or viruses in computer equipment and programs;

7.06.05.03.　　　　Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

7.06.05.04.　　　　Damage to any vacuum tube, gas tube or brush;

7.06.05.05.　　　　Damage to any structure or foundation supporting any **Covered Equipment** or any of its parts;

7.06.05.06.　　　　Functioning of any safety or protective device; or

7.06.05.07.　　　　Cracking of any part on an internal combustion gas turbine exposed to the products of combustion.

7.07.     **Carrier** - Contract or public truck men and motor transit companies or connecting carriers.

7.08.     **Computer Virus** - Any **Software**, **Electronic Data** or code that affects the operation or functionality of any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment, **Program**, Computer **Software** or operating systems, programming instructions, or data including, but not limited to any destructive **Program**, computer code, **Computer Virus**, worm, logic bomb, denial of service attack, smurf attack, vandalism, Trojan Horse or any other data introduced into any electronic system causing deletion, destruction, degradation, corruption, malfunction or compromise of **Electronic Data**, **Software** or electronic business systems.

7.09.     **Contamination(Contaminated)** - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

7.10.     **Contaminant(s)** - Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**.

7.11.     **Covered Cause of Loss** - All risks of direct physical loss of or damage from any cause unless excluded.

7.12.     **Covered Equipment** - Any boiler fired pressure vessel, unfired vessel normally subject to vacuum or internal pressure other than weight of its contents, refrigerating and air conditioning systems, any metal piping and its accessory equipment, and mechanical, or electrical machines or apparatus used for the generation, transmission, or utilization of mechanical or electrical power, not otherwise excluded as Covered Property.

7.12.01     **Covered Equipment** does not include any of the following:

7.12.01.01.     Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

7.12.01.02.     Insulating or refractory material, but not excluding the glass lining of any **Covered Equipment**;

7.12.01.03.     Non-metallic pressure or vacuum equipment unless it is constructed and used in accordance with the American Society of Mechanical Engineers (ASME) code or another appropriate and approved code;

7.12.01.04.     Catalyst;

7.12.01.05.     Vessels, piping and other equipment that is buried below ground and requires the excavation of materials to inspect, remove, repair or replace;

7.12.01.06.     Vehicle, aircraft, self-propelled equipment of floating vessel including any Covered Property (equipment) that is mounted upon or used solely with any one or more Vehicle(s), aircraft, self-propelled equipment or floating vessel;

7.12.01.07.     Drag-line, excavation or construction equipment including any Covered Property or **Covered Equipment** that is mounted upon or used solely with any one or more drag-lines, excavation, or construction equipment;

7.12.01.08.      Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, non-metal part or any part or tool subject to periodic replacement;

7.12.01.09.      Equipment or any part of such equipment manufactured by the Insured for sale.

7.13.      **Daily Value (DV)** - The 100% Gross Earnings value or 100% Gross Profit value at the **Location(s)** where the direct physical loss or damage occurred and all other **Locations** where Time Element loss ensues, for the Period of Liability divided by the number of working days in such Period of Liability.

7.14.      **Delay in Completion -** The period of time between the **Anticipated Date of Completion** and the actual date on which commercial operations or use and occupancy can commence with the exercise of due diligence and dispatch.

7.15.      **Described Cause(s) of Loss** - **Breakdown** of Equipment, **Earth Movement**, **Flood**, or **Named Storm**.

7.16.      **Direct Dependent Time Element Location** -

7.16.01.      Any **Location** of a direct: customer, supplier, contract manufacturer or contract service provider to the Insured;

7.16.02.      Any **Location** of any company under a royalty, licensing fee or commission agreement with the Insured.

7.16.03.      A **Direct Dependent Time Element Location** does not include Locations that are Insured Locations under this Policy or the Locations of any company directly or indirectly supplying to, or receiving from, the Insured, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

7.17.      **Earth Movement** - Any **Earth Movement** including earthquake, landslide, mine subsidence, earth sinking, rising, shifting, or sinkhole collapse.

7.18.      **Electronic Data** - Data of any kind that is recorded or transmitted in a form usable in electronic computer systems or networks, microchips, integrated circuits or similar devices in non-computer equipment, and which can be stored on **Media** for use by **Programs**.

7.19.      **Fine Arts** - Includes, but is not limited to, bona fide works of art, works of rarity, works of historical values, works of artistic merit, photographs (positives and negatives), lithographs, illustrations, gallery proofs, original records, and similar property.

7.20.      **Finished Stock** – Stock, which is ready for sale by the Insured, that is manufactured:

7.20.01.      By the Insured; or

7.20.02.      Under the Insureds' direction and to the Insureds' specifications.

7.20.03.      For the purposes of the Gross Earnings and the Gross Profit Coverage only:

7.20.03.01.      **Finished Stock** also includes whiskey and alcoholic products being aged.

7.20.03.02.      **Finished Stock** does not include stock that is held for sale at any retail outlet insured under this Policy or that has been sold, that is manufactured:

7.20.03.02.01.      By the Insured; or

7.20.03.02.02.      Under the Insureds' direction and to the Insureds' specifications.

7.21.        **First Named Insured** - The First Insured listed under Named Insured.

7.22.        **Flood** - A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

7.22.01.        The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

7.22.02.        Mudflow or mudslides caused by accumulation of water on or under the ground.

7.22.03.        **Flood** also includes the backup of water from a sewer, drain or sump caused in whole or part by **Flood**.

7.22.04.        **Flood** also includes **Storm Surge** if shown on the declarations as part of **Flood**.

7.23.        **Fungus** (or **Fungi**) - Any form of fungus including, but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances or gases, products or byproducts produced by, released by, or arising out of the current or past presence of **Fungi**.

7.24.        **Improvements and Betterments -** Fixtures, alterations, installation or additions comprising part of a building occupied, but not owned by the Insured and acquired or made at the Insured's expense which the Insured cannot legally move.

7.25.        **Indirect Dependent Time Element Location** -

7.25.01.        Any **Location** of a company that is a direct: customer, supplier, contract manufacturer or contract service provider to a **Direct Dependent Time Element Location**; or

7.25.02.        Any **Location** of a company that is an indirect: customer, supplier, contract manufacturer or contract service provider to a **Direct Dependent Time Element Location**.

7.25.03.        An **Indirect Dependent Time Element Location** does not include Locations that are Insured Locations under this Policy or the Locations of any company directly or indirectly supplying to, or receiving from, the **Direct Dependent Time Element Location**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

7.26.        **Land Improvements** - Lawns, plants, shrubs or trees; pavements, roadways, sidewalks or similar works, but not including any fill or land beneath such property.

7.27.        **Lease Interest -** The excess rent paid for the same or similar replacement property over actual rent otherwise payable had there been no loss or damage, plus cash bonuses or advance rent paid (including any maintenance or operating charges) for each month during the unexpired term of the lease.

7.28.        **Life Support Equipment** - Equipment used to maintain a patient's bodily function. These include but are not limited to medical ventilators, heart-lung machines, ECMO, and dialysis machines.

7.29.        **Location** -

7.29.01.        As specified in the Schedule of Locations;

7.29.02.        If not so specified in the Schedule of Locations:

7.29.02.01.        a **Location** is a building(s) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty feet wide;

7.29.02.02.       A site or tract of land occupied or available for occupancy with tangible property; or

7.29.03.       If the Insured is a tenant,

7.29.03.01.       those portions of the building not rented by the Insured; or

7.29.03.02.       those portions of the building not intended to be rented by the Insured or others.

7.30.       **Lost Strain** - where no live or frozen inventory is available from the strain to re-establish the colony.

7.31.       **Media -** Tangible personal property on which **Electronic Data** or **Programs** can be recorded, but not the **Data** or **Programs** themselves. **Money** or **Securities** are not **Media**.

7.2       **Medical Monitors** – Monitors that allow medical staff to measure a patient's medical state. Monitors may measure patient vital signs and other parameters including but not limited to ECG, EEG, blood pressure, and dissolved gases in the blood.

7.33.       **Merchandise -** Goods kept for sale by the Insured which are not **Raw Stock**, **Stock in Process** or **Finished Stock**.

7.34.       **Miscellaneous Unnamed Location** - A **Location** owned, leased or rented by the Insured, but not specified in the Schedule of Locations.

