**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NORTHWELL HEALTH, INC.,

               Plaintiff,

        -against-

LEXINGTON INSURANCE COMPANY
and INTERSTATE FIRE & CASUALTY
COMPANY,

              Defendants.

Civil Action No. 1:21-cv-01104-JSR

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

DATED:   New York, New York
             March 11, 2021

**Quinn Emanuel Urquhart & Sullivan, LLP**
Michael B. Carlinsky
Maaren A. Shah
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
maarenshah@quinnemanuel.com

**Dentons US LLP**
Keith Moskowitz
233 S Wacker Drive, Suite 5900
Chicago, IL 60606
(212) 876-8220
keith.moskowitz@dentons.com

*Counsel for Defendant Lexington Insurance Company*

**DLA Piper LLP**
Michael D. Hynes
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
michael.hynes@us.dlapiper.com

*Counsel for Defendant Interstate Fire & Casualty Company*

## <u>TABLE OF CONTENTS</u>

<strong><u>Page</u></strong>

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................3

    A.    The Complaint's Allegations .................................................3

    B.    Northwell's Insurance Policies From Defendants ..................................4

ARGUMENT ............................................................................................6

I.      APPLICABLE LEGAL STANDARDS .........................................6

II.     NORTHWELL IS NOT ENTITLED TO TIME ELEMENT COVERAGE ......................8

    A.    Northwell Did Not "Suspend" Its Business Activities ...........................9

    B.    The Presence Of The COVID-19 Virus In Northwell's Facilities Is Not Direct Physical Loss Or Damage To Covered Property ...........................9

    C.    Northwell Has Not Alleged That Direct Physical Loss Or Damage To Covered Property Caused Its Suspension Of Business Activities ..................14

    D.    The Presence Of The Coronavirus At Northwell Was Not Itself Caused By A Covered Cause of Loss .................................................15

        1.    Northwell Does Not Allege That A Non-Excluded Risk Of Direct Physical Loss Or Damage Caused The Coronavirus To Be Present In Its Facilities...........................................................15

        2.    The Policies Exclude All Loss Caused Directly Or Indirectly By Actual Or Threatened Contamination From The COVID-19 Coronavirus ..................................................15

III.    NORTHWELL CANNOT PLEAD THE REQUIREMENTS OF THE POLICIES' SPECIAL COVERAGES ...........................................................18

    A.    Northwell Has Not Pled The Requirements For Decontamination Costs..............18

    B.    Northwell Has Not Pled The Requirements For Coverage Under The Ingress/Egress And Civil Authority Provisions...................................19

    C.    Northwell Has Not Pled The Requirements For Interruption By Communicable Disease..........................................................21

IV.    NORTHWELL'S GOOD FAITH AND FAIR DEALING CLAIM FAILS AS A MATTER OF LAW ............................................................25

CONCLUSION..................................................................................25

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co.*,
2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) ........................................................ 10, 17, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 6, 13

*ATCM Optical, Inc. v. Twin City Fire Ins. Co.*,
2021 WL 131282 (E.D. Pa. Jan. 14, 2021)................................................................... 14, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................. 6, 13, 22

*Belt Painting Corp. v. TIG Ins. Co.*,
100 N.Y.2d 377 (2003) ........................................................................................................ 17

*Broad St., LLC v. Gulf Ins. Co.*,
832 N.Y.S.2d 1 (1st Dep't 2006) ........................................................................................ 8

*Broome Cty v. Travelers Indem. Co.*,
6 N.Y.S.2d 300 (3d Dep't 2015), *appeal denied*, 25 N.Y.3d 908 (2015)........................ 17, 18

*Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*,
2021 WL 663675 (N.D. Ohio Feb. 19, 2021) .................................................................. 13

*Burlington Ins. Co. v. NYC Transit Auth.*,
29 N.Y.3d 313 (2017) ........................................................................................................ 7

*Circus Circus LV, LP v. AIG Specialty Ins. Co.*,
2021 WL 769660 (D. Nev. Feb. 26, 2021) .......................................................... 16, 17, 18

*Condit v. Bedford Cent. Sch. Dist.*,
2017 WL 4685546 (S.D.N.Y. Oct. 16, 2017) ................................................................ 7

*DAB Dental PLLC v. Main St. Am. Prot. Ins. Co.*,
2020 WL 7137138 (Fla. Cir. Nov. 10, 2020)................................................................. 12

*Dae Assocs., LLC v. AXA Art Ins. Corp.*,
70 N.Y.S.3d 500 (1st Dep't 2018) .................................................................................... 7

*DeMoura v. Cont'l Cas. Co.*,
2021 WL 848840 (E.D.N.Y. Mar. 5, 2021)......................................................... 10, 11, 15

*Diesel Barbershop, LLC v. State Farm Lloyds*,
2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)............................................................... 17

*Drama Camp Prods., Inc. v. Mt. Hawley Ins. Co.*,
2020 WL 8018579 (S.D. Ala. Dec. 30, 2020) ............................................................... 14

*Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*,
16 N.Y.3d 257 (2011) ........................................................................................................ 7

*Food For Thought Caterers Corp. v. Sentinel Ins. Co.*,
  2021 U.S. Dist. LEXIS 42828 (S.D.N.Y. Mar. 6, 2021) ............................................ 11, 14, 20

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
  2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) ................................................... 17

*Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*,
  2020 WL 7350413 (C.D. Cal. Dec. 3, 2020) ..................................................... 11

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002)................................................................. 25

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*,
  2021 WL 117898 (S.D. Fla. Jan. 11, 2021) ..................................................... 12

*Jane St. Holding, LLC v. Aspen Am. Ins. Co.*,
  2014 WL 28600 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581 F. App'x 49 (2d Cir. 2014).................. 25

*KD Unlimited Inc. v. Owners Ins. Co.*,
  2021 WL 81660 (N.D. Ga. Jan. 5, 2021) ........................................................ 12

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997)................................................................... 7

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
  2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) .................................................... 17

*MBIA, Inc. v. Certain Underwriters at Lloyd's*,
  33 F. Supp. 3d 344 (S.D.N.Y. 2014)............................................................ 7

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
  2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) .................................... 10, 12, 20, 22

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014)........................................................ 10, 11

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
  2020 WL 5820552 (S.D. Iowa Sept. 29, 2020) ................................................. 14

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
  2020 WL 5847570 (S.D. Cal. Oct. 1, 2020) ................................................... 12

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
  2020 WL 7078735 (D. Kan. Dec. 3, 2020)................................................... 12, 13

*Renaissance Art Invs., LLC v. AXA Art Ins. Corp.*,
  102 A.D.3d 604, 961 N.Y.S.2d 31 (2013) .................................................... 24

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)............................................................. 3, 4, 7

