UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NORTHWELL HEALTH, INC., | : Civil Action No. 1:21-cv-01104-JSR |
| Plaintiff, | : |
| v. | : |
| LEXINGTON INSURANCE COMPANY and INTERSTATE FIRE & CASUALTY COMPANY. | : |
| Defendants. | : |

---

# PLAINTIFF NORTHWELL HEALTH, INC.'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL

COHEN ZIFFER FRENCHMAN &
MCKENNA LLP
Robin L. Cohen
Alexander M. Sugzda
Cynthia M. Jordano
1350 Ave. of the Americas, 25th Floor
New York, New York 10019
Tel: (212) 584-1890

*Attorneys for Plaintiff*
*Northwell Health, Inc.*

Plaintiff Northwell Health, Inc. ("Northwell"), respectfully submits this memorandum of law in support of its motion to compel defendant Lexington Insurance Company's ("Lexington") and defendant Interstate Fire & Casualty Company's ("Interstate", together with Lexington "Defendants") production of documents showing the effect the COVID-19 pandemic had on the terms and conditions of Defendants' policies, including communications surrounding the development of newly-created endorsements or exclusions designed by Defendants to address the pandemic. Such information amounts to relevant extrinsic evidence of Defendants' intent in the event any policy provision is found ambiguous.

It is well-settled that changes an insurer makes to a policy's provisions over time is relevant extrinsic evidence as to the meaning and interpretation of those provisions as originally drafted. *See, e.g.*, *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, 2009 WL 3817600, at *3 (S.D.N.Y. Nov. 16, 2009) (evidence showing "how [the insurer] might have altered the pollution exclusion from one policy to another—could well shed light on the meaning of the exclusion in this case."); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (allowing discovery of "similar" contracts to aid interpretation of contract at issue).

In this case, Defendants claim that two contamination exclusions in Northwell's Policies, including the pollution and contamination exclusion in Endorsement #003, eliminate coverage for COVID-19 in its entirety *by design*. Alterations Defendants have made to these exclusions, or any new exclusions created by Defendants in response to COVID-19, are relevant to Defendants' understanding of what was covered or excluded by the Policies as originally drafted.

As a critical example, Northwell understands that in March 2020, in the midst of the COVID-19 pandemic, Lexington developed a new endorsement that *explicitly excludes*

1

communicable disease. Lexington's newly-developed exclusion, titled expressly as a "Communicable Disease Exclusion," provides:

> Notwithstanding any other provision of this Policy to the contrary, the Company does not insure any loss, cost, damage or expense, arising out of, attributable to, or occurring concurrently or in any sequence with a **communicable disease**.
>
> As used herein, **communicable disease** means any infectious or contagious substance:
>
> 1. Including, but not limited to, a virus, bacterium, parasite or other organism or any mutation thereof, whether living or not, and
>
> 2. Regardless of the method of transmission, whether direct or indirect, including, but not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal.
>
> that can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to tangible or intangible property insured hereunder.
>
> For avoidance of doubt, no coverage extension, additional coverage, global extension, exception to any exclusion or other coverage grant shall afford any coverage that would otherwise be excluded through this exclusion. For further avoidance of doubt, loss, cost, damage or expense, includes any cost to clean-up, detoxify, remove, monitor or test: (1) for a **communicable disease** or (2) any intangible property insured hereunder that is affected by such **communicable disease**.

Cohen Decl. Ex. 1.

To date, Defendants' production is bereft of any documents or communications showing the development of this new Communicable Disease Exclusion, or any other policy terms or exclusions developed in response to the pandemic. Lexington's new Communicable Disease Exclusion is significant in several ways.

First, the language Lexington developed in March of 2020 departs dramatically from the language used in the two existing contamination exclusions in Northwell's Policies that Defendants claim exclude Northwell's claim for COVID-19 losses in its entirety:

- Unlike the original contamination exclusion, which only excludes "costs," Lexington's new Communicable Disease Exclusion explicitly excludes "any loss, cost, damage or expense."

- Unlike the pollution and contamination exclusion in Endorsement #003, Lexington's new Communicable Disease Exclusion does not modify the term "virus" with the words "dispersal," "discharge," "release," or "escape," which are environmental terms of art that describe the method of pollution.

- Unlike Endorsement #003, Lexington's new Communicable Disease Exclusion excludes "*any* infectious or contagious substance," not just those listed in environmental statutes or regulated by the Environmental Protection Agency.

