UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHWELL HEALTH, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>LEXINGTON INSURANCE COMPANY and INTERSTATE FIRE & CASUALTY COMPANY,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 1:21-cv-01104-JSR |

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Dated: New York, New York
　　　　July 2, 2021

**Quinn Emanuel Urquhart & Sullivan, LLP**
Michael B. Carlinsky
Maaren A. Shah
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
maarenshah@quinnemanuel.com

**Dentons US LLP**
Keith Moskowitz
233 S Wacker Drive, Suite 5900
Chicago, IL 60606
(212) 876-8220
keith.moskowitz@dentons.com

*Counsel for Lexington Insurance Company*

**DLA Piper LLP**
Michael D. Hynes
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
michael.hynes@us.dlapiper.com

*Counsel for Interstate Fire & Casualty Company*

Defendants have already agreed to provide Northwell with all non-privileged documents and communications conceivably relevant to interpreting the policies issued by Defendants to Northwell at issue in this case (the "Policies") and to Northwell's claim for coverage in this case (the "Claim"). This includes the responsive claims files and underwriting files maintained for the Claim and Policies by Defendants; all documents and communications concerning the underwriting of the Policies; all documents and communications with brokers and Northwell, and internal communications concerning the negotiation and sale of the Policies; all documents and communications concerning the formulation and interpretation of the relevant Policy terms; all documents relating to Defendants' evaluation and handling of the Claim; and claims handling manuals generally and specific to COVID-19 claims.[1]

Now, after Defendants agreed to produce the overwhelming majority of requested documents, Northwell has moved to compel production of facially irrelevant documents concerning how COVID-19 has impacted the policy terms issued by Defendants to **all** of their customers, seemingly without limitation, including all communications surrounding the development (many years after the Policies were negotiated and issued) of new exclusions in response to COVID-19. This request is irrelevant to the issues in the case, burdensome, and would lead to many trials-within-trials to compare and contrast the exclusions in other post-pandemic policies with Northwell's pre-pandemic Policies at issue here. The Court should reject this request.

---

[1] Notwithstanding Defendants' agreement to produce these documents, Northwell initially threatened to move to compel production of seven categories of documents. In the spirit of compromise and to avoid burdening the Court, Defendants proposed a global resolution and agreed to run additional searches and produce additional documents to resolve the majority of the seven categories. Unsatisfied, Northwell has brought this motion anyway. Northwell is entitled to no more.

*First*, documents concerning subsequent changes to Defendants' policies are irrelevant to the question at issue: the interpretation of the ***Northwell Policies'*** meaning and terms. Northwell argues that subsequent changes to Defendants' policy exclusions, made years after Northwell's Policies were issued and applicable to policies other than Northwell's Policies, are "relevant extrinsic evidence" that somehow sheds light on interpreting Northwell's Policies. Mot. 1. It doesn't. Neither logic nor the law support this position.

It is well-established that exclusions do not create coverage by "negative inference."[2] Yet that is precisely how Northwell seeks to use this evidence. Relying on a Rhode Island trial court decision, Northwell argues that "the development of virus exclusions would be a meaningless exercise if viruses could not cause physical loss of or damage to property[.]" Mot. 4. This is precisely the kind of "negative inference" from an exclusion that New York courts reject.

Northwell takes its impermissible negative inference argument a step further by arguing that post-pandemic changes to exclusions in other policies years after Northwell's Policies were issued will somehow prove that the absence of similar language from Northwell's Policies means such losses are not excluded from its Policies (and thus are covered). This is legally and logically infirm. Given the world-changing impact of the COVID-19 pandemic and the abundance of COVID-related insurance claims and lawsuits, it is unsurprising that insurers might adopt a "belt-and-suspenders" approach in policy language going forward. Adopting new policy language to respond to a particular event (the global COVID-19 pandemic) does not change the fact that such losses were already excluded in Northwell's Policies by the Contamination Exclusion and

---

[2] *See Raymond Corp. v. Nat'l Union Fire Ins. Co.*, 5 N.Y.3d 157, 163 (2005); *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC*, 2006 WL 3073220, at *10 & n.37 (S.D.N.Y. Oct. 31, 2006) (rejecting insured's argument that a term in the policy's insuring provisions could not have a particular meaning because otherwise one of the policy's exclusions would have been unnecessary).