7.35.       **Moderate Flood Hazard Area -** Is an area defined by FEMA or any foreign equivalent, between the limits of the base flood and the 0.2-percent-annual-chance or 500-year flood. A **Moderate Flood Hazard Area** is shown on the FIRM per FEMA and includes but is not limited to Zone B or Zone X (shaded). If not defined by FEMA or any foreign equivalent, it is an area between the limits of the base flood and the 0.2-percent-annual-chance or 500-year flood.

7.36.       **Money** - Currency, coins and bank notes whether or not in current use; travelers checks, register checks and money orders held for sale to the public.

7.37.       **Named Storm -** Any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any comparable worldwide equivalent.

       **Named Storm** also includes **Storm Surge** if shown on the declarations as part of **Named Storm**.

7.385.       **NCP** - No Coverage Provided.

7.39.       **Net Lease Interest** - That sum which placed at six percent 6% interest compounded annually would equal the **Lease Interest** (less any amounts otherwise payable).

7.40.       **New Construction or Additions -** Additional square footage beyond what existed and was usable for the Insured's business activities as of the <u>inception of the policy period</u>.

7.41.       **Occurrence -** All loss(es) or damage that is attributable directly or indirectly to one cause or a series of similar or related causes. All such loss(es) or damage will be treated as one **Occurrence**. However, if **Occurrence** is specifically defined anywhere in this Policy, that definition will apply to the applicable coverage provided.

7.42.       **Operations** - The Insured's business activities at the Insured Location.

7.43.       **Ordinary Payroll** - Payroll expenses for all employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses

include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums the Insured pays for.

7.44.  **Period of Interruption** - The period starting when the Insured's Electronic Data Processing Equipment or **Media** fails to operate and ending when with due diligence and dispatch, the Insured's Electronic Data Processing Equipment or **Media** could be restored to the same or equivalent operating condition that existed prior to the failure. The Period of Interruption does not include the additional time to make changes to the Insured's Electronic Data Processing Equipment or **Media**.

7.45.  **Period of Service Interruption** - The period starting when an interruption of a specified service occurs and ending when with due diligence and dispatch, the service could be restored to the same or equivalent operating condition that existed prior to the failure.

7.46.  **Policy Year** - The (12) twelve consecutive months after the date coverage begins on this Policy.

7.47.  **Program (Software)** - Any computer software, computer applications, or recorded instructions, whether digital or otherwise, for the processing, sequencing, collecting, transmittal, recording, retrieval or storage of **Electronic Data**.

7.48.  **Public Adjusters -** Individuals or groups, including consultants, secured specifically for the purpose of representing the Insured's interest in the adjustment of a claim(s) under this Policy.

7.49.  **Qualifying Period -** The continuous period of time expressed in hours or days which must be exceeded before coverage under this Policy begins.

7.50.  **Raw Stock** (or **Raw Material**) - Materials in the state in which the Insured receives it for conversion into stock in process or **Finished stock**.

7.51.  **Research in Progress -** any in process contracted research study that has not been completed in accordance with the terms of the contract. Research in Progress includes materials relating to the study, including animals and cryopreserved materials.

7.52.  **Securities -** Negotiable and non-negotiable instruments or contracts representing either **Money** (but does not include **Money**) or other property and includes:

7.52.01.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

7.52.02.  Evidences of debt issued in connection with credit or charge cards, which are not issued by the Insured.

7.53.  **Selling Price -** The regular cash selling price at the **Location** where the loss occurs, less all discounts, pilferage, waste, returns and charges to which the **Finished Stock** and **Merchandise** would have been subject had no loss occurred.

7.54.  **Soft Costs** - Expenses which are necessarily incurred during the Period of Liability, that would not have been incurred if the **Delay in Completion** had not occurred, at **Locations** undergoing renovation or in the course of construction, limited to the following:

7.54.01.  Construction loan fees -The additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction, including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

7.54.02.　　　Commitment fees, leasing and marketing expenses - The additional cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

7.54.03.　　　Additional fees – The additional cost for: architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

7.54.04.　　　Carrying costs – The additional cost of: property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

7.55.　　　**Special Flood Hazard Area (SFHA) -** Is an area defined by FEMA or any foreign equivalent that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year. The 1-percent annual chance flood is also referred to by FEMA as the base flood or 100-year flood. **SFHA**'s per FEMA include but are not limited to Zone A, Zone AO, Zone AH, Zones A1-A30, Zone AE, Zone A99, Zone AR, Zone AR/AE, Zone AR/AO, Zone AR/A1-A30, Zone AR/A, Zone V, Zone VE, and Zones V1-V30. If not defined by FEMA or any foreign equivalent, it is an area that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year.

7.56.　　　**Spores** - Any reproductive body produced by or arising out of any **Fungus** (or **Fungi**).

7.57.　　　**Stock in Process** - **Raw Stock** (or material) which has undergone any aging, seasoning, mechanical or other process of manufacture at the Insured Location, but which has not become **Finished Stock**.

7.58.　　　**Storm Surge** - A general and temporary condition of partial or complete inundation by salt water, caused by wind driven waves that result from a **Named Storm**, of normally dry land areas or structure(s) in coastal areas, bays or inland waters connected to an ocean or sea.

**7.59.　　　Suspension (Suspended) -**

7.59.01.　　　The slowdown or cessation of the Insured's business activities: or

7.59.02.　　　As respects rental income that a part or all of the Insured Location is rendered untenantable.

7.60.　　　**Terrorist Activity -** Any activity;

7.60.01.　　　Defined as **Terrorist Activity** under the laws of the place where it is committed, or

7.60.02.　　　Which involves any of the following:

7.60.02.01.　　　The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

7.60.02.02.　　　The seizing or detaining of, or threatening to kill, injure or continue to detain any person in order to compel a third person (including a governmental organization ) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

7.60.02.03.　　　A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

7.60.02.04.　　　An assassination.

7.60.02.05.　　　The use of any biological agent, chemical agent, or nuclear weapon or device, explosive or firearm (other than for mere personal monetary again), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause damage to property.

7.60.02.06.     A threat, attempt, or conspiracy to do any of the foregoing.

7.60.02.07.     Any act or acts deemed or declared by any government official, law enforcement agency, intelligence agency or other public authority to be terrorism or a terrorist act(s).

7.61.     **Valuable Papers and Records** - Inscribed or printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps, mortgages, prints and tracings, card index systems, files, tapes, discs, drums, cells, magnetic recordings or storage **Media** for electronic data processing, **Electronic Data**, **Program(Software)**; but **Valuable Papers and Records** does not mean **Money** or **Securities**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

CHANGE (S)

This endorsement modifies insurance provided under this policy.

1.  SECTION VI – GENERAL POLICY CONDITIONS, 6.10. LENDERS LOSS PAYEE AND MORTGAGE HOLDER INTERESTS AND OBLIGATIONS, 6.10.06 is deleted in its entirety and replaced with the following:

    The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by sending the specified Lender or Mortgagee written notice sixty (60) days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment of premium. If the Insured has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will send the Lender or Mortgagee written notice thirty (30) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due the specified cancellation date, all coverage under this Policy will cease.

2.  It is hereby agreed and understood that the following is a Named Loss Adjuster:
    Vito Russo
    McLarens Young International
    New York, NY

All other terms, conditions and limitation of this Policy remain unchanged

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

CHANGE (S)

This endorsement modifies insurance provided under this policy.

Additional Insured Endorsement

The policy is amended to include as an additional insured, as their interest may appear, any entity performing construction operations under contract with the Insured when such work is not otherwise insured separately by the Insured or under any property insurance program provided though said entity or any of its related companies and when the written contract with the Insured requires such entity to be named an additional insured. Insurance under this endorsement applies solely to personal property of others in the Insured's care, custody or control, in which the insured has an insurable interest or obligation, for which the insured is legally liable, or for which the insured has agreed in writing prior to any loss or damage to provide coverage. Coverage is limited to this property and will not extend to any Time Element Coverage provided under this Policy Loss, if any, will be adjusted with and payable to the **First Named Insured** as shown on this Policy, or as directed by the **First Named Insured.** Other insured interests will also be included in loss payment as their interests may appear when named as lender, mortgagee, and/or loss payee in the Certificates of Insurance on file with the Company, or as an additional insured under this endorsement.

However, we shall not cover:
1. The property of any subcontractor, including but not limited to tools and equipment located at the job site.
2. The equipment of the contractor owned, leased or under its care, custody and control.