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
  302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dep't 2002), *aff'd*, 775 N.Y.S.2d 857 (2004) ......... 8, 9, 10

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
  2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) ............................................... 12, 21

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*,
　448 F. Supp. 3d 287 (W.D.N.Y. 2020) ................................................................. 8

*Seaboard Sur. Co. v. Gillette Co.*,
　64 N.Y.2d 304 (1984) ........................................................................................ 8

*Selane Prods., Inc. v. Cont'l Cas. Co.*,
　2020 WL 7253378 (C.D. Cal. Nov. 24, 2020) .................................................. 13

*Smith v. Local 819 I.B.T. Pension Plan*,
　291 F.3d 236, 240 (2d Cir. 2002) ................................................................. 6, 7

*Social Life Mag., Inc. v. Sentinel Ins. Co.*,
　2020 WL 2904834 (S.D.N.Y. May 14, 2020) ................................................... 10

*Soundview Cinemas Inc. v. Great Am. Ins. Grp.*,
　2021 WL 561854 (Sup. Ct. Nassau Cty. Feb. 8, 2021) ................................... 11

*Sunrise One, LLC v. Harleysville Ins. Co. of NY*,
　293 F. Supp. 3d 317 (E.D.N.Y. 2018) ................................................................ 9

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
　2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020) ............................................ 10, 12

*Teichman v. Cmty. Hosp. of W. Suffolk*,
　87 N.Y.2d 514 (1996) ........................................................................................ 8

*Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*,
　2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) ................................................... 12

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
　2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ................................................ 17

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
　2020 WL 6436948 (S.D. W. Va. Nov. 2, 2020) ........................................... 13, 14

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
　439 F.3d 128 (2d Cir. 2006) ............................................................................ 20

*Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*,
　2021 WL 609851 (Sup. Ct. Orange Cty. Feb. 12, 2021) ............................ 10, 20

*Whiskey Flats Inc. v. Axis Ins. Co.*,
　2021 WL 534471 (E.D. Pa. February 12, 2021) ......................................... 12, 21

*Wilson v. Hartford Cas. Co.*,
　2020 WL 5820800 (E.D. Pa. Sept. 30, 2020) .................................................. 17

*Woodhams v. Allstate Fire & Cas. Co.*,
　748 F. Supp. 2d 211 (S.D.N.Y. 2010) ............................................................. 25

*Zarour v. Pacific Indem. Co.*,
　113 F. Supp. 711 (S.D.N.Y. 2015) ................................................................... 25

*Zwillo V, Corp. v. Lexington Ins. Co.*,
　2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) ............................................. 14, 16

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 6

**Other Authorities**

*http://dmna.ny.gov/covid19/docs/all/DOH_COVID19_FacilityDirective_032320.pdf* ............... 23

*https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.10.pdf*................ 23

*https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.8.pdf*.................. 22

Defendants Lexington Insurance Company ("Lexington") and Interstate Fire & Casualty Company ("Interstate") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Northwell Health, Inc. ("Northwell") claims that Defendants must pay up to $1.25 billion under two standard physical damage insurance policies for alleged "business interruption" losses that have nothing to do with any physical damage to Northwell's property, much less any suspension of Northwell's business. Northwell seeks coverage under Lexington's Commercial Property Policy (the "Lexington Policy") and Interstate's Commercial Property Policy (the "Interstate Policy") for the revenue it allegedly lost from treating the massive influx of COVID-19 patients to its facilities instead of the more lucrative non-essential medical procedures that it would otherwise have performed. The Policies do not provide coverage for purely financial losses resulting from a change to Northwell's patient mix. The Policies are standard physical damage policies that insure against risks of direct physical loss or damage to the insured's covered property (such as the risk of fires or hurricanes), unless expressly excluded. The Policies cover business interruption losses only to the extent they are due to direct physical loss or damage to covered property, such as when the insured suspends business operations while the damaged property is repaired. Northwell's claims do not remotely fall within this framework.

*First*, Northwell has not pled (and cannot plead) facts demonstrating that its alleged losses were caused by a "direct physical loss of or damage to" its property, as required under the terms of the Policies. The alleged presence of the COVID-19 virus in Northwell's facilities did not cause any physical damage to Northwell's property and did not cause Northwell to treat a less profitable mix of patients. The change in Northwell's patient population reflected the changing medical needs of the communities it serves and government directives aimed at maximizing treatment of

1

COVID-19 patients—factors unrelated to the actual presence of the virus in Northwell's facilities. Finally, Northwell did not suffer any "Suspension" of business, defined by the Policies as "[t]he slowdown or cessation of the Insured's business activities."  The Complaint itself concedes that Northwell was "inundated" with COVID-19 patients and treated more of them than any other entity.

*Second*, even if the alleged presence of the COVID-19 virus in Northwell's facilities had caused actual physical damage to Northwell's property (which it did not), that damage is excluded from coverage under the express terms of the Policies.  The Policies specifically exclude losses caused directly or indirectly by viruses that harm human health or cause loss of use of property.

*Third*, Northwell does not qualify for any of the Special Coverages that extend limited coverage to defined circumstances not otherwise covered by the Policies' main insuring provisions.  The Special Coverages require physical damage to property, or a declaration that Northwell's property is uninhabitable, and Northwell has identified neither.  Moreover, each Special Coverage that Northwell invokes also fails on separate independent grounds.

*Finally*, Northwell's claim under the implied covenant of good faith and fair dealing fails under well-established New York law because it is premised on the same alleged facts as Northwell's breach of contract claims.

Northwell cannot reasonably be blamed for providing a less profitable mix of patient services following a global pandemic it could not reasonably have predicted.  But the Policies simply do not insure against this risk.  And sympathy for Northwell's plight cannot unsettle the fact that an insured must be held to the insurance policies it actually signed, not the ones it wished it had.  It is for this reason that courts in this District and around the country have consistently

dismissed with prejudice COVID-19-related claims similar to Northwell's.  The same result should follow here.

**FACTUAL BACKGROUND**

A.      **The Complaint's Allegations**

Northwell is New York's largest health care provider and private employer, with numerous hospitals and outpatient facilities.  Complaint, ECF No. 1 ("Compl.") ¶ 3.  Since the outbreak of the COVID-19 pandemic, Northwell has continued to use its facilities to provide medical services to patients.  In fact, Northwell alleges it has been "inundated" with COVID-19 patients and has "cared for more COVID-19 patients than any other organization in the United States."  *Id.*

Northwell alleges it incurred "mounting costs to clean and disinfect its premises" and "significant business interruption losses" from treating COVID-19 patients rather than performing more lucrative elective procedures.  *Id.* ¶¶ 8-9.  Northwell claims its losses were caused by both "the numerous and evolving mandates from local, state and federal authorities" and "the actual presence of COVID-19 at Northwell's premises," which Northwell conclusorily claims caused physical loss or damage to its properties.  *Id.* ¶¶ 8, 32.  Northwell does not support this claim with any well-pled facts such as identifying any table, chair, gurney, fixture, or improvement that stopped working or needed repair or replacement due to COVID-19 or government mandates.