- Unlike Endorsement #003, which *does not even mention* Northwell's special coverages for Interruption by Communicable Disease or Decontamination Costs, the new Communicable Disease Exclusion explicitly states it is meant to exclude any coverage extensions, additional coverages, or coverage grants.

Second, the Communicable Disease Exclusion, developed by Lexington after the worst had already struck, is a hallmark example of the well-known principle that when insurers want to exclude something, they know how to do it.  The contrast between the pre- and post-COVID-19 policy forms is unmistakable.  Unlike the new policies created by Defendants in response to the COVID-19 pandemic, the Policies that Defendants sold Northwell prior to the pandemic do not exclude communicable disease or losses resulting from loss of use due to the presence of a virus

at Northwell's properties, which under New York law constitutes a form of physical loss or damage.  This directly undermines Defendants' claim that Endorsement #003 was *designed* to exclude losses arising out of a pandemic.  It demonstrates that either no design existed, or if it did, Defendants acknowledged it was badly flawed.  Had Defendants wanted to exclude any and all costs and losses from any and all viruses or diseases, they could have done so, but did not.

Third, the development of the Communicable Disease Exclusion in the middle of the COVID-19 pandemic begs the question: why create such an exclusion if losses from communicable diseases, like COVID-19, were not originally covered?  Northwell is entitled to discovery on the answer to that question, among others, posed by Defendants' company-wide responses to COVID-19 on its policy forms.  Indeed, as courts have recently found, the development of virus exclusions would be a meaningless exercise if viruses could not cause physical loss of or damage to property:

> More importantly, construing the presence of a virus on a premises as a "physical loss of" or "physical damage to" property is consistent with the Policy's Virus Exclusion. If presence of a virus could not be contained within these general provisions, the Virus Exclusion would be superfluous and rendered meaningless. Additionally, the "Causes of Loss – Special Form" specifically excludes from coverage "radioactive contamination" and "magnetic or electromagnetic energy[,]" which seemingly could have a physical presence but not cause structural alteration to property. (Certified Policy at 51, 52.) There would be no need for these exclusions if "physical loss" and "physical damage" were limited to tangible, structural alterations of property.

*Atwells Realty Corp. v. Scottsdale Ins. Co.*, 2021 WL 2396584, at *6 (R.I. Super. June 4, 2021). Thus, Defendants' development of policy forms in response to COVID-19 amounts to critical extrinsic evidence that shows what the insurers understood to be originally covered and excluded.

Defendants object to discovery into the impact COVID-19 had on the development of their policy forms on the ground that such discovery implicates policies that are not unique to Northwell. But the policy terms here such as Endorsement #003 were never unique to Northwell, and they

4

have instead been developed over time by the insurance industry to apply to a wide range of policyholders. Indeed, a review of other cases shows that the language of Endorsement #003 that Lexington claims it designed to specifically exclude Northwell's Interruption by Communicable Disease coverage has been in use by Lexington with other policyholders for years and has been a staple in Lexington's toolkit to attempt to exclude claims of all stripes. *See PCVST-DIL LLC v. Lexington Ins. Co.*, 2016 WL 1610945, at *5-6 (N.Y. Sup. Ct. Apr. 21, 2016).

Finally, it is well-settled that insurers' industry practice as it relates to other policyholders (not just the plaintiff) is relevant evidence of a plaintiff's claim for breach of the implied covenant of good faith and fair dealing, which Northwell has alleged here. *See Nationwide Mut. Fire Ins. Co. v. Smith*, 174 F.R.D. 250, 253 (D. Conn. 1997) (granting motion to compel discovery related to insurer's expert's investigation of other non-party insureds claims in relation to insured's bad faith claim).

For the foregoing reasons, Northwell respectfully requests that the Court grant its motion to compel production of documents showing the impact COVID-19 had on Defendants' policy terms, including communications surrounding the development of Lexington's Communicable Disease Exclusion and any other new endorsements, policy forms, or exclusions created by Lexington or Interstate.

Dated: New York, New York  
       July 1, 2021

/s/ Robin L. Cohen  
Robin L. Cohen  
Alexander M. Sugzda  
Cynthia M. Jordano  
COHEN ZIFFER FRENCHMAN &  
MCKENNA LLP  
1350 Avenue of the Americas, 25th Floor  
New York, New York 10019  
Tel: (212) 584-1890  
rcohen@cohenziffer.com  
asugzda@cohenziffer.com  
cjordano@cohenziffer.com

*Attorneys for Plaintiff Northwell Health, Inc.*