Pollution and Contamination Endorsement that specifically excluded all "viruses." *See, e.g.*, *Mississippi Silicon Holdings, LLC v. Axis Ins. Co.*, 2019 WL 5685087, at *2 (N.D. Miss. Nov. 1, 2019) (denying discovery into "subsequent changes to future [insurance] policies of the kind at issue" since such information "has no bearing on whether th[e] particular policy [was] itself ambiguous.").[3]

Tellingly, Northwell cites no case in which changes to a policy's provisions made ***after*** the claimed loss or damage occurred were deemed relevant extrinsic evidence of the meaning of those provisions as originally drafted. Instead, Northwell mischaracterizes the two cases it does cite, which held that the insurer's other policies in effect ***at the time it issued insurance to the plaintiff*** were relevant extrinsic evidence bearing on the meaning of the plaintiff's policy. *See Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, 2009 WL 3817600, at *3 (S.D.N.Y. Nov. 16, 2009) (ordering production of other policies issued "during the relevant time period"); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (in a non-insurance case, comparing contracts "negotiated around the same time" after party put the other contracts at issue during his deposition). These cases had nothing to do with "changes an insurer makes to a policy's provisions ***over time***." Mot. 1 (emphasis added).[4]

---

[3] *Accord Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1041 (W.D. Tex. 2020) ("[T]he fact that Plaintiff could have used even more specific language does not automatically render ambiguous the language that Plaintiff actually used."); *J&H Lanmark Inc. v. Twin City Fire Ins. Co.*, 2021 WL 922057, at *3 (E.D. Ky. Mar. 10, 2021) (any failure to exclude pandemics did not negate the parties' agreement to limit the loss or damage caused by viruses). Evidence of subsequent changes to insurance policies is also inadmissible because it is analogous to subsequent remedial evidence precluded under Federal Rule of Evidence 407. *See Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007) (Posner, J.) (in interpreting the meaning of "day" in an insurance contract, holding "subsequent version of clause, in which [insured] made explicit that 'day' mean[t] 24 hours" was inadmissible under FRE 407).

[4] Northwell also argues that "it is well-settled that insurers' industry practice as it relates to other policyholders (not just the plaintiff) is relevant evidence of a plaintiff's claim for breach of the implied covenant of good faith and fair dealing," citing to *Nationwide Mut. Fire Ins. Co. v. Smith*,

3

*Second*, Northwell already has the "relevant extrinsic evidence" it might need to interpret its Policies' terms.  As an initial matter, the exclusions in Northwell's Policies are unambiguous and should be interpreted on their plain terms.  *See* Doc. 18 (Defendants' Mot. to Dismiss) at 2, 15-18; Doc. 33 (Defendants' Opp. to MPSJ) at 8-11, 21.  But to the extent that Northwell seeks extrinsic evidence in case the Court finds that language to be ambiguous, it already has that evidence:  Defendants have already produced all documents and communications relevant to interpreting the Policies' terms including negotiating and drafting history, and internal and external communications between Defendants, the broker, and Northwell concerning those terms.  This is the extrinsic evidence relevant to interpreting any ambiguities in **Northwell's Policies**, not different exclusions in different policies issued years later.[5]

Northwell also points to a "critical example" document that it admits shows exactly the changes it is looking for:  a "Communicable Disease Exclusion" provided to Northwell during renewal negotiations for its Policy with Lexington. Mot. 1-2.[6]  Yet this demonstrates, again, that Northwell already has exactly the documents it says it needs.  The exclusion proposed by

---

174 F.R.D. 250, 253 (D. Conn. 1997).  Mot. 5.  But *Nationwide* involved information concerning insurers' practices for handling other policyholders' **claims**, and its reasoning does not logically apply to insurers' later inclusion of different policy terms in other policyholders' policies—as Northwell seeks to argue.  *Nationwide* is also distinguishable because defendants there merely sought the locations of other fires that an expert had investigated and the names of other insureds, *id.*, information that is not at all analogous to the burdensome and irrelevant discovery Northwell seeks here.