All other terms, conditions and limitations of this Policy remain unchanged

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**CHANGE (S)**

This endorsement modifies insurance provided under this policy.

**Upgrade to Green**

This endorsement modifies insurance provided by the policy:

The coverages and valuation provision provided by this endorsement only apply if direct physical loss or damage to covered real and/or personal property is caused by any of the perils covered by the policy and replacement cost valuation applies. This coverage does not apply to: (1) personal property of others in the Insured's care, custody, and control, (2) leased personal property, and/or (3) finished or unfinished stock.

In no event, does this endorsement increase or change the per occurrence limit of liability shown in the declarations or the annual aggregate for specified perils.

1. Notwithstanding the Valuation Provision of this policy or limits of liability applicable to specific locations or perils, if replacement cost valuation applies to real and/or personal property, then the Company's liability for loss applicable to this endorsement shall be the cost to repair or replace the covered damaged property, subject to the applicable limit of liability, plus the least of the following amounts:

    A. The reasonable and necessary amount to upgrade to green the covered damaged property as described in Coverage Section A – Non-LEED® Certified Coverage or as described in Coverage Section B – LEED® Certified Coverage, whichever is applicable; or

    B. An additional 25% of the applicable limit of liability for the building and/or business personal property shown in the Statement of Values or similar schedule to upgrade to green; or

    C. $10,000,000 ( ten million dollars) to upgrade to green.

    At the Insured's sole discretion, the Insured may elect not to upgrade to green any or all property for which upgrade to green coverage is provided under this endorsement. In such case, the Company will adjust the claim in accordance with the standard provisions of the policy, as modified by all other applicable endorsements.

    Subject to the least of A., B., or C. above, if business interruption coverage is provided as part of this policy, if necessary, the Period of Restoration shall be increased to allow for additional time to upgrade to green the damaged property plus up to an additional two week period to meet the requirements set forth in 4.B.

2. **COVERAGE SECTION A: NON-LEED CERTIFIED COVERAGE**

    In the event of direct physical loss or damage by any of the perils covered by the policy to a building that is not LEED certified at the time of the loss, or to the personal property within such a building, the Company will pay to repair or replace damaged or destroyed:

    A. Loss Settlement for Personal Property

(1) "Appliances" or "Office Equipment" with products of like kind and quality that have been identified as "ENERGY STAR®" or equivalent products of such energy efficiency. If there are no such products available at the time of the loss, this upgrade to green coverage does not apply.

(2) "Systems Furniture" or "Seating", with products of like kind and quality that are certified as GREENGUARD Indoor Air Quality Certified® or products with similar emissions characteristics. If there are no such products available at the time of the loss, this upgrade to green coverage does not apply.

B. Loss Settlement for Your Building

(1) Interior Finish Materials Upgrade

a. Lower Emissions Products Upgrade Coverage

"Defined Building Materials" with products of like kind and quality that have "Lower Emissions". If there are no such products available at the time of the loss, this upgrade to green coverage does not apply.

b. Environmentally Preferable Products Upgrade Coverage

Interior wood, carpeting and flooring with products of like kind and quality that have "Lower Emissions", are "Sustainably Produced", are "Rapidly Renewable" or include "Recycled Content". If there are no such products available at the time of the loss, this upgrade to green coverage does not apply.

(2) Interior Plumbing Systems Upgrade Coverage

Interior plumbing fixtures including, but not limited to, toilets, shower heads, and lavatory faucets with products of like kind and quality that are more "Water Efficient". If there are no such products available at the time of the loss, this upgrade to green coverage does not apply. For damaged or destroyed faucets, the Company will also pay to install occupant sensors to reduce the potable water demand.

(3) Lighting Systems Upgrade Coverage

Lighting systems, with products of like kind and quality that have been identified as "ENERGY STAR" or equivalent products of such energy efficiency. If there are no such products available at the time of the loss, this upgrade to green coverage does not apply. The Company will also pay to repair or replace damaged light bulbs with light bulbs which have low mercury content.

(4) Efficient Heating and Cooling Equipment Upgrade Coverage

"Heating and cooling equipment" with products of like kind and quality that have been identified as "ENERGY STAR" or equivalent products of such energy efficiency. If there are no such products available at the time of the loss, this upgrade to green coverage does not apply.

(5) Building Reconstruction Following Total Loss

a. Solely with respect to a "Total Loss" to a building, the Company will pay to replace the building on its existing foundation using the most cost effective techniques, products and materials that should satisfy the prerequisites and earn the minimum number of points required to qualify for LEED Silver certification using the LEED New Construction (LEED NC®) Rating System.

b. Certification Expenses

(i) The Company will pay the reasonable and necessary registration and certification fees charged by the United States Green Building Council (USGBC) that the Insured incurs should the Insured decide to seek LEED Silver certification. However, the Company will not pay to modify the reconstructed structure if it is not certified.

(ii) The Sublimit of Insurance for this coverage is $25,000.

3. COVERAGE SECTION B: LEED CERTIFIED COVERAGE

In addition to all Coverages provided in Coverage Section A (with the exception of 2.B.(5) Building Reconstruction Following a Total Loss) and in the event of direct physical loss or damage by any of the perils covered by the policy to a

building that is LEED certified at the time of the loss, or to the personal property within such building, the Company will pay to repair or replace damaged or destroyed:

A.  Loss Settlement for Trees, Shrubs, and Vegetative Roofs

    (1) Trees and shrubs planted specifically to secure the Heat Island Effect: Non-Roof point as described in LEED NC. For the purposes of this coverage only, notwithstanding any other provision of the policy to the contrary, trees and shrubs are Covered Property. The sublimit of insurance for this coverage is $3,000 per tree or $3,000 per shrub up to a maximum of $25,000.

    (2) Vegetative roofs on LEED certified buildings. Notwithstanding any other provision of the policy to the contrary, vegetative roofs are Covered Property.

B.  Loss Settlement for Your Building

    (1) Recertification Expenses

        a. In the event of direct physical loss or damage by any of the perils covered by the policy that necessitates recertification of the damaged building, the Company will pay the reasonable and necessary registration and certification fees charged by the USGBC that the Insured incurs as a result of the recertification process.

        b. The Sublimit of Insurance for this coverage is $25,000.

    (2) Building Reconstruction Following Total Loss

        a. Solely with respect to a "Total Loss" to a building that is LEED certified at the time of the loss, the Company will pay to replace the building on its existing foundation using the most cost effective techniques, products and materials that would satisfy the prerequisites and should earn the minimum number of points required to qualify for LEED certification at one level above the certification in effect at the time of the loss using the LEED NC Rating System.

        b. Certification Expenses

           (i) The Company will pay the reasonable and necessary registration and certification fees charged by the USGBC that the Insured incurs should the Insured decide to seek LEED certification. However, the Company will not pay to modify the reconstructed structure if it is not certified.

           (ii) The Sublimit of Insurance for this coverage is $25,000.

4.  COVERAGES INCLUDED WITHIN COVERAGE SECTIONS A OR B AND APPLICABLE TO LEED® AND NON-LEED® CERTIFIED BUILDINGS

In the event of direct physical loss or damage by any of the perils covered by the policy to a LEED or Non-LEED certified building:

A.  Recycling Expenses

    (1) The Company will pay the Insured's expenses to clean-up, sort, segregate, and transport debris from the Insured's damaged building to recycling facilities, if such debris can be recycled.

    (2) The Sublimit of Insurance for this coverage is $25,000 and is in addition to the debris removal expense sublimit provided by the policy, if any.

    (3) Any income or remuneration derived from this recycling shall be used to reduce the loss.

B.  Air Testing and Outdoor Air Ventilation of the Reconstructed Space

    (1) In accordance with the requirements for the Construction IAQ Management Plan: Before Occupancy Credit as described in the LEED NC rating system (hereinafter, "Construction IAQ"), the Company will pay to conduct air testing and a building flush-out (if required because of a failure to meet air quality standards set forth in the Construction IAQ) and follow-up air testing for a total period of time not to exceed two weeks.

(2) After the two week period of increased outdoor air ventilation of the reconstructed space, the Company will pay to replace the filtration media with new media.

(3) The Sublimit of Insurance for this coverage is $25,000.

C. Professional Services

The Company will pay reasonable and necessary expenses to hire a LEED Accredited architect or engineer to participate in the design and/or construction administration of the damaged portion of the building or the entire building, whichever is applicable.