Northwell alleges its revenue losses and cleaning expenses are covered under Lexington Commercial Property Insurance Policy No. 025032100 and Interstate Commercial Property Insurance Policy No. RTX200112 (together, "the Policies"), which are standard physical damage insurance policies.[1]  *Id.* ¶¶ 49-50.  Northwell seeks a declaration of coverage under both Policies

---

[1]    Copies of the Policies are attached as Ex. 1 and Ex. 2 to the Complaint, and are therefore properly considered by the Court in deciding this motion.  *See Roth v. Jennings*, 489 F.3d 499, 509

3

(Count II), and asserts claims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count III).  *Id.* ¶¶ 95-117.  All three claims fail as a matter of law.

### B.    <u>Northwell's Insurance Policies From Defendants</u>

The Policies insure only against "direct physical loss of or damage caused by a Covered Cause of Loss to" certain Covered Property of Northwell, including its medical facilities.  Ex. A at LEX0009; Ex. B at IFCC_0000011.  Because the Policies are all-risk Policies, "Covered Cause of Loss" is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."  Ex. A at LEX0057; Ex. B at IFCC_0000059.  Importantly, both Policies exclude "Contamination and any cost due to Contamination, including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy."  Ex. A at LEX0017; Ex. B at IFCC_0000019.  "Contamination" is defined as "any condition of property due to the actual presence of any … virus [or] disease causing or illness causing agent."  Ex. A at LEX0057; Ex. B at IFCC_0000059.  An endorsement to both policies extends the exclusion to "loss or damage caused by, resulting from, contributed to or made worse by actual, ***alleged*** or ***threatened*** release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS," with "CONTAMINANTS or POLLUTANTS" defined to include a "virus" that harms human health or causes loss of use of property.  Ex. A at LEX0078; Ex. B at IFCC_0000080.  That exclusion applies against loss or damage caused directly or indirectly by a virus, and it applies regardless of any other cause or event contributing to the loss or damage.  *Id.*

Northwell does not seek coverage for the value of lost or damaged property, or for the costs of repairing or replacing such property.  Instead, it seeks coverage under the Policies' Time

---

(2d Cir. 2007).  Lexington and Interstate have attached otherwise identical but more legible copies to this Motion as Exhibits A and B, respectively, with bates numbers added for ease of reference.

Element provisions, which insure against "the necessary Suspension of the Insured's business activities at an Insured Location … due to direct physical loss of or damage to Covered Property … caused by a Covered Cause of Loss."   Ex. A at LEX0020; Ex. B at IFCC_0000022. "Suspension" is defined as "[t]he slowdown or cessation of the Insured's business activities."  Ex. A at LEX0062; Ex. B at IFCC_0000064.  Where Time Element coverage applies, the Policies pay for loss of Gross Earnings and Extra Expenses up to specified Policy limits.  But the Policies only pay for lost earnings and expenses during the "Period of Liability," which ends when building and equipment "could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage." Ex. A at LEX0024; Ex. B at IFCC_0000026.

Northwell also seeks coverage under certain Special Coverages, each of which also requires direct physical loss or damage to property—either Covered Property or property within five miles of Covered Property—or a declaration that the Covered Property is uninhabitable:

- Decontamination Costs ("DC") coverage provides $25 million in coverage for the increased cost to decontaminate Covered Property if the property is contaminated "from direct physical loss of or damage caused by a Covered Cause of Loss," and there is in force at the time of the loss a "law or ordinance" regulating contamination due to the actual, not suspected, presence of the contaminant.  Ex. A at LEX0029; Ex. B at IFCC_0000031.  This coverage extends to contamination by Communicable Disease, but only if the contamination by the Communicable Disease is the "result of direct physical loss or damage" (*id.*)—as might happen if a medical waste storage system were damaged by a severe weather event.

- Ingress/Egress coverage likewise requires "direct physical loss of or damage caused by a Covered Cause of Loss" but to property of *others*, within five miles of an insured location.

5

Ex. A at LEX0012, 31; Ex. B at IFCC_0000014, 33.  Ingress/Egress coverage further requires that a "physical obstruction" prevented Northwell's suppliers, customers or employees from entering Northwell's facilities.  Ex. A at LEX0031; Ex. B at IFCC_0000033.

- Civil or Military Authority coverage similarly requires a Suspension of business activities as a result of a "civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss" to property of others within five miles of an insured location.  Ex. A at LEX0012, 26-27; Ex. B at IFCC_0000014, 28-29.  The civil authority order must "prohibit[] access" to an insured location.  Ex. A at LEX0026; Ex. B at IFCC_0000028.

- Finally, Interruption by Communicable Disease ("ICD") provides $25 million of coverage for loss resulting from the necessary Suspension of the insured's business activities caused by a government order only where that order both declares an insured location uninhabitable due to the threat of the spread of communicable disease and prohibits access to the insured location.  Ex. A at LEX0040; Ex. B at IFCC_0000042.  Even then, the ICD provision covers only "reasonable and necessary" cleanup costs incurred to lift such an uninhabitability order.  *Id.*

## **ARGUMENT**

### I.   **APPLICABLE LEGAL STANDARDS**

A motion to dismiss under Rule 12(b)(6) should be granted when the complaint is not "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet the plausibility standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  While the court must accept all well-pled facts as true, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236,

240 (2d Cir. 2002) (internal quotation omitted).  "[T]he court may permissibly consider ... [d]ocuments that are attached to the complaint or incorporated in it by reference," such as the Policies.  *Roth*, 489 F.3d at 509.  And it is the terms of the Policies, rather than the Complaint's mischaracterization of them, that control as a matter of law.  *See MBIA, Inc. v. Certain Underwriters at Lloyd's*, 33 F. Supp. 3d. 344, 353 (S.D.N.Y. 2014); *Condit v. Bedford Cent. Sch. Dist.*, 2017 WL 4685546, at *1 n.2 (S.D.N.Y. Oct. 16, 2017).

Under New York law,[2] an "insurance agreement is subject to principles of contract interpretation."  *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321 (2017) (internal quotation omitted).  As such, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."  *Id.* (internal quotation omitted).  "If the plain language of the policy is determinative, [the Court] cannot rewrite the agreement by disregarding that language."  *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011).