[5]  *Cf. First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5869580, at *7 (W.D. Tenn. Oct. 5, 2016) (declining to allow discovery into "other claims" because "[e]ven if the Defendants ha[d] in fact taken conflicting positions in the past regarding the same terms at issue in this case, it would not aid the court in interpreting the policy language at issue or in determining the Defendants' intent").

[6]  The Exclusion submitted by Northwell as Exhibit 1 to its Motion was produced in this case as an attachment to a parent email dated July 17, 2020, Bates-stamped NW0014324-407, sent by Northwell's broker Marsh to Northwell in connection with negotiations with Lexington about renewing Northwell's Policy.

4

Lexington to renew Northwell's Policy in the wake of the pandemic is the only document that could even plausibly be relevant to interpreting the sufficiency and scope of the existing exclusions in Northwell's Policies.  Tellingly, Northwell itself has produced internal documents admitting that it did not expect its Claim to be covered by existing property insurance policies like the Policies, but that it nevertheless expected its insurers would *also* add COVID-specific exclusions to future policies.  Northwell should not be permitted to fish for irrelevant evidence concerning Defendants' other policies and post-pandemic exclusions to cure the fact that the relevant documents concerning Northwell's Policies do not support its claims.

*Finally*, collecting, reviewing, and producing these irrelevant documents will be unduly burdensome and not proportionate to the needs of this case, and will undoubtedly necessitate time-consuming mini-trials regarding the similarity of other policies to those at issue here.  *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 2015 WL 12777360, at *2 (N.D.N.Y. Jan. 20, 2015), *report & recommendation adopted*, 2015 WL 12777361 (N.D.N.Y. July 14, 2015).  Defendants will be required to search the files of many new custodians who have no connection to the handling of Northwell's Claim or the Policies, review the vast number of documents captured for responsiveness and privilege, and redact the confidential information of third-party insureds with no connection to this action.

Defendants respectfully request that the Court deny Northwell's motion.  Alternatively, if the Court is inclined to grant the motion, the Court should limit production to communications regarding the Communicable Disease Exclusion proposed during the Policy renewal negotiations between Northwell and Defendants.

DATED:  New York, New York                    Respectfully Submitted,
        July 2, 2021



                                              By: */s/ Michael B. Carlinsky*
                                                  Michael B. Carlinsky
                                                  Maaren A. Shah
                                                  **Quinn Emanuel Urquhart & Sullivan, LLP**
                                                  51 Madison Avenue, 22nd Floor
                                                  New York, NY 10010
                                                  (212) 849-7000
                                                  michaelcarlinsky@quinnemanuel.com
                                                  maarenshah@quinnemanuel.com

                                                  Keith Moskowitz
                                                  **Dentons US LLP**
                                                  233 S Wacker Drive, Suite 5900
                                                  Chicago, IL 60606
                                                  (212) 876-8220
                                                  keith.moskowitz@dentons.com

                                                  *Counsel for Defendant Lexington Insurance Company*



                                              By: */s/ Michael D. Hynes*
                                                  Michael D. Hynes
                                                  **DLA Piper LLP**
                                                  1251 Avenue of the Americas
                                                  New York, New York 10020
                                                  (212) 335-4500
                                                  michael.hynes@us.dlapiper.com

                                                  Robert M. Hoffman, admitted *pro hac vice*
                                                  1900 North Pearl Street, Suite 2200
                                                  Dallas, Texas 75201
                                                  (214) 743-4530
                                                  rob.hoffman@us.dlapiper.com

Lianna Bash, admitted *pro hac vice*
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
(206) 839-4800
lianna.bash@us.dlapiper.com

*Counsel for Defendant Interstate Fire & Casualty Company*