The Sublimit for this coverage is $50,000.

D. Building Commissioning Expenses

(1) In the event of direct physical loss or damage to mechanical, electrical, or electronic building systems, by any of the perils covered by the policy which necessitates the commissioning or re-commissioning of those systems, the Company will pay reasonable and necessary expenses of a Professional Engineer to commission or re-commission those damaged systems in accordance with LEED protocols.

(2) The Sublimit of Insurance for this coverage is $25,000.

5. Additional Definitions

A. "Appliances" means products including, but not limited to, dishwashers, refrigerators, freezers, ovens, microwave ovens, room air conditioners, room air cleaners and water heaters.

B. "Defined Building Materials" means: (1) all carpet and floor coverings, including, adhesives to affix them to the floor, (2) all interior paints, architectural coatings, primers, undercoatings, adhesives, sealants, and (3) permanently installed composite wood fixtures, including, counters, cabinets, and partitions.

C. "ENERGY STAR" means any product that has been identified by the United States Government Department of Energy, Environmental Protection Agency as ENERGY STAR qualified at the time of the loss.

D. "Heating and Cooling Equipment" means products including, but not limited to, heat pumps, boilers, central air conditioning, ceiling fans, dehumidifiers, exhaust fans, furnaces, thermostats, and ventilating fans.

E. "Lower emissions" means:

(1) With respect to adhesive and sealant products, such as, general construction adhesives, flooring adhesives, fire-stopping sealants, caulking, duct sealants, plumbing adhesives, and cove base adhesives, products that meet the requirements of South Coast Air Quality Management District (SCAQMD) Rule # 1168; with respect to aerosol adhesives, products that meet Green Seal Standard GS-36 requirements;

(2) With respect to architectural paints, coatings, and primers, products that do not exceed the volatile organic compound (VOC) content limits established in Green Seal Standard GS-11, with respect to anti-corrosive and anti-rust paints, products that do not exceed the VOC content limits established in Green Seal Standard GS-03; and with respect to clear wood finishes, floor coatings, stains, and shellacs, products that do not exceed the VOC content limits established by SCAQMD Rule # 1113;

(3) With respect to carpet and carpet cushion, products that meet the requirements of the Carpet and Rug Institute's Green Label Plus Program; and

(4) With respect to composite wood and agrifiber products such as particleboard, medium density fiberboard (MDF), plywood, wheatboard, strawboard, panel substrates and door cores as well as laminating adhesives used to fabricate on-site and shop-applied composite wood and agrifiber assemblies, products that contain no added urea-formaldehyde resins.

F.   "Office Equipment" means electronic products including, but not limited to, desktop computers, laptop computers, monitors, printers, fax machines, scanners, copiers, and telephones.

G.   "Recycled Content" means those products that contain at least 20% post-consumer recycled content.

H.   "Rapidly Renewable" means products that are made from plant resources that are harvested within a ten-year cycle or shorter, including, but not limited to, bamboo, eucalyptus, wheat straw, sunflower hulls, cork oak, wheatboard, linoleum, and sorghum.

I.   "Seating" means task and guest chairs used with "System Furniture".

J.   "Sustainably Produced" means those products certified by the Forest Stewardship Council ("FSC").

K.   "System Furniture" means either a panel-based workstation comprised of modular interconnecting panels, hang-on components and drawer/filing components of a freestanding grouping of furniture items and their components that have been designed to work in concert.

L.   "Total Loss" means:

   (1)   The covered building is completely destroyed regardless of whether any damage is done to the foundation or slab, or

   (2)   The covered building is in such condition after the loss that the standard method of rebuilding or repairing the covered building is to raze the structure except for the foundation or slab or including all or part of the foundation or slab and rebuild the entire structure, whether such structure is actually rebuilt or not.

M.   "Water Efficient" means dry fixtures such as composting toilet systems and non-water using urinals, flush toilets using no more than 1.6 gallons of water per flush, and shower heads and faucets with a flow rate of no more than 2.2 gallons per minute.

All other terms, conditions and limitations of this Policy remain unchanged

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

CHANGE (S)

This endorsement modifies insurance provided under this policy.

FDA RECERTIFICATION CLAUSE

This policy is extended to cover the Actual Loss sustained by the Insured resulting directly from the interruption of business caused by direct physical damage of the type insured against by this policy, occasioned by the enforcement of any FDA Re-Certification ordinance or regulation which is in force at the time of loss, for such additional length of time as would be required with the exercise of due diligence and dispatch to resume or continue as nearly as practicable the Insured's operations, commencing with the later of the following dates:

(a) The date on which the liability of the companies for loss resulting from interruption of business would terminate if this provision had not been attached to this policy, or

(b) The date on which repair, replacement, or rebuilding of such part of the building(s), structure(s), machinery, equipment, or furniture and fixtures of the property herein described as had been damaged or destroyed is actually completed;

But in no event more than ninety (90) consecutive calendar days from said later date of commencement date.

This period of time does not include any additional time required for making any change(s) to such property for any reason except as provided in the Contingent Liability from Operation of Building Laws, Demolition and Increased Time to Rebuild, provision of this policy, nor for any additional time required for restaffing or retraining employees.

This FDA Re-Certification provisions shall not cover any increase of loss associated with the enforcement or any law or ordinance which requires the Insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

It also does not cover any product recall.

All other terms and conditions of the policy remain the same.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

CHANGE (S)

This endorsement modifies insurance provided under this policy.

NON VITIATION CLAUSE

Where any party or parties are noted as "Insured" then any non-disclosure, fraudulent misrepresentation or failure to comply with policy conditions on their part or on the part of an insured shall not prejudice the right of the other party or parties.

All other terms and conditions of the policy remain the same.

# Appendix A - Earth Movement Zones for USA including its Commonwealths and Territories

This list is for is for informational purposes only and does not convey any coverage under the policy.

| COUNTRY - The United States of America | | |
|---|---|---|
| **STATE** | **ZONE** | **COUNTIES/PARISHES/INDEPENDENT CITIES** |
| ALABAMA | 3 | Colbert, Franklin, Lauderdale, Lawrence, Limestone, Morgan |
|  | 4 | Balance of State |
| ALASKA | 1 | Balance of State |
|  | 2 | North Slope |
| ARIZONA | 4 | Entire State |
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Greene, Lee, Mississippi, Poinsett, St Francis |
|  | 2 | Independence, Jackson, Lawrence, Lonoke, Monroe, Phillips, Prairie, Randolph, Sharp, White, Woodruff |
|  | 3 | Arkansas, Cleburne, Cleveland, Desha, Drew, Faulkner, Fulton, Grant, Izard, Jefferson, Lincoln, Pulaski, Saline, Stone |
|  | 4 | Balance of State |
| CALIFORNIA | 1 | Entire State |
| COLORADO | 4 | Entire State |
| CONNECTICUT | 4 | Entire State |
| DELAWARE | 4 | Entire State |
| D. C. (Territory) | 4 | District of Columbia – Washington D. C. |
| FLORIDA | 4 | Entire State |
| GEORGIA | 4 | Entire State |
| HAWAII | 1 | Entire State |
| IDAHO | 3 | Bannock, Bear Lake, Caribou, Franklin, Oneida, Power |
|  | 4 | Balance of State |
| ILLINOIS | 1 | Alexander, Pulaski |
|  | 2 | Bond, Clay, Clinton, Edwards, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Lawrence, Madison, Marion, Massac, Monroe, Perry, Pope, Randolph, Richland, St. Clair, Saline, Union, Wabash, Washington, Wayne, White, Williamson |
|  | 3 | Calhoun, Christian, Clark, Coles, Crawford, Cumberland, Douglas, Edgar, Effingham, Fayette, Greene, Jasper, Jersey, Macoupin, Montgomery, Morgan, Moultrie, Pike, Sangamon, Scott, Shelby |
|  | 4 | Balance of State |
| INDIANA | 2 | Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick |
|  | 3 | Brown, Clay, Fayette, Johnson, Morgan, Monroe, Owen, Rush, Shelby, Union, Vigo |
|  | 4 | Balance of State |
| IOWA | 4 | Entire State |
| KANSAS | 4 | Entire State |
| KENTUCKY | 1 | Ballard, Carlisle, Fulton, Hickman, McCracken |
|  | 2 | Breckinridge, Butler, Caldwell, Calloway, Christian, Crittenden, Daviess, Graves, Hancock, Henderson, Hopkins, Livingston, Logan, Lyon, Marshall, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster |
|  | 4 | Balance of State |
| LOUISIANA | 4 | Entire State |