New York courts recognize that insurers are in the business of pricing risk, which would not be possible if courts could arbitrarily bind an insurer to "a risk that it did not contemplate and for which it has not been paid."  *Dae Assocs., LLC v. AXA Art Ins. Corp.*, 70 N.Y.S.3d 500, 501 (1st Dep't 2018) (citation omitted).  Thus, "when interpreting the policy, the court 'may not make or vary the contract of insurance to accomplish [its] notion of abstract justice or moral obligation.'"

---

[2]  New York law applies to this dispute.  A federal court adjudicating a state law claim applies the choice of law rules of the forum state.  *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997).  Under New York's "center of gravity" test, courts look principally to the location of the insured risk, the place of contracting, the places of negotiation and performance, and the place of business of the parties.  *Id.* (internal quotation omitted).  Here, the Policies were issued and delivered in New York, the broker placing the Policies was in New York, and Northwell's principal place of business and the location of the insured risk are in New York.  Compl. ¶¶ 3, 5, 16; Ex. A at LEX0002, 07; Ex. B at IFCC_0000003, 09.

*Broad St., LLC v. Gulf Ins. Co.*, 832 N.Y.S.2d 1, 4 (1st Dep't 2006) (quoting *Teichman v. Cmty. Hosp. of W. Suffolk*, 87 N.Y.2d 514, 520 (1996)).

"[A] policyholder bears the burden of showing that the insurance contract covers the loss." *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 3d 287, 293 (W.D.N.Y. 2020) (internal quotation omitted). "Labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6, 751 N.Y.S.2d 4 (1st Dep't 2002), *aff'd*, 775 N.Y.S.2d 857 (2004). With respect to physical damage insurance, the insured has the burden of showing that its loss involved "physical damage to the insured's property." *Id.* at 3, 7. The insurer bears the burden of proving exclusions. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984).

## II.   NORTHWELL IS NOT ENTITLED TO TIME ELEMENT COVERAGE

The Policies' Time Element coverage imposes four distinct, if related, requirements: (1) Suspension of business activities; (2) direct physical loss or damage to Covered Property; (3) the direct physical loss or damage to Covered Property must have ***caused*** the Suspension of business activities; and (4) the direct physical loss or damage to Covered Property must ***itself be caused by*** a Covered Cause of Loss—*i.e.*, a ***risk of*** direct physical loss or damage from a non-excluded cause. Ex. A at LEX0020; Ex. B at IFCC_0000022. Northwell has not alleged (and cannot allege) facts that satisfy any of these four requirements.[3]

---

[3] Northwell makes a passing reference to ten other coverages it claims "may cover" its business losses. Compl. ¶ 77. Northwell does not allege any facts to establish coverage under any of these provisions. Nor could it, as each of these other coverages also require either "physical loss or damage" or "physical obstruction," which Northwell has failed to plead. *See* Ex. A at LEX0027; Ex. B at IFCC_0000029 (Contingent Time Element); Ex. A at LEX0030; Ex. B at IFCC_0000032 (Expediting Costs); Ex. A at LEX0034; Ex. B at IFCC_0000036 (Professional Fees); Ex. A at LEX0035; Ex. B at IFCC_0000037 (Protection and Preservation of Property & Research and Development); Ex. A at LEX0037; Ex. B at IFCC_0000039 (Tenants Prohibited Access); Ex. A at LEX0041; Ex. B at IFCC_0000043 (Mobile Medical Equipment & Protection of Patients); and

### A.    Northwell Did Not "Suspend" Its Business Activities

Northwell did not experience a "Suspension" of business, defined by the Policies as "[t]he slowdown or cessation of the Insured's ***business activities***."   Ex. A at LEX0062; Ex. B at IFCC_0000064 (emphasis added).   While Northwell's revenues may have fallen, its level of activity did not.   On the contrary, Northwell's facilities remained open during the pandemic, and the Complaint concedes Northwell was "inundated" with COVID-19 patients and treated more of them than any other entity.   Compl. ¶ 3; *see Sunrise One, LLC v. Harleysville Ins. Co. of NY*, 293 F. Supp. 3d 317, 326 (E.D.N.Y. 2018) (hotel owner did not suffer "the cessation or slowdown of … business activities" because hotel remained open during relevant period following Hurricane Sandy).

### B.    The Presence Of The COVID-19 Virus In Northwell's Facilities Is Not Direct Physical Loss Or Damage To Covered Property

The presence of the coronavirus "in the air and on surfaces" within Northwell's premises (Compl. ¶ 6) does not constitute "direct physical loss of or damage" to property as a matter of law. For almost twenty years, New York courts have consistently held that coverage for a "direct physical loss or damage" requires some form of actual, physical alteration to the insured premises to trigger loss of business interruption coverage, not simply the impairment of use of the property. *Roundabout*, 302 A.D.2d at 7.   In *Roundabout*, the scaffolding of a midtown building collapsed, causing New York City to order the closure of certain surrounding blocks.   As a result, a Broadway theatre which was not itself damaged "became inaccessible to the public and … was forced to cancel 35 performances of Cabaret."   *Id.* at 3.   The court held that the theatre's "loss of use" of its premises, without physical damage, was not enough to establish coverage.   *Id.* at 7.

---

Ex. A at LEX0041-42; Ex. B at IFCC_0000043-44 (Professional Employment Replacement Expense & Logistics Extra Cost).

Relying on *Roundabout*, Judge Engelmayer in this District held that a precautionary electricity shutdown to a law firm's building in advance of Hurricane Sandy did not constitute "direct physical loss or damage" and therefore did not trigger coverage. *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014). The court explained that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself." *Id.* Loss of use of the property without physical harm is insufficient. *Id.*

"In the face of the Covid pandemic, federal courts in New York have uniformly followed this authority in rejecting claims akin to those raised by [Northwell] here." *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 2021 WL 609851, at *4 (Sup. Ct. Orange Cty. Feb. 12, 2021). For example, Judge Caproni of this District recognized that the "*Roundabout* case is a real problem" for COVID-19 coverage claims such as Northwell's because "a virus that is running amuck in the community" is not direct physical loss or damage. "It damages lungs. It doesn't damage printing presses." *Social Life Mag., Inc. v. Sentinel Ins. Co.*, 2020 WL 2904834 at Tr. 4:17-18, 5:3-4, 5:21-24 (S.D.N.Y. May 14, 2020) (Transcript of Hearing on Motion for Preliminary Injunction). Judge Caproni summarized:

> I feel bad for your client. I feel bad for every small business that is having difficulties during this period of time. But New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going. You get an A for effort, you get a gold star for creativity, but this is just not what's covered under these insurance policies.

*Id.* at 15:9-16; *see Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) (granting motion to dismiss insured's COVID-19 claim with prejudice under New York law); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) (same); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020) (Magistrate's recommendation that motion to dismiss be granted); *DeMoura v. Cont'l Cas. Co.*,

2021 WL 848840 (E.D.N.Y. Mar. 5, 2021) (dismissing plaintiff's COVID-19 insurance claims with prejudice); *Food For Thought Caterers Corp. v. Sentinel Ins. Co.*, 2021 U.S. Dist. LEXIS 42828 (S.D.N.Y. Mar. 6, 2021) (same).