| State | | |
|---|---|---|
| MAINE | 4 | Entire State |
| MARYLAND | 4 | Entire State |
| MASSACHUSETTS | 4 | Entire State |
| MICHIGAN | 4 | Entire State |
| MINNESOTA | 4 | Entire State |
| MISSISSIPPI | 1 | DeSoto, Tunica |
| | 2 | Alcorn, Benton, Bolivar, Coahoma, Lafayette, Leflore, Marshall, Panola, Pontotoc, Prentiss, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Union, Yalobusha |
| | 3 | Calhoun, Carroll, Chickasaw, Choctaw, Clay, Grenada, Holmes, Humphreys , Issaquena, Itawamba, Lee, Lowndes, Monroe, Montgomery, Oktibbeha, Sharkey, Warren, Washington, Webster, Yazoo |
| | 4 | Balance of State |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard |
| | 2 | Carter, Iron, Jefferson, Madison, Oregon, Perry, Reynolds, Ripley, St. Francois, Ste. Genevieve, St. Charles, St. Louis, Washington, Wayne, and the City of St Louis |
| | 3 | Audrain, Callaway, Cole, Crawford, Dent, Franklin, Gasconade, Howell, Lincoln, Maries, Marion, Miller, Montgomery, Osage, Phelps, Pike, Pulaski, Ralls, Shannon, Texas, Warren |
| | 4 | Balance of State |
| MONTANA | 4 | Entire State |
| NEBRASKA | 4 | Entire State |
| NEVADA | 1 | Carson City, Douglas |
| | 2 | Lyon , Storey, Washoe |
| | 3 | Clark |
| | 4 | Balance of State |
| NEW HAMPSHIRE | 4 | Entire State |
| NEW JERSEY | 4 | Entire State |
| NEW MEXICO | 4 | Entire State |
| NEW YORK | 4 | Entire State |
| NORTH CAROLINA | 4 | Entire State |
| NORTH DAKOTA | 4 | Entire State |
| OHIO | 4 | Entire State |
| OKLAHOMA | 4 | Entire State |
| OREGON | 2 | Clackamas, Multnomah, Washington |
| | 3 | Benton, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Lane, Lincoln, Linn, Marion, Polk, Tillamook, Yamhill |
| | 4 | Balance of State |
| PENNSYLVANIA | 4 | Entire State |
| RHODE ISLAND | 4 | Entire State |
| SOUTH DAKOTA | 4 | Entire State |
| SOUTH CAROLINA | 1 | Berkely, Charleston, Dorchester |
| | 3 | Bamberg, Beaufort, Calhoun, Clarendon, Colleton, Georgetown, Hampton, Jasper, Orangeburg, Richland, Sumter, Williamsburg |
| | 4 | Balance of State |
| TENNESSEE | 1 | Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton |
| | 2 | Benton, Carroll, Chester, Decatur, Fayette, Gibson, Hardeman, Hardin, Henderson, Henry, Humphreys, Madison, McNairy, Weakley |
| | 3 | Cheatham, Davidson, Dickson, Hickman, Houston, Lawrence, Lewis, Montgomery, Perry, Robertson, Stewart, Wayne |
| | 4 | Balance of State |
| TEXAS | 4 | Entire State |

| UTAH | 2 | Davis, Salt Lake, Utah |
|---|---|---|
| | 3 | Cache, Morgan, Rich, Summit, Wasatch, Weber |
| | 4 | Balance of State |
| VERMONT | 4 | Entire State |
| VIRGINIA | 4 | Entire State |
| WASHINGTON | 1 | Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Thurston |
| | 2 | Skagit, Snohomish, Whatcom |
| | 3 | Clark, Cowlitz, Grays Harbor, Lewis, Pacific, Skamania, Wahkiakum, |
| | 4 | Balance of State |
| WEST VIRGINIA | 4 | Entire State |
| WISCONSIN | 4 | Entire State |
| WYOMING | 4 | Entire State |

| Commonwealths and Territories of The United States of America | ZONE | |
|---|---|---|
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| NORTHERN MARIANA ISLANDS | 2 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 2 | Entire Territory |
| All other US Territories and Possessions | 2 | Entire Territory |

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

## TERRORISM PREMIUM CHARGE ENDORSEMENT WITH EXCLUSION FOR BIOLOGICAL AND/OR CHEMICAL TERRORISM

This endorsement modifies insurance provided by the Policy:

The **terrorism** charge is **$** 297,042 and is included in the Policy Premium shown on the Declarations Page of this Policy. Notwithstanding anything to the contrary in this Policy, **terrorism** which causes direct physical loss or damage to property is covered.

However, the **Company** does not insure for loss or damage caused directly or indirectly by **biological and/or chemical terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other event, cause, or peril. Such loss or damage is excluded regardless of any other event, cause, or peril contributing concurrently or in any sequence to the loss or damage.

The following definitions apply to this Policy:

1. **Company** means the insurer as shown in the attachment clause of this endorsement.

2. **Biological and/or chemical terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **terrorism**.

3. **Terrorism** means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

   a. A government;

   b. The civilian population of a country, state or community; or

   c. Disrupt the economy of a country, state or community.

   So long as the Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto is in effect (the "Act"), **terrorism** includes a certified act of terrorism defined by Section 102. Definitions of the Act.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

All Rights Reserved.

**This endorsement, effective 12:01 AM,**03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

## ECONOMIC SANCTIONS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

All Rights Reserved.

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**1.      Property Not Covered**

This Policy does not cover land, land values or water.

**2.      Pollution and Contamination Exclusion.**

This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

**3.      Asbestos, Dioxin or Polychlorinated Biphenols Exclusions**

This Policy does not cover –

a)      Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, or leakage or accidental discharge from automatic fire protective system.

b) Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

c) Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property that can no longer be used for the purpose for which it was intended

## 4. Debris Removal Exclusion

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a) Extract contaminants or pollutants from the debris; or

b) Extract contaminants or pollutants from land or water; or

c) Remove, restore or replace contaminated or polluted land or water; or

d) Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

## 5. Authorities Exclusion

Notwithstanding any of the provisions of this Policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

<strong>ENDORSEMENT #004</strong>

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

<strong>STANDARD PROPERTY CONDITIONS</strong>

This endorsement modifies insurance provided by the Policy:

The following provisions are hereby made part of this Policy. These provisions shall take precedence if and to the extent there is a conflict with any other policy provision(s).

**MINIMUM EARNED PREMIUM CLAUSE**

In the event of cancellation of this Policy by the Insured, a minimum premium of $ 0 shall become earned, any provision of the Policy to the contrary notwithstanding. Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not affect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

**CANCELLATION CLAUSE**

Except and to the extent of the Minimum Earned Premium Clause which is part of this Policy, this clause supersedes other cancellation clauses made a part of this Policy.

CANCELLATION: This Policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this Policy or last known address, written notice, stating when, not less than 90 days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

**SERVICE OF SUIT CLAUSE**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Interstate Fire & Casualty Company, 225 West Washington Street, Suite 1800, Chicago, Illinois, 60606 or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any

appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy. If the peril of fire is insured under this Policy, then, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries, and payments (other than proceeds from subrogation and underlying insurance), will accrue entirely to the benefit of the Company until the sum paid or payable by the Company is recovered or reduced as applicable.

## REQUIREMENTS IN CASE OF LOSS

The Insured shall:

1. Give prompt written notice of any loss or damage to the Company,

2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3. Protect the property from further loss or damage,

4. Separate the damaged and undamaged personal property,

5. Maintain such property in the best possible order, and

All Rights Reserved.

6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,

7. Furnish all other documents or insurance policies that the Company may reasonably require,

8. Allow the Company to access and inspect any of the damaged or undamaged property, and

9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

**PROOF OF LOSS AND PAYMENT**

The Insured shall complete and sign a sworn proof of loss within sixty (60) days after the Company's request stating the time and origin of the loss, the interest of the Insured and of all others in the property, the value of each item thereof determined in accordance with the Valuation Property of this Policy and the amount of loss or damage thereto and all encumbrances thereon, all other contracts of insurance, whether collectible or not, covering any of said property and any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at Peninsula Insurance Bureau, 2842 Lent Road Apopka, FL 32712.