These New York decisions align with the overwhelming majority of courts nationwide in holding that, although COVID-19 harms human health, it does not cause "direct physical loss or damage" to property and thus does not trigger business interruption coverage under a commercial property insurance policy like Northwell's. *See Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 2021 WL 561854, at *9 (Sup. Ct. Nassau Cty. Feb. 8, 2021) (concurring with the "majority view" that COVID-19 losses do not constitute "direct physical loss of or damage to the property" that triggers business income coverage). Indeed, at the time of filing this motion, undersigned counsel is aware of at least 191 such decisions (listed in Ex. C), including 9 applying New York law, dismissing COVID-19-related claims similar to Northwell's.[4]

These cases also align with the Policies' language which limits coverage to losses occurring during the "Period of Liability," which begins with the loss or damage of the applicable property and ends when such property "could be repaired or replaced." Ex. A. at LEX 0020, 24; Ex. B at IFCC_0000022, 26. "The words 'repair' and 'replace' [for 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman*, 17 F. Supp. 2d at 332.

Courts around the country, including in New York, have thus ruled that, when construing insurance policies as a whole and applying them to COVID-19 claims, "Period of Restoration" or

---

[4]   While a few outlier cases outside of New York have reached a different conclusion under specific circumstances, those cases have been roundly rejected and not followed by other courts. *See, e.g., Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*, 2020 WL 7350413, at *3 (C.D. Cal. Dec. 3, 2020) (the "handful" of outlier decisions are not "enough to outweigh the much greater volume of case law going the other way").

"Period of Liability" provisions like the ones in the Policies must be taken into account, and they "suggest[] the occurrence of material harm that then requires a physical fix."  *Michael Cetta*, 2020 WL 7321405, at *6; *see Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020) ("The Policy only pays Business Income coverage during a period of restoration …. These provisions make clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement.  The Covid-19 pandemic does not fall within that definition."); *Whiskey Flats Inc. v. Axis Ins. Co.*, 2021 WL 534471, at *3 (E.D. Pa. February 12, 2021) (same).

Repairs, rebuilding, or replacement can happen only if property was *physically altered*, which Northwell does not allege here.  Nor can it, as courts overwhelmingly have recognized that the mere presence of the COVID-19 coronavirus does not create the kind of physical alteration to property needed to establish coverage.  "The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property.  Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage."  *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020); *see Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) (presence of COVID-19 virus does not constitute "direct physical loss of or damage to property"); *DAB Dental PLLC v. Main St. Am. Prot. Ins. Co.*, 2020 WL 7137138, at *4 (Fla. Cir. Nov. 10, 2020) (same).[5]

---

[5]    Just as dust, dirt or other substances on the surface of property do not render the property physically altered, the coronavirus does not "constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated" by "routine cleaning and disinfecting." *Tappo of Buffalo*, 2020 WL 7867553, at *4 (quoting *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020)); *see Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 2021 WL 117898, at *3 (S.D. Fla. Jan. 11, 2021) ("the mere presence of COVID-19 particles on the doors, floors, and walls of the Properties" does not render them physically altered); *KD Unlimited Inc. v. Owners Ins. Co.*, 2021 WL 81660, at *5 (N.D. Ga. Jan. 5, 2021) (the presence of COVID-19, which can be eliminated by "routine cleaning," is not direct

Northwell does not identify in its Complaint a single surface of a single item of property on which the virus was found to exist, much less explain how such property was damaged by the virus.  Instead, Northwell simply asserts the "presence of COVID-19" has caused "physical loss of or damage to" its properties.  Compl. ¶¶ 11, 35, 37.  Courts have consistently held that such allegations state "bare legal conclusions" insufficient to withstand a motion to dismiss:

- "[The] Complaint points to the physical attributes of COVID-19, which 'can adhere to surfaces of property for several days and can linger in the air in buildings for several hours,' and alleges they constitute 'physical loss of or damage to the property.'  Aside from these legal conclusions, however, [the insured] does not adequately allege causes of 'direct physical loss of or damage to property' as those terms appear in the Policy."  *Selane Prods., Inc. v. Cont'l Cas. Co.*, 2020 WL 7253378, at *4 (C.D. Cal. Nov. 24, 2020) (internal citations omitted).

- "The health data and studies described in the Complaint do not support the conclusory assertion that the virus was present on the surfaces of [the insured's] property, causing its losses ....  The Court declines to accept this speculative assertion, even at the motion to dismiss stage."  *Promotional Headwear*, 2020 WL 7078735, at *8 (footnotes omitted).

- "Plaintiffs' allegations regarding the physical presence and/or impact of the coronavirus are insufficient under the *Twombly-Iqbal* analysis.... Plaintiffs miss the mark when they conclusorily allege that 'Plaintiffs sustained direct physical loss of or damage due to the presence of coronavirus.'"  *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, 2021 WL 663675, at *7 (N.D. Ohio Feb. 19, 2021).

Northwell fails to allege that any property incurred physical loss or damage—or that it ever paid a single dollar to repair, rebuild, or replace anything at all.  The assertion that property is damaged whenever a virus could be or is present amounts to a bare legal conclusion that falls far short of Northwell's burden to establish coverage under the Policies or state a claim.

---

physical loss or damage); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 2020 WL 6436948, at *5 (S.D. W. Va. Nov. 2, 2020) ("COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant.").

**C.** **Northwell Has Not Alleged That Direct Physical Loss Or Damage To Covered Property Caused Its Suspension Of Business Activities**

Even if the presence of the coronavirus at Northwell's facilities were a direct physical loss or damage to property (which it is not), that property damage did not ***cause*** any alleged interruption to Northwell's business.  Rather, Northwell's alleged interruption resulted, by its own admission, from stay-at-home orders and orders barring non-essential medical services that would have had the same effect on Northwell's business regardless of any presence of the virus "in the air and on surfaces" within Northwell's premises.  *See* Compl. ¶¶ 6, 8-9, 31 (alleging that Northwell's business was "devastated" by governmental orders issued "to limit the spread of the virus"). Where, as here, alleged business interruption losses were caused by "stay-at-home orders," there is no coverage under a commercial property insurance policy.  *See Zwillo V, Corp. v. Lexington Ins. Co.*, 2020 WL 7137110, at \*6 (W.D. Mo. Dec. 2, 2020).  "In short, the pandemic impacts human health and human behavior, not physical structures.  Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses."  *Uncork & Create,* 2020 WL 6436948, at \*5; *see Food For Thought Caterers Corp.*, 2021 U.S. Dist. LEXIS 42828 (business losses sustained due to government-mandated closure orders are insufficient to establish that plaintiff suffered direct physical loss of or damage to its property); *Drama Camp Prods., Inc. v. Mt. Hawley Ins. Co.*, 2020 WL 8018579, at \*5 (S.D. Ala. Dec. 30, 2020) (dismissing plaintiffs' claim for COVID-19 losses resulting from "[government] Order [that] merely temporarily halted Plaintiffs' business operations," not "an immediate occurrence which tangibly altered or disturbed their property in some perceptible way"); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020) (no business interruption coverage for losses due to government restrictions on non-emergency procedures); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021) (orders precluding non-essential

dental services entered to address COVID-19 were not a covered cause of loss); *DeMoura*, 2021 WL 848840 (same).