**GOVERNMENT ACTIVITY CLAUSE**

The Company shall not be liable for any loss or damage caused directly or indirectly by the seizure, confiscation or destruction of insured property by any governmental body or public authority, including any customs or quarantine action. This exclusion shall not apply to an order or action of a governmental body or public authority to destroy insured property for the purpose of preventing the spread of fire or explosion nor to the enforcement of any law or ordinance relating to the construction or repair of damaged property as covered by DEMOLITION AND INCREASED COST OF CONSTRUCTION of this Policy.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

This endorsement, effective 12:01 AM, 03/01/2018
Forms a part of Policy No.: RTX 200112 18
Issued to: NORTHWELL HEALTH, INC
By: INTERSTATE FIRE & CASUALTY COMPANY

## COMBINED PROPERTY/BOILER & MACHINERY MILLENNIUM ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

A.  The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1.  correctly recognize any date as its true calendar date;

2.  capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

3.  capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B.  It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C.  It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow, sudden and accidental breakdown of an object, including mechanical and electrical breakdown.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

## WAR AND TERRORISM EXCLUSION ENDORSEMENT
**(Applies to locations outside the United States of America, its territories and possessions)**

This endorsement modifies insurance provided by the Policy:

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto, it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

1. War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2. Any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1. and/or 2. above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

# MOLD / FUNGUS EXCLUSION

This endorsement modifies insurance provided by the Policy:

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

    a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

    b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

    c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

ENDORSEMENT #008

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

# OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

It is agreed that the following special terms and conditions apply to the Policy:

1.  The limit of liability or Amount of Insurance shown on the face of this Policy, or endorsed on this Policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this Policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

    The term "occurrence" shall mean any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism and malicious mischief, or terrorism, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which may not be earlier than the time when the first loss to covered property occurs.

2.  The premium for this Policy is based upon the statement of values provided to the Insurer(s) by or on behalf of the Insured and kept on file by the Insurer(s). In the event of loss under the Policy, the liability of the Insurer(s) shall be limited to the least of the following:

    a)  The actual adjusted amount of loss, less applicable deductible(s);

    b)  As respects each location insured by this Policy, 100 percent of the total combined stated values for all categories of covered property (e.g. building, contents) and other covered exposures (e.g., business income, extra expense, rental loss) shown for that location on the latest statement of values or other documentation on file with the insurer.

    c)  Any other Limit of Liability or Sublimit of Insurance or Amount of Insurance specifically stated in this Policy to apply to any particular insured loss or coverage or location.

All other terms and conditions of the Policy remain the same.


_____
Authorized Representative

**ENDORSEMENT #009**

This endorsement, effective **12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

# CONDITIONAL TOTAL TERRORISM EXCLUSION ENDORSEMENT
## (APPLICAB LE UPON TERMINATION OF THE TERRORISM INSURANCE PROGRAM)

This endorsement modifies insurance provided by the Policy:

A. The Terrorism Insurance Program established under The Terrorism Risk Insurance Act of 2002,as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 (collectively,"TRIA") is scheduled to terminate on December 31, 2020. In the event TRIA is not reauthorized during the policy period, then the following exclusion is added to the Policy as of December 31, 2020:

This insurance also does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of **terrorism** regardless of any other cause or event contributing concurrently or in any sequence to the loss. **Terrorism** means any act that:

   (1) involves the use of force or violence against person or property;

   (2) is dangerous to human life or property; or

   (3) interferes with or disrupts an electronic or communication system; and

   (4) is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

   (A) a government;

   (B) the civilian population of a country, state or community; or

   (C) to disrupt the economy of a country, state or community.

B. If the Exclusion provided under Paragraph A. above takes effect during the policy period:

   (1) The Exclusion will immediately supersede any other terrorism provisions contained in the Policy or attached by endorsement thereto; and

   (2) We will return a pro rata portion of the premium that you paid to us for terrorism coverage.Such return premium will be calculated based on the date TRIA terminates in relation to the number of days remaining until the expiration of your Policy.

C. In the event TRIA is reauthorized, but is amended as a part of its reauthorization, we reserve the right to modify the Policy, as of the effective date of such amendment to TRIA, with the sole purpose of revising the Policy to be consistent with the provisions of the amended statute reauthorizing TRIA.

All Rights Reserved

D.  Exception Covering Certain Fire Losses - If **terrorism**, as defined in Paragraphs A (1) through above, results in fire, we will pay for such loss or damage caused by such fire, subject to all of the Policy's applicable terms and conditions; but only if:

(1) Such covered property is located in a State of the United States, the District of Columbia,Puerto Rico, or a territory or possession of the United States, that pursuant to the Standard Fire Policy, statute, regulation or other law, prohibits the exclusion of a fire following an act of **terrorism**; and

(2) Such coverage for fire applies only to direct physical loss or damage to covered property insured hereunder, and no other coverage, including but not limited to, business income and extra expense coverage.

Furthermore, in accordance with the terms and conditions of the applicable Standard Fire Policy, the valuation of such covered property resulting from direct physical loss or damage caused by fire following **terrorism** may be limited the lesser of the:

(1) Actual cash value of the covered property at the time of loss; or

(2) Cost to repair or replace the covered property at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence, Without allowance for any increased cost of repair or replacement by reason of any ordinance or law.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

All Rights Reserved

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

# MULTI-YEAR POLICY ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

The following provision is added to the GENERAL CONDITIONS Section:

**MULTI-YEAR CONDITIONS**

This Policy has been issued for the Policy Period shown in the Declarations for the Total Premium for entire term shown in the Declarations payable in annual installments at the inception date and each subsequent anniversary date.

The premium will be adjusted by applying the last agreed upon rate to an updated Statement of Locations and Values received by us at least thirty (30) days prior to each annual anniversary or if such Statement is not provided by you, then by applying the last agreed upon rate to:

(1) The real and personal property provided on the most recent Statement of Locations and Values adjusted by an inflation factor agreed to by us in writing, and

(2) The business interruption values provided on the most recent Statement of Locations and Values adjusted in accordance with an agreed upon methodology with us in writing.

The Annual Aggregates shown on the Declarations shall be reinstated on each annual anniversary date, but only with respect to an **occurrence** which first commences on or after 12:01 a.m. on the annual anniversary date.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

All Rights Reserved

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

## DEDUCTIBLE REIMBURSEMENT ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

At the request of the Insured, and in accordance with any Certificates of Insurance or other written evidence that may then be issued to protect the insurable interests of any third party covered hereunder, this Company shall adjust and pay losses in full without regard to any deductible provision which would otherwise apply under the terms and conditions of this Policy; such loss to be adjusted with Northwell Health Inc. and payable to Northwell Health Inc. and appropriate loss payee(s) as their interests may appear.

It is further agreed that in any case where a loss is adjusted and payment made in accordance with the above, Northwell Health Inc. agrees to reimburse this Company as respects such loss payment for that amount which is equal to but not exceeding the amount of the deductible that would have been applicable had this provision not been in effect. Such reimbursement shall be made within 30 days, payable to and forwarded to Pennisula Insurance Bureau- 2842 Lent Road, Apopka, FL 32712.
All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

All Rights Reserved

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

# CYBER COVERAGES ELITE ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

The Company shall be the insurance company as set forth in the "By:" provision above. The Insured shall be the Named Insured as set forth in the "Issued to:" provision above.

Other words and phrases that are bolded have special meaning as set forth in this endorsement. If such ordinarily bolded words and phrases are not bolded then such words and phrases shall include, but not be limited to, the specific meaning set forth in this endorsement.

Notwithstanding any other provision of this Policy to the contrary, including any other endorsements forming a part of this Policy, the following shall be the *only cyber coverage* provided under this Policy including, but not limited to, any coverage for: (1) loss, damage, corruption, erasure or alteration from any cause or peril to: (a) the Insured's electronic data, or (b) any other entity's electronic data resulting in any loss or damage under this Policy; (2) any cyber peril causing loss or damage to the **insured property**, (3) denial of service attack of any type or description, or (4) any business income loss or any other loss, cost, damage, penalty, fine or expense of any kind or description arising out of (1), (2) or (3) above.

Notwithstanding any other provision of this Policy to the contrary, there is no coverage for electronic data under this Policy except to the extent coverage is provided under this endorsement and electronic data shall not be considered **insured property**.