    **D.**    **The Presence Of The Coronavirus At Northwell Was Not Itself Caused By A Covered Cause of Loss**

Northwell also cannot meet the fourth requirement for coverage because the presence of the coronavirus at Northwell was not *itself caused* by a Covered Cause of Loss, which is defined as a risk of direct physical loss or damage from any non-excluded risk.

    **1.**    **Northwell Does Not Allege That A Non-Excluded Risk Of Direct Physical Loss Or Damage Caused The Coronavirus To Be Present In Its Facilities**

Northwell fails to allege that the presence of the coronavirus at its facilities was itself caused by a Covered Cause of Loss (*i.e.*, a non-excluded risk of direct physical loss or damage). In fact, there is nothing in Northwell's Complaint that even suggests what that Covered Cause of Loss might be. Northwell merely alleges that "the coronavirus has been present in Northwell's facilities since the onset of the pandemic," and that it "comes walking in the door every single day." Compl. ¶¶ 3, 6. Northwell thus acknowledges that the presence of the coronavirus in its facilities was not caused by a risk of direct physical loss or damage; it was caused by Northwell's treatment of COVID-19 patients. But that is Northwell's core business—to treat and care for sick or infected people. That is not a covered risk of direct physical loss or damage.

    **2.**    **The Policies Exclude All Loss Caused Directly Or Indirectly By Actual Or Threatened Contamination From The COVID-19 Coronavirus**

In any event, contamination from the coronavirus is not a Covered Cause of Loss because it is expressly excluded by both Policies. The main body of the Policies excludes "Contamination and any cost due to Contamination, including the inability to use or occupy property or any cost

of making property safe or suitable for use or occupancy."[6]  Ex. A at LEX0017; Ex. B at IFCC_0000019.  Contamination is defined as "any condition of property due to the actual presence of any ... virus [or] disease causing or illness causing agent."  Ex. A at LEX0057; Ex. B at IFCC_0000059.  The Policies' Endorsement 3 extends the exclusion to any "actual, alleged or threatened release, discharge, escape or dispersal of contaminants."  Ex. A at LEX0078; Ex. B at IFCC_0000080.  For purposes of the endorsement, contaminants are defined to include any "virus" which "after its release can harm human health or human welfare or causes or threatens ... loss of use of property ... insured hereunder."  *Id.*  This exclusion applies "whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by" any covered cause of loss under the Policies.  *Id.*

These exclusions apply here because Northwell repeatedly alleges its damages are caused by the actual presence of coronavirus or the threatened dispersal of the virus.  Compl. ¶ 8 (alleging losses from government orders and "the actual presence of COVID-19" at its premises), ¶¶ 33, 41 (government orders entered due to the "threat of the spread of COVID-19" have impacted its business, and it transformed its business due to the "threat" of COVID-19), ¶ 80 (alleging losses due to "the constant imminent threat of [COVID's] presence" and related government action).

Numerous courts have dismissed insureds' similar claims for COVID-19 business interruption losses on the basis of near identical exclusions.  *See Zwillo*, 2020 WL 7137110, at *6-8 (dismissing insured's COVID-19 business interruption claims on the basis of a near identical exclusion); *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 2021 WL 769660, at *5-6 (D. Nev.

---

[6]  The limited exception to this exclusion is for contamination that "results from direct physical loss or damage."  As discussed above (in § II(D)(1)), Northwell alleges that contamination from infected individuals **is** the direct physical loss or damage; not that it "results from" such loss or damage (as in the case of a medical waste storage system damaged by a severe weather event).

Feb. 26, 2021) (same); *10012 Holdings*, 2020 WL 7360252, at *4 (no coverage where policy exclusion for "pollutants" included any "material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability … loss of use of property, or which threatens human health or welfare").[7]

In doing so, those courts have rejected Northwell's allegation (Compl. ¶ 86) that the phrase "release, discharge, escape or dispersal" refers only to traditional pollution. *Circus Circus*, 2021 WL 769660, at *5.  The *Circus Circus* court cited the plaintiff's own allegations that the virus spreads through droplets and aerosols discharged by sick individuals and dispersed through the air, concluding that plaintiffs' allegations that "the virus has been released, dispersed and discharged into the atmosphere, resulting in infections and transmissions," fall "squarely within" the plain language of the exclusion. *Id.* at *6.  Northwell's Complaint includes nearly identical allegations that the virus is dispersed when "droplets" discharged by sick individuals are released "in the air and on surfaces." Compl. ¶¶ 23, 24.

Although some courts have held that "pollution" exclusions in dissimilar commercial general liability policies are intended to prevent alleged "polluters" from escaping liability for harm to third parties caused by their environmental pollution,[8] that doctrine does not apply here in "interpret[ing] a first-person [property insurance] policy broadly limiting liability for health-harming contaminants and environmental pollution."  *Circus Circus*, 2021 WL 769660, at *5. New York law is the same. *See Broome Cty v. Travelers Indem. Co.*, 6 N.Y.S.2d 300 (3d Dep't

---

[7]   *See also Wilson v. Hartford Cas. Co.*, 2020 WL 5820800 (E.D. Pa. Sept. 30, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020); Turek *Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020).

[8]   *See, e.g.*, *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377 (2003).

2015), *appeal denied*, 25 N.Y.3d 908 (2015) (pollution and contamination exclusion in first party policy was not limited to traditional environmental pollution).

Here, the contamination exclusion in the main body of the first-party property insurance Policies (3.03.01.01) does not even use the word "pollution."  And Endorsement 3's "pollutant and contaminant" exclusion, like the exclusion in *Circus Circus*, applies broadly to ***both*** traditional environmental pollutants, and to other contaminants not traditionally involved in environmental pollution, like viruses, which cause "loss of use to property" or harm human health.  Both exclusions clearly apply and bar coverage.