## SCHEDULE

The following sublimits of liability are added to this Policy and are part of and not in addition to: (1) the Policy limit of liability and (2) the manmade or natural catastrophe peril sublimit(s) of liability, if applicable:

If any Annual Aggregate applies and the policy period is longer than one year, at the end of each twelve (12) month period (hereinafter, the **annual anniversary date**), such Annual Aggregate shown below shall be reinstated in full, but only with respect to an occurrence which first commences on or after 12:01 a.m., Standard Time on such **annual anniversary date**. If the final period is less than twelve (12) months, then such Annual Aggregate shall be reinstated in full for that final period.

**CYBER COVERAGES:**

| | | | | |
|---|---|---|---|---|
| Overall Cyber Sublimit of Liability: | $1,000,000 | ☒ Annual Aggregate | ☒ Each Occurrence | |
| (Not Applicable to the Electronic Data, Standard Perils Additional Coverage) | | | | |
| 1. Electronic Data: | | | | |
| Standard Perils: | $50,000,000 | ☒ Annual Aggregate | ☒ Each Occurrence | |
| Cyber Perils: | $1,000,000 | ☒ Annual Aggregate | ☒ Each Occurrence | |
| Cyber Waiting Period: | 48 | hours | | |
| 2. Denial of Service Attack: | $1,000,000 | ☒ Annual Aggregate | ☒ Each Occurrence | |
| Cyber Waiting Period: | 48 | hours | | |
| 3. Data Preservation Expenses: | $1,000,000 | Annual Aggregate | | |
| 4. Maximum Cyber Period of | 30 | days | | |

All Rights Reserved.

Indemnity:

**ACCOUNTS RECEIVABLE (BOOK DEBTS):**

Accounts Receivable     Subject to the Accounts Receivable (Book Debts) Sublimit of Liability or similar sublimit shown in this Policy, the Accounts Receivable Cyber Peril Sublimit of Liability shall not exceed $1,000,000 ☒ Annual Aggregate ☒ Each Occurrence

Additional Premium:     $Included

The following is added to the Additional Coverages, Coverage Extensions or similar provision of this Policy:

**1.**     **Cyber Coverages Section**

The Overall Cyber Sublimit of Liability, if applicable, shall be the maximum amount payable for all applicable Cyber Coverages below, other than the Electronic Data, Standard Perils Additional Coverage:

**a.**   **Electronic Data**

    **i.**    Standard Perils:

        The Company will pay for: (1) **corruption, erasure or alteration** of the Insured's **electronic data** by: a **covered cause of loss** or lack of electricity or refrigeration by a **covered cause of loss**, and (2) the actual **business interruption loss** and **extra expense** sustained by the Insured arising out of such covered loss during the **cyber period of indemnity**. Such **electronic data** is covered in the **coverage territory**, including while in transit.

    **ii.**   Cyber Perils:

        The Company will pay for: (1) **corruption, erasure or alteration** of the Insured's **electronic data** caused directly by a **cyber peril**, and (2) the actual **business interruption loss** and **extra expense** sustained by the Insured arising out of such covered loss during the **cyber period of indemnity**. Such **electronic data** is covered in the **coverage territory**, including while in transit.

**b.**   **Denial of Service Attack**

The Company will pay the actual **business interruption loss** and **extra expense** sustained by the Insured during the **cyber period of indemnity** arising out of a **denial of service attack** that prevents access to or use of the **Insured's computer system**.

**c.**   **Data Preservation Expenses**

If coverage is provided under Subsection **1.a.** or **1.b.** above, the Company will also pay the reasonable and necessary costs, over and above normal operating costs, incurred by the Insured for the Insured's actions during or after a covered:

    **i.**    **Denial of service attack** that prevents access to or use of the **Insured's computer system**, to temporarily protect against or minimize the effect of such **denial of service attack**; or

    **ii.**   Loss involving **corruption, erasure or alteration** of the Insured' **electronic data** on the **Insured's computer system**, to prevent further **corruption, erasure or alteration** of the Insured's **electronic data** on the **Insured's computer system** from such loss.

Such reasonable and necessary costs are limited to the following, and such costs shall not be considered an **extra expense** under any other Additional Coverage:

    **(a)** Safeguarding the Insured's **electronic data** by moving such data to another location;

(b) Conducting an investigation (including a forensic investigation) to determine the cause and scope of the **denial of service attack** or the **corruption, erasure or alteration** of the Insured's **electronic data**;

(c) Hiring an expert to consult with the Insured on: (i) the protection of the Insured's **electronic data** and (ii) the eradication of **malicious code** from the **Insured's computer system**; and

(d) Paying employee overtime wages or contractor's costs to protect or preserve the Insured's **electronic data**.

The maximum amount that the Company will pay for all loss or damage (including **corruption, erasure or alteration**) under any Additional Coverage under this Cyber Coverages Section is the corresponding sublimit of liability for such Additional Coverage as shown in the above Schedule, subject to the Overall Cyber Sublimit of Liability, if applicable, regardless of any other applicable coverages under this Policy, including any other Additional Coverage, Coverage Extension or similar provision of this Policy.

For the purposes of the Cyber Coverages Section, Subsection **1.a.i**, **1.a.ii.**, **1.b.**, and **1.c.** shall each be treated as a separate Additional Coverage.

## 2.  Accounts Receivable (Book Debts)

If this Policy contains an Accounts Receivable, Book Debts or similar Additional Coverage, Coverage Extension or similar provision (hereinafter, an "Accounts Receivable Additional Coverage"), then such "Accounts Receivable Additional Coverage" is modified by the addition of the following:

Accounts receivable records include accounts receivable records stored as **electronic data**. Subject to the Accounts Receivable Cyber Peril Sublimit of Liability shown in the above Schedule, the Company will provide coverage for such accounts receivable records that sustain **corruption, erasure or alteration** by a **cyber peril**, not otherwise excluded.

Notwithstanding the foregoing, no coverage for accounts receivable records stored as **electronic data** is provided unless this Policy contains an "Accounts Receivable Additional Coverage".

## 3.  Valuation

Notwithstanding any other provision of this Policy to the contrary related to the valuation of **electronic data**, **electronic data** will be valued at the cost to restore the **electronic data** from duplicates to the condition that existed prior to the time of the loss. If duplicate **electronic data** is not available, then the **electronic data** will be valued at the cost to research, gather and assemble the **electronic data** to the condition that existed prior to the time of the loss. The Company will not pay any other value, including the monetary value, represented by such **electronic data.**

## 4.  Additional Exclusions

The following additional exclusions apply to this Policy and supersede any other similar exclusion in the Policy to the contrary. The Company will not pay for:

a.  Any loss, damage, cost or expense arising out of a breach in confidentiality or privacy of, or release of, any **electronic data** for any reason.

b.  Theft of any **electronic data** unless there has been **corruption, erasure or alteration** of the Insured's **electronic data** and then the Company shall only pay the covered loss that is related to the **corruption, erasure or alteration** of the Insured's **electronic data**.

c.  Any extortion payments or public relations expenses.

d.  Any loss, cost, damage or expense for: (1) **electronic data** in transit or (2) electronic equipment in transit that has been rendered useless for its intent purpose by **malicious code**,

other than to the extent that coverage is provided under Subsection **1.a.**, Electronic Data above.

    **e.** Any loss, damage, cost or expense arising out of a **cyber peril** or **denial of service attack** that would otherwise be excluded under this Policy.

    **f.** Any loss, cost, damage or expense arising out of any error or omission in machine programming or instructions of **electronic data** including, loss attributable to program design constraints, networking compatibility and original business software; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, the Company shall cover only such ensuing loss or damage.

    **g.** Any loss, cost, damage or expense to electronic equipment, including electronic devices, electronic components or electronic storage media that is rendered useless for its intended purpose due to the introduction of code which reprograms the software, including the firmware of such equipment; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, the Company shall cover only such ensuing loss or damage.

    This exclusion shall not apply to such aforementioned electronic equipment that is physically damaged, other than the loss or damage sustained directly through the reprogramming of the software, including the firmware of such equipment.

    **h.** Any loss, cost, damage or expense due to any **cyber peril**, **denial of service attack**, or other similar peril affecting **electronic data** or the access to or use of computer hardware, software or other components thereof; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, the Company shall cover only such ensuing loss or damage. However, this exclusion shall not apply to the extent coverage is provided under Subsection **1.**, Cyber Coverages Section above and Subsection **2.**, Accounts Receivable (Book Debts) above.