## III.   NORTHWELL CANNOT PLEAD THE REQUIREMENTS OF THE POLICIES' SPECIAL COVERAGES

Northwell also fails to state a claim for any of the Special Coverages it seeks: Decontamination Costs ("DC"), Ingress/Egress, Civil Authority, and Interruption by Communicable Disease ("ICD").  Among other things, those Special Coverages all require either direct physical loss or damage to property from a Covered Cause of Loss or, in the case of ICD, an order declaring Covered Property uninhabitable and preventing access to it.  None of the Special Coverages extend to the financial losses and business expenses caused by risks exogenous to the premises that are alleged here.

### A.   <u>Northwell Has Not Pled The Requirements For Decontamination Costs</u>

The Policies' DC coverage applies only when (1) covered property is contaminated from direct physical loss or damage caused by a Covered Cause of Loss to Covered Property, (2) an ordinance or law is in force regulating contamination "due to the actual not suspected presence" of contaminants, and (3) the contaminants must be removed to satisfy the law or ordinance.  Ex. A at LEX0029; Ex. B at IFCC_0000031.  Northwell has failed to plead facts to support any of these required elements.

*First*, the contamination alleged by Northwell—the presence of the COVID-19 coronavirus on its premises—is not *from* "direct physical loss of or damage" caused by a Covered Cause of Loss.  Northwell instead alleges that the purported contamination is *itself* the Covered Cause of Loss.  *See* Compl. ¶ 11.  The Policies are clear, however, that contamination is not *itself* a covered loss—to the contrary, it is excluded by the contamination exclusion in the main policy (3.03.01.01) and the Pollutants and Contaminants provision.   In order for DC coverage to apply, the contamination must be "*from*" some *other* risk of direct physical loss or damage—as when, for example, physical damage to a storage container causes contaminants to leak.  Northwell has failed to plead any such facts.

*Second*, Northwell does not allege or identify any law or ordinance in force at the time of its alleged loss regulating the cleanup of the actual, not suspected, presence of COVID-19.  *See, e.g.*, Compl. ¶ 25 (alleging only that Northwell has incurred costs to "sanitize its facilities and ensure the safety of its patients and the health care workers who treat them"), ¶ 44 (alleging "costs in cleaning supplies, janitorial services, and the hiring of new employees and vendors").  The stay-at-home and social-distancing orders referenced in the Complaint do no such thing.

*Third*, while Northwell alleges it has incurred "mounting costs to clean and disinfect its premises," *id.* ¶ 8, it does not allege that any of those cleaning efforts were undertaken to comply with any law or ordinance regulating the cleanup of COVID-19.

Because Northwell does not allege facts that could establish any of these required elements, Northwell's claim for DC coverage fails as a matter of law.

**B.      Northwell Has Not Pled The Requirements For Coverage Under The Ingress/Egress And Civil Authority Provisions**

Northwell's claims for Ingress/Egress and Civil Authority coverage fail because it has not alleged any "direct physical loss of or damage" by a Covered Cause of Loss to property of others

within five miles from an insured location, and the Policies do not cover purely economic losses to Northwell's business in the absence of damage to off-site property. *See Michael Cetta*, 2020 WL 7321405, at \*11; *10012 Holdings*, 2020 WL 7360252, at \*4 (no civil authority coverage where "the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's properties"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (no civil authority coverage where government order halting operations at Reagan National Airport was based on fears of future attacks, not because of property damage to the Pentagon).

Northwell has merely alleged, in conclusory fashion, that COVID-19 is present on unidentified properties within five miles of its facilities. Compl. ¶ 34. But "ill-defined assertions that other properties have been exposed to Covid-19 are insufficient." *Visconti*, 2021 WL 609851, at \*12. "Without specific allegations that a neighboring property suffered 'damage to property,' the Complaint fails to state a claim that is plausible on its face." *Michael Cetta*, 2020 WL 7321405, at \*11. In any event, just as the presence of coronavirus is not direct physical loss or damage to insured property, it is also not direct physical loss or damage to other property within five miles. *Food For Thought*, 2021 U.S. Dist. LEXIS 42828, at \*3.

In addition, Ingress/Egress coverage requires that access to Northwell's premises be *physically obstructed* by direct physical loss or damage to property of others. The Civil Authority coverage similarly requires that a civil or military order *prohibit* access to Northwell's premises. Neither of these coverage requirements are met. While certain orders may have imposed social distancing or other requirements, Northwell has not identified any order that prohibited access to its facilities. In fact, Northwell affirmatively alleges that, not only has it remained physically open

throughout the pandemic, it has been "inundated" with patients.  Compl. ¶ 3.  Northwell does *not* allege that any of those patients faced any *physical obstruction* to entering any of its facilities.

Northwell's real complaint is that its business has suffered because it has treated COVID-19 patients instead of those seeking more profitable elective surgeries and other medical procedures, not because of any physical obstruction or prohibition on access.  That type of alleged loss is not covered under the Policy.  *See, e.g., Sandy Point Dental*, 2020 WL 5630465, at *3 (no civil authority coverage for dental office where governmental order closing all non-essential businesses left dental offices open for emergency and non-elective work); *Whiskey Flats*, 2021 WL 534471, at *4 ("Whiskey Flats did not close because of damage to a nearby property or because there was some dangerous physical condition at another nearby property.  It closed because the Shutdown Orders applied to its own operations.  Thus, its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.").

### C.   Northwell Has Not Pled The Requirements For Interruption By Communicable Disease

The Policies provide only limited coverage for Interruption by Communicable Disease under defined circumstances.  This coverage applies only where there is (1) a necessary Suspension of Northwell's business activities at an insured location, (2) the Suspension is caused by a governmental order enforcing any law or ordinance regulating communicable diseases, and (3) the order must declare portions of the covered location *uninhabitable* due to the threat of the spread of communicable disease and *prohibit* access to those portions of the property.  Ex. A at LEX0040; Ex. B at IFCC_0000042.

Northwell fails to plead facts sufficient to establish the first and second requirements because, as previously explained (*supra*, § II(A)), Northwell did not suffer any "Suspension" of business as defined by the Policy.  As for the third requirement, none of the governmental orders

or directives relevant to non-essential health services in New York declared any portion of Northwell's property uninhabitable.  Nor did any of those orders prohibit access to any portion of Northwell's property.