    **i.** Any loss, cost, damage or expense arising from: (1) an interruption, surge or variation in incoming electricity, gas, fuel, steam, water, or refrigeration, (2) an interruption or variation in the Insured's **cloud computing service** or the Insured's **data, voice or video service**, or (3) an interruption in outgoing sewerage, arising out of a **cyber peril** or **denial of service attack**.

**5.**     **Additional Conditions:**

The following additional conditions are added to this Policy and supersede any other similar conditions in this Policy to the contrary with respect to coverage provided by this endorsement.

    **a. Non-Pyramiding Provision**

    If this endorsement is attached to an underlying policy that is part of a global master policy, then the sublimits of liability shown in the above Schedule may be reduced by losses sustained in other jurisdictions for these Additional Coverages and the maximum amount payable under all underlying policies shall be the applicable sublimit(s) of liability for these Additional Coverages under the global master policy, subject always to the Overall Cyber Sublimit of Liability on the global master policy.

    **b. Application of Deductibles**

    Notwithstanding any other provision of this Policy to the contrary, for any Additional Coverage under this endorsement for which there is a waiting period or a time period before coverage commences, such period shall apply in addition to any applicable deductible(s) set forth in this Policy.

**6.**     **Additional Definitions**

The following additional definitions are added to this Policy and supersede any other similar definitions in the Policy to the contrary.

**c. Business interruption loss** (or similar term used in this Policy to describe **business interruption loss**) means, in accordance with the terms and conditions of this Policy, the calculation set forth in this Policy for loss of business income.

**d. Cloud computing service** means a service: (i) in the business of storing, managing and processing **electronic data** for which the Insured has a written contract and (ii) that provides access to and use of: software and/or a network of remote servers hosted away from the Insured's locations to store, manage or process such data. **Cloud computing service** does not include a **data, voice or video service**.

**e. Corruption, erasure or alteration** means **electronic data** that has been corrupted, altered, destroyed or deleted such that the **electronic data** can no longer be accessed or used for its intended purpose.

**f. Covered cause(s) of loss** means a peril or other type of loss, not otherwise excluded under this Policy and not including a cyber peril, denial of service attack, or other similar peril affecting **electronic data.**

**g. Coverage territory** means the coverage territory as described in this Policy or similar term used in this Policy to describe such territory.

**h. Cyber peril(s)** means **unauthorized access**, **unauthorized use**, **malicious code** and **magnetic damage to electronic data**.

**i. Cyber period of indemnity** means the period of time:

    **i.** With respect to the Electronic Data - Standard Perils Additional Coverage, beginning with the **material interruption** and ending when the Insured's **electronic data** could be restored in accordance with Subsection **3.**, Valuation with exercise of due diligence and dispatch;

    **ii.** With respect to the Electronic Data - Cyber Perils Additional Coverage, beginning the number of hours shown as the Cyber Waiting Period under Electronic Data, Cyber Perils in the above Schedule after the **material interruption** and ending when the Insured's **electronic data** could be restored in accordance with Subsection **3.**, Valuation with exercise of due diligence and dispatch;

    **iii.** With respect to the Denial of Service Attack Additional Coverage, beginning the number of hours shown as the Cyber Waiting Period under Denial of Service Attack in the above Schedule after the **material interruption** and ending when the Insured could restore access to the **Insured's computer system** to the same or similar conditions that existed prior to the time of the loss with exercise of due and diligence dispatch;

but in no event for longer than the number of days shown as the Maximum Cyber Period of Indemnity in the above Schedule after: (1) the **material interruption** with respect to Subsection **i.** above, or (2) the Cyber Waiting Period is exhausted in accordance with Subsections **ii.** or **iii** above.

This period of time shall not be cut short by the end of the policy period.

**j. Data, voice or video service** means a service that allows the Insured to transmit and receive data, voice or video, whether directly or indirectly through a third party service provider, such as an internet service provider or telecommunications provider. **Data, voice or video service** does not include a **cloud computing service**.

**k. Denial of service attack** means an attack that sends an excessive volume of **electronic data** to computer hardware, software or any components thereof which prevents those who are authorized to do so from gaining access to or using such computer hardware, software or any components thereof.

**l. Electronic data** means data, messages, information, coding, programs, instructions or software in a form suitable for communications, storage, or processing by electronic,

electromechanical, electromagnetic data processing or electronically controlled production equipment. **Electronic data** does not include electronic storage media.

m. **Extra expense** means reasonable and necessary extra expenses incurred during the **cyber period of indemnity** to temporarily continue as nearly normal as practicable the conduct of the Insured's business all less any value remaining at the end of the **cyber period of indemnity** for property obtained in connection with such continuation of the Insured's business.

n. **Insured's computer system** means the Insured's computer hardware, device, software or any components thereof that are used to store, process or access the Insured's **electronic data**, while the Insured's **electronic data** is located at a location shown on the Statement of Locations and Values, on the Insured's mobile electronic device or the Insured's electronic storage media within the **coverage territory**.

o. **Insured property** means property, not otherwise excluded under this Policy, regardless of the terminology used to describe such property, including covered property, insured property or similar terms. Electronic data shall not be considered **insured property**.

p. **Magnetic damage to electronic data** means the **corruption, erasure or alteration** of **electronic data** through magnetism. However, no coverage is provided for loss or damage to **electronic data** arising out of directed-energy weapons or electromagnetic weapons or through deterioration of the storage media or data for any reason.

q. **Malicious code** means any unauthorized code designed to cause **corruption, erasure or alteration** of **electronic data.**

r. **Material interruption** means the date and time of the actual and measurable interruption or suspension of the Insured's business operations, services or production directly caused by: (i) **corruption, erasure or alteration** of the Insured's **electronic data** or (ii) **denial of service attack** that prevents access to or use of the **Insured's computer system**, whichever is applicable. Such **material interruption** must first occur during the policy period.

s. **Unauthorized access** means the gaining of access to computer hardware, software or any components thereof by an unauthorized person.

t. **Unauthorized use** means the use of computer hardware, software or any components thereof by any person in an unauthorized manner.

u. **Valuable papers and records** shall have the meaning set forth in the Policy, but shall not include **electronic data**.

v. **Vandalism and malicious mischief** means willful or malicious damage to, or destruction of **insured property** or with respect to the Electronic Data – Standard Perils Additional Coverage, such willful or malicious damage to, or destruction of **insured property** resulting in **corruption, erasure or alteration** of **electronic data**.

All other terms and conditions of the Policy remain the same.

Authorized Representative

**This endorsement, effective 12:01 AM,** 03/01/2018
**Forms a part of Policy No.:** RTX 200112 18
**Issued to:** NORTHWELL HEALTH, INC
**By:** INTERSTATE FIRE & CASUALTY COMPANY

# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

deleted and replaced with the following:

## CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this Policy, this clause supersedes other cancellation clauses made a part of this Policy.

CANCELLATION: This Policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this Policy or last known address, written notice, stating when, not less than 90 days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured or Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

2. Section 2.b in the Occurrence Limit of Liability Endorsement is deleted in it's entirety.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

## Alternus<sup>tm</sup> Policy Change Endorsement

## ENDORSEMENT – #14

This Endorsement modifies the policy of insurance to which it is attached:

| Policy Number | Policy Changes | Company |
|---|---|---|
| RTX 200112 18 | **Effective** 3/1/2018 | Interstate Fire & Casualty Company |

| Named Insured | Authorized |
|---|---|
| Northwell Health, Inc. | Representative |

It is hereby agreed that the following amendments are made:

1. Endorsement #004-PR9019 (08/15)-CANCELLATION CLAUSE SECTION-number of days for non payment of premium is amended to read 30 days.

2. The Named Insured on the **GENERAL DECLARATIONS** Alternus DEC (3/18) and **COMMERICAL PROPERTY POLICY DECLARATIONS** PRPDEC(12/15) is amended:

   Item 1. Named Insured: Northwell Health Inc.
   Attention: Risk Management
   200 Community Drive
   Great Neck, NY 11021

All other terms and conditions remain in full effect.

Alternus <sup>TM</sup> for Marsh Limited LLC

© 2017 Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Form ID: Alternus-PCE-NA(9-17)