Parroting the language of the Policies' ICD coverage provision, Northwell alleges—without setting forth any supporting facts—that "Orders" have declared portions of its properties "uninhabitable" due to the threat of the spread of COVID-19 and "prohibited" access to "those portions of Northwell's covered properties."  Compl. ¶ 33.  Northwell generally references CDC social-distancing guidelines and certain New York Orders, including those from Mayor De Blasio and Governor Cuomo, that ordered people to stay home, closed non-essential businesses, and prohibited non-essential gatherings.  *Id.* ¶¶ 31-32.  But Northwell does not allege that (1) its operations were suspended at any location, (2) the Orders required it to suspend its operations, or (3) any of its facilities were rendered "uninhabitable."  Nor does Northwell identify any Order that "prohibited" access to any portion of its facilities.  As such, Northwell's bare allegations are not sufficient to withstand a motion to dismiss.  *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

Indeed, Northwell identifies only a single specific order in its Complaint:  Governor Cuomo's Executive Order 202.8, known as the "New York State on PAUSE" order.  Compl. ¶ 32. A copy of the order is attached as Ex. D.[9]  That order required that all "non-essential" businesses in New York reduce their in-person workforce by 100% by March 22, 2020.  Ex. D.  However, the order specifically exempted "[a]ny essential business" or any "entity providing essential services or functions, whether to an essential business or a non-essential business."  *Id.*  Nothing

---

[9]  https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.8.pdf.  The Court can take judicial notice of governmental orders on a motion to dismiss.  *Michael Cetta*, 2020 WL 7321405, at *3.

in that order declared any portion of Northwell's facilities uninhabitable.  Nor did it prohibit access

to any portion of any of Northwell's facilities.  Rather, that order was to keep people apart from

one another, to reduce "community contact transmission of COVID-19."  *Id.*

Northwell also refers generally to "a series of stay-home" orders issued by Mayor De

Blasio.  Compl. ¶ 32.  But Northwell does not identify any specific order from the Mayor that

barred access to its facilities or declared any portion of its facilities to be uninhabitable.  To the

contrary, Northwell alleges it has treated an "influx" of more than 100,000 COVID-19 patients at

its facilities since the onset of the pandemic.  *Id.* ¶¶ 25, 42.

Although not specifically referenced in Northwell's Complaint, Governor Cuomo also

issued Executive Order 202.10 on March 23, 2020, which authorized the Commissioner of Health

to cancel all elective surgeries and procedures in an effort to maximize the number of hospital

beds, resources, and doctors to treat COVID-19 patients.[10]  A copy of the order is attached as Ex.

E.  Consistent with that order, the Health Commissioner issued a Directive ordering "all hospitals,

ambulatory surgery centers, office-based surgery practices and diagnostic and treatment centers to

increase the number of beds available to COVID-19 patients" by at least 50%.[11]  A copy of the

Directive is attached as Ex. F.

Neither of those orders declared any portion of Northwell's facilities to be uninhabitable.

Nor did anything in either of those orders prohibit access to any portion of Northwell's facilities.

*See, e.g.*, *ATCM Optical*, 2021 WL 131282, at *5 (dental office "remained inhabitable and usable,

albeit in limited ways" despite order limiting non-essential services).  Far from barring access to

---

[10]   https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.10.pdf

[11]   http://dmna.ny.gov/covid19/docs/all/DOH_COVID19_FacilityDirective_032320.pdf

Northwell's facilities, those orders instead encouraged Northwell to find *more* space and use *more* resources to treat COVID-19 patients.

The ICD coverage for clean-up costs also does not apply.  That part of the coverage insures against "reasonable and necessary" costs incurred for the "cleanup, removal and disposal" of the "actual not suspected presence" of substances causing the spread of communicable disease.  Ex. A at LEX0040; Ex. B at IFCC_0000042.  The limitation to "actual not suspected presence" of disease agents precludes coverage for the kind of preventative measures Northwell alleges it has taken to clean areas where COVID patients are located, but where there is no confirmation the virus has in fact been discharged.  In addition, the costs must be incurred "to restore" the insured property and "to satisfy" a governmental agency enforcing a law or ordinance regulating communicable disease.  *Id.*  But Northwell alleges the costs it incurred were part of enhanced cleaning needed when treating disease patients and not to meet any government requirement to restore operations.

As Northwell acknowledges in the Complaint, its mission includes treating patients with communicable diseases—and it has continued to treat such patients during the pandemic as part of the "front line" of the defense to COVID-19.  Compl. ¶ 7.  The presence of communicable diseases, or patients with such disease, on Northwell's property is thus an *expected* part of Northwell's business—and not the type of fortuitous risk typically protected by insurance.  *See Renaissance Art Invs., LLC v. AXA Art Ins. Corp.*, 102 A.D.3d 604, 605, 961 N.Y.S.2d 31 (2013) (insurance coverage, even under an "all risk" policy, extends only to fortuitous losses).  Northwell thus seeks with this lawsuit to improperly shift onto Defendants its ordinary business costs of treating communicable disease patients, and financial loss from being required to treat a less profitable mix of patients during the pandemic.  The Policies protect against risks of direct physical loss or

damage to property, or a declaration that the property is uninhabitable. They do not protect Northwell against business expenses or economic losses that may have resulted from its treatment of COVID-19 patients during the pandemic.

## IV.   NORTHWELL'S GOOD FAITH AND FAIR DEALING CLAIM FAILS AS A MATTER OF LAW

As this Court has noted, "[i]t is well settled that 'New York law … does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" *Zarour v. Pacific Indem. Co.*, 113 F. Supp. 711, 716-17 (S.D.N.Y. 2015) (Rakoff, J.) (quoting *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)); *see Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014) ("When the alleged breach of the implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from the breach of the insurance contract, those claims are redundant." (internal quotation marks omitted)), *aff'd*, 581 F. App'x 49 (2d Cir. 2014). Nor does New York law "recognize an independent cause of action for bad faith denial of insurance coverage." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

Here, Northwell's breach of the implied covenant of good faith and fair dealing claim is premised on the same facts as its breach of contract claim—Defendants' decision to deny coverage and Northwell's complaints about Defendants "delaying assessment" of its claim and "putting forward baseless reasons why Northwell's claim is not covered." Compl. ¶ 113. Accordingly, Northwell's good faith and fair dealing claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant this motion and dismiss Northwell's claims with prejudice.

25

DATED:   New York, New York          Respectfully Submitted,
         March 11, 2021


By:  */s/ Michael B. Carlinsky*
     Michael B. Carlinsky
     Maaren A. Shah
     **Quinn Emanuel Urquhart & Sullivan, LLP**
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     (212) 849-7000
     michaelcarlinsky@quinnemanuel.com
     maarenshah@quinnemanuel.com

     Keith Moskowitz
     **Dentons US LLP**
     233 S Wacker Drive, Suite 5900
     Chicago, IL 60606
     (212) 876-8220
     keith.moskowitz@dentons.com

     *Counsel for Defendant Lexington Insurance
     Company*


By:  */s/ Michael D. Hynes*
     Michael D. Hynes
     **DLA Piper LLP**
     1251 Avenue of the Americas
     New York, New York 10020
     (212) 335-4500
     michael.hynes@us.dlapiper.com

     *Counsel for Defendant Interstate Fire &
     Casualty